IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS<br>1660 L St., NW, 12th Floor<br>Washington, DC 20036<br><br>              Plaintiff,<br><br>   v.<br><br>FEDERAL BUREAU OF PRISONS<br>320 First St., NW<br>Washington, DC 20534<br><br>and<br><br>DEPARTMENT OF JUSTICE<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530<br><br>              Defendants. | Civil Action No. 18-cv-2399 |

## COMPLAINT FOR INJUNCTIVE RELIEF

### INTRODUCTION

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff the National Association of Criminal Defense Lawyers ("NACDL") seeks injunctive and other appropriate relief to compel the release of agency records related to the federal government's collection and monitoring of emails between inmates held in Federal Bureau of Prisons ("BOP") facilities and their attorneys. NACDL filed two FOIA requests with Department of Justice ("DOJ") components, the first to the BOP (the "BOP Request") and the

second to the Criminal Division, the Office of Information Policy ("OIP"), and the Office of Legal Counsel ("OLC") (collectively, the "Main Justice Request").[1]

2. Among other things, NACDL requested records from the BOP regarding the technical features of the inmate email system, and policies and guidance from Main Justice regarding the circumstances under which prosecutors may access emails between inmates and their attorneys.

3. There are currently over 150,000 inmates held in BOP facilities. Approved inmates at BOP facilities have access to an email system called TRULINCS. This system allows inmates to send short messages without attachments to approved individuals outside of BOP custody. Inmates can use TRULINCS to send emails to friends, loved ones, and, relevant to this litigation, their attorneys. Recipients can then access those messages using the website Corrlinks.com.

4. To use TRULINCS, inmates are required to click on an agreement stating that their communications—including messages to or from their attorneys—will be monitored and that communications with their counsel will not be treated as privileged. If inmates and their attorneys choose to communicate via email, the BOP may on its own supply the contents of the messages to prosecutors for use against the inmates in court or prosecutors may request inmates' emails from the BOP.

5. The possibility that prosecutors could use an inmate's TRULINCS messages against him in criminal proceedings is not merely theoretical. For example, in *United States v. Fumo*, 655 F.3d 288 (3d Cir. 2011), Vincent Fumo, a well-known Pennsylvania state senator, was

---

[1] In addition, NACDL filed a FOIA request with the Executive Office for United States Attorneys ("EOUSA"). The EOUSA claimed the FOIA request was overly burdensome and produced no records. NACDL has filed an administrative appeal, and may move to amend the Complaint to add the EOUSA once administrative remedies have been exhausted.

convicted of fraud, tax evasion, and obstruction of justice. Following Mr. Fumo's trial, the Government appealed his sentence. The United States Court of Appeals for the Third Circuit vacated the sentence and remanded the case to the district court for resentencing. As part of its argument at resentencing, the prosecutors introduced over 12,000 pages of Mr. Fumo's prison emails, including communications with his attorneys, to show that Mr. Fumo lacked remorse and had not accepted responsibility for his crimes.

6. Email has largely supplanted traditional modes of communication. Inmates are often incarcerated a great distance from where their counsel is located. In some cases, email may be the only reasonable way for an inmate to engage in strategic discussions or confer on time-sensitive matters with his or her attorney.

7. BOP's policy of monitoring attorney-client communications over TRULINCS makes it excessively difficult for inmates to communicate confidentially with their defense attorneys. This places a burden on inmates' constitutional rights, including their Sixth Amendment right to effective assistance of counsel and their First Amendment right to freedom of expression. The policy also implicates Due Process because it puts inmates at a distinct disadvantage compared to federal prosecutors, who do not have to reveal the contents of their email communications to their litigation adversaries.

8. As a result of the BOP's policies, inmates who wish to avoid government review of their attorney-client communications must rely on slower and costlier forms of communication, such as postal mail, unmonitored phone calls, and in-person visits. It can take two or more weeks for inmates to receive postal mail. Unmonitored calls can take weeks to schedule, correspondence to schedule these calls must sometimes be done via postal mail, and

the calls themselves are typically expensive. For in-person visits, it can take defense attorneys hours in travel, processing, and waiting time before they can speak with their clients.

9. Reliance on these outdated forms of communication is particularly harmful given that the majority of inmates in BOP custody are represented by publicly funded counsel who already struggle with limited resources. Correspondingly, the additional time and expense related to client communication restricts the affordability of privately retained counsel.

10. NACDL seeks to inform the public and criminal defense attorneys about TRULINCS and the federal government's policies regarding monitoring and use of attorney-client emails in criminal proceedings. It also seeks this information to inform policy makers and to allow the public to better participate in recurrent debates in Congress about whether and how Congress should legislate changes to the BOP's and DOJ's policies.

## PARTIES

11. Plaintiff National Association of Criminal Defense Lawyers is the nation's preeminent criminal defense bar association. Founded in 1958, NACDL seeks to ensure justice and due process for persons accused of crime; foster the integrity, independence and expertise of the criminal defense profession; and promote the proper and fair administration of criminal justice. NACDL has thousands of direct members, including private criminal defense lawyers, public defenders, active U.S. military defense counsel, law professors, and judges.  NACDL also has tens of thousands of indirect members through NACDL's state and local affiliates. NACDL publishes *The Champion*, an award winning and often cited monthly publication, which is broadly distributed to members, judges, law libraries, and other members of the public.

12. Defendant the Department of Justice is a department of the Executive Branch of the United States Government. The DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). The BOP, Criminal Division, OIP, and OLC are all components of Defendant DOJ.

13. Defendant the Federal Bureau of Prisons is a component of the DOJ. The BOP is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION AND VENUE

14. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

15. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## NACDL'S FOIA REQUESTS AND AGENCY RESPONSES

### The BOP Request and Response

16. On August 2, 2018, NACDL sent an email to the BOP requesting the following agency records made on or after January 1, 2016, by the BOP:[2]

   a. All records containing the BOP's policies, practices, or procedures governing the collection, retention, use, or sharing of inmates' attorney-client emails.

   b. All records containing the BOP's policies, practices, or procedures governing the collection, retention, use, or sharing of inmates' emails, including non-attorney-client emails.

   c. All external guidance, including directives, emails, or other communications sent to the BOP, regarding policies, practices, or procedures governing the collection, retention, use, or sharing of inmates' attorney-client emails.

   d. All external guidance, including directives, emails, or other communications sent to the BOP, regarding policies, practices, or procedures governing the collection, retention, use, or sharing of inmates' emails, including non-attorney-client emails.

---

[2] A copy of the BOP Request is attached hereto as Exhibit A.

    e. All records containing descriptions of any technology capable of filtering emails to or from particular individuals out of BOP productions of inmates' emails to third parties.

    f. All records containing descriptions of any technology capable of filtering emails to or from particular individuals out of emails retained by BOP.

    g. All records containing the BOP's policies, practices, or procedures for the use of any filtering technology for inmate email. Such records would include any policies, practices, or procedures for the use of filtering technology for inmate email within the BOP, in response to government requests for production of inmates' emails, or under any other circumstances.

    h. All documentation provided to the BOP by any company providing inmate email access technology or technology to filter inmate email, including any contracts, agreements, technical specifications, or proposals.

    i. All records containing the BOP's policies, practices, or procedures for reviewing and processing inmates' email communications. Such records would include any policies, practices, or procedures directing BOP staff with respect to when and how inmates' emails should be reviewed, as well as any information concerning the use of algorithms or other electronic data processing techniques to monitor the content of inmates' emails.

17. In the BOP Request, NACDL also formally requested that it not be charged search or review fees because NACDL qualifies as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 28 C.F.R. § 16.10(d)(1). NACDL further requested that it be granted a waiver of all fees related to its request because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(2).

18. On August 6, 2018, the BOP acknowledged receipt of the BOP Request, indicating it was received on August 2, 2018. The BOP, citing "unusual circumstances" as defined in 5 U.S.C. § 552(a)(6)(B)(i)–(iii), extended the time for its reply to the BOP Request by ten working days.

19. Although the BOP's deadline has long since passed, to date, the BOP has not produced any records responsive to the BOP Request, cited any exemption under FOIA for its failure to produce the records requested, or issued a determination regarding NACDL's request for records or waiver of fees.

### The Main Justice Request and Responses

20. On August 2, 2018, NACDL sent identical requests by email or certified mail to three components of Main Justice: the Criminal Division, the OIP, and the OLC. NACDL requested the following agency records made on or after January 1, 2006, by the Office of the Attorney General, Office of the Deputy Attorney General, Office of the Associate Attorney General, Office of Legal Policy, Office of Legal Counsel, and DOJ Criminal Division:[3]

   a. All guidance, directives, emails, or other communications sent to any U.S. Attorney's Office(s) regarding policies, practices, or procedures for requesting copies of inmates' attorney-client emails from the BOP.

   b. All guidance, directives, emails, or other communications sent to any U.S. Attorney's Office(s) regarding policies, practices, or procedures for requesting copies of inmates' emails from the BOP, including non-attorney-client emails.

   c. All legal or policy memoranda concerning any decision to enact or change DOJ policies, practices, or procedures for requesting inmates' emails from the BOP, including any policies, practices, or procedures for requesting that the BOP exclude from production any emails between an inmate and their attorney, as well as any policies, practices, or procedures concerning the circumstances under which the government does not request such exclusions.

21. In the Main Justice Request, NACDL also formally requested that it not be charged search or review fees because NACDL qualifies as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 28 C.F.R. § 16.10(d)(1). NACDL further requested that it be granted a waiver of all fees related to its request because disclosure of the

---

[3] A copy of the Main Justice Request is attached hereto as Exhibit B.

requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(2).

22. On August 24, 2018, the Criminal Division acknowledged receipt of the Main Justice Request, indicating it was received on August 3, 2018. The Criminal Division, citing "unusual circumstances" as defined by 5 U.S.C. § 552(a)(6)(B)(i)–(iii), extended the time limit for its reply. During a call to clarify the length of the extension, a representative for the FOIA unit of the Criminal Division said the extension was for ten working days.

23. Although that deadline has long since passed, to date, the Criminal Division has not produced any records responsive to the Main Justice Request, cited any exemption under FOIA for its failure to produce the records requested, or issued a determination regarding NACDL's request for records or waiver of fees.

24. On September 6, 2018, the OIP acknowledged receipt of the Main Justice Request, indicating it was received on August 9, 2018. The OIP, citing "unusual circumstances" as defined by 5 U.S.C. § 552(a)(6)(B)(i)–(iii), extended the time for its reply to the Main Justice Request by ten working days.

25. Although that deadline has long since passed, to date, the OIP has not produced any records responsive to the Main Justice Request, cited any exemption under FOIA for its failure to produce the records requested, or issued a determination regarding NACDL's request for records or waiver of fees.

26. On September 12, 2018, the OLC acknowledged receipt of the Main Justice Request, indicating it was received on August 2, 2018.

27. Although the deadline has long since passed, to date, the OLC has not produced any records responsive to the Main Justice Request, cited any exemption under FOIA for its

failure to produce the records requested, or issued a determination regarding NACDL's request for records or waiver of fees.

## CAUSES OF ACTION

28. NACDL repeats and incorporates herein by reference the allegations of Paragraphs 1 through 27.

### BOP Request

29. The BOP's failure to make the records sought by the BOP Request promptly available violates the FOIA, 5 U.S.C. § 552(a)(3), and the BOP's corresponding regulations, and constitutes wrongful withholding of agency records.

30. The BOP's failure to grant NACDL's request for treatment as a news media representative violates 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 28 C.F.R. § 16.10(d)(1).

31. The BOP's failure to grant NACDL's request for a public interest fee waiver violates 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(2).

32. NACDL is entitled to injunctive relief with respect to the release and disclosure of the records sought in the BOP Request.

### Main Justice Request

33. The DOJ's failure to make the records sought by the Main Justice Request promptly available violates the FOIA, 5 U.S.C. § 552(a)(3), and the DOJ's corresponding regulations, and constitutes wrongful withholding of agency records.

34. The DOJ's failure to grant NACDL's request for treatment as a news media representative violates 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 28 C.F.R. § 16.10(d)(1).

35. The DOJ's failure to grant NACDL's request for a public interest fee waiver violates 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(2).

36. NACDL is entitled to injunctive relief with respect to the release and disclosure of the records sought in the Main Justice Request.

## **PRAYER FOR RELIEF**

WHEREFORE, NACDL requests that this Court:

    a. Order Defendants BOP and DOJ to conduct a thorough search for responsive records;

    b. Order Defendants BOP and DOJ to immediately process and release any responsive records;

    c. Enjoin Defendants BOP and DOJ from charging NACDL search, review, or duplication fees in connection with the requests;

    d. Award NACDL its reasonable costs and attorneys' fees incurred in this action;

    e. Grant such other relief as the Court may deem just and proper.

DATED: October 18, 2018

    Respectfully submitted,

    *s/ Barry J. Pollack*
    Barry J. Pollack (D.C. Bar #434513)
    Robbins, Russell, Englert, Orseck,
    Untereiner & Sauber, LLP
    1801 K Street, N.W.
    Suite 411L
    Washington, DC  20006
    (202) 775-4514 phone
    (202) 775-4510 fax
    bpollack@robbinsrussell.com

/s/ Catherine Crump
Catherine Crump
*Pro Hac Vice Pending*
Megan Graham
*Pro Hac Vice Pending*
Samuelson Law, Technology &
Public Policy Clinic
U.C. Berkeley School of Law
353 Boalt Hall
Berkeley, CA 94720-7200
ccrump@clinical.law.berkeley.edu
(510) 642-5049

*Counsel for Plaintiff*