UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS,<br><br>     *Plaintiff*,<br><br>     v.<br><br>FEDERAL BUREAU OF PRISONS<br><br>and<br><br>DEPARTMENT OF JUSTICE,<br><br>     *Defendants*. | Civil Action No. 18-2399 (KBJ) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia

DANIEL F. VAN HORN,
D.C. BAR # 924092
Chief, Civil Division

KRISTIN D. BRUDY-EVERETT
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 252-2536
Kristin.Brudy-Everett@usdoj.gov

*Counsel for Defendant*

**Table of Contents**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................1

LEGAL STANDARDS ........................................................................................................2

ARGUMENT .........................................................................................................................3

I.    DEFENDANT EOUSA PERFORMED A REASONABLE SEARCH ...........................3

    A.    Applicable Standards     3

    B.    EOUSA's Searches Were Reasonable and Legally Sufficient     6

        *i.*    *United States Attorney's Office for the District of Massachusetts*     6

        *ii.*    *United States Attorney's Office for the Eastern District of Michigan*     7

        *iii.*    *United States Attorney's Office for the District of Colorado*     8

        *iv.*    *United States Attorney's Office for the Eastern District of Pennsylvania*     9

        *v.*    *United States Attorney's Office for the Eastern District of Virginia*     9

        *vi.*    *United States Attorney's Office for the Northern District of Illinois*     10

        *vii.*    *United States Attorney's Office for the Southern District of New York*     11

        *viii.* *United States Attorney's Office for the Southern District of Florida*     11

        *ix.*    *United States Attorney's Office for the Western District of Washington*     12

        *x.*    *United States Attorney's Office for the District of Arizona*     12

II.    DEFENDANTS PROPERLY APPLIED FOIA EXEMPTIONS TO RECORDS ........13

    A.    BOP's Withholdings Pursuant to Exemption 4 are Appropriate     15

    B.    Defendants' Withholdings Pursuant to Exemption 5 are Appropriate     18

        *i.*    *Attorney-Work Product Privilege*     19

        *ii.*    *Attorney Client Privilege*     21

        *iii.*    *Deliberative Process Privilege*     22

    C.    Defendants' Withholdings Pursuant to FOIA Exemptions 6 and 7(C)     26

        *i.*    *Exemption 7 Threshold*     26

        *ii.*    *Defendants' Exemptions 6 and 7(C) Withholdings are Appropriate*     27

    D.    BOP's Withholdings Pursuant to Exemption 7(E) are Appropriate     31

    E.    BOP's Withholdings Pursuant to Exemption 7(F) are Appropriate     33

III.    DEFENDANTS RELEASED REASONABLY SEGREGABLE INFORMATION ..35

CONCLUSION ...................................................................................................................36

**Table of Authorities**

**Statutes**

5 U.S.C. § 552(a)(3)(A) ..........................................................................................................5

5 U.S.C. § 552(a)(8)(A)(i)(I) ...............................................................................................15

5 U.S.C. § 552(a)(4)(A)(iii) ..................................................................................................17

5 U.S.C. § 552(b) ..........................................................................................................13, 34

5 U.S.C. § 552(b)(5) ............................................................................................................18

5 U.S.C. § 552(b)(6) ............................................................................................................27

5 U.S.C. § 552(b)(7)(A-F) ...................................................................................................26

5 U.S.C. § 552(b)(7)(C) .......................................................................................................29

5 U.S.C. § 552(b)(7)(E) .......................................................................................................30

5 U.S.C. § 552(b)(7)(F) .......................................................................................................32

## Cases

*Adionser v. Dep't of Justice,*
  811 F. Supp. 2d 284 (D.D.C. 2011) ...................................................................18

*Am. Fed'n of Gov't Employees, Local 812 v. Broadcasting Bd. of Governors,*
  711 F. Supp. 2d 139 (D.D.C. 2010) ...................................................................29

*Amuso v. DOJ,*
  600 F. Supp. 2d 78 (D.D.C. 2009) .....................................................................27

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ..............................................................................................2

*Appleton v. FDA,*
  451 F. Supp. 2d 129 (D.D.C. 2006). ..................................................................28

*Armstrong v. Executive Office of the President,*
  97 F.3d 575 (D.C. Cir. 1996) ..............................................................................34

*Associated Press v. Dep't of Defense,*
  549 F.3d 62 (2d Cir. 2008) ..................................................................................29

*Beck v. Dep't of Justice,*
  997 F.3d 1489 (D.C. Cir. 1993) ..........................................................................29

*Blackwell v. FBI,*
  646 F.3d 37 (D.C. Cir. 2011)........................................................................30, 31

*Brayton v. Off. of U.S. Trade Rep.,*
  641 F.3d 521 (D.C. Cir. 2011) ..............................................................................2

*Brown v. DOJ,*
  724 F. Supp. 2d 126 (D.D.C. 2010) .....................................................................5

*Canning v. Dep't of Justice,*
  567 F. Supp. 2d 104 (D.D.C. 2008) ...................................................................34

*Carter v. Dep't of Commerce,*
  830 F.2d 388 (D.C. Cir. 1987) ............................................................................29

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ..............................................................................................2

*Chang v. Dep't of Navy,*
  314 F. Supp. 2d 35 (D.D.C. 2004). .....................................................................27

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n,*
  600 F. Supp. 114 (D.D.C. 1984) .........................................................................23

*Citizens for Responsibility & Ethics in Wash. ("CREW") v. U.S. Dep't of Labor,*
  478 F. Supp. 2d 77 (D.D.C. 2007) ........................................................................2

*Citizens for Responsibility and Ethics in Washington v. Dep't of Homeland Sec.,*
  648 F. Supp. 2d 152 (D.D.C. 2009) ....................................................................23

*Cleveland v. United States,*
  128 F. Supp. 3d 284 (D.D.C. 2015) ....................................................................22

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980)................................................................. 19, 21, 22

*Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health and Human Servs.,*
  554 F.3d 1046 (D.C. Cir. 2009). .........................................................................28

*Defenders of Wildlife v. U.S. Border Patrol,*
  623 F. Supp. 2d 83, 87 (D.D.C. 2009) ..............................................................2, 4

*Dep't of Def. v. Fed. Labor Relations Auth.*,
  510 U.S. 487 (1994) ...................................................................................13, 27

*Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982) .............................................................................................27

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ...................................................................................17, 27

*Dep't of Justice v. Tax Analysts*,
  492 U.S. 136 (1989) .............................................................................................13

*Fisher v. United States*,
  425 U.S. 391 (1976) .............................................................................................21

*Food Marketing Institute v. Argus Leader Media*,
  139 S. Ct. 2356 (2019) .................................................................................16, 17

*Founding Church of Scientology v. NSA*,
  610 F.2d 824 (D.C. Cir. 1979) ...........................................................................4

*FPL Group Inc. v. IRS*,
  698 F. Supp. 2d 66 (D.D.C. 2010) ...................................................................23

*Gallant v. NLRB*,
  26 F.3d 168 (D.C. Cir. 1994) ............................................................................14

*Garza v. U.S. Marshals Service*,
  Civ. A., Nos. 16-0976 (EGS), 2018 WL 4680205 (D.D.C. Sept. 28, 2017) ............33

*Govt. Accountability Project v. Dep't of State*,
  699 F. Supp. 2d 97 (D.D.C. 2010) ...................................................................27

*Greenberg v. Dep't of Treasury*,
  10 F. Supp. 2d 3 (D.D.C. 1998) ..........................................................................3

*Ground Saucer Watch, Inc. v. CIA*,
  692 F.2d 770 (D.C. Cir. 1981) ............................................................................3

*Hickman v. Taylor*,
  329 U.S. 495 (1947) .............................................................................................18

*Horowitz v. Peace Corps*,
  428 F.3d 271 (D.C. Cir. 2005) ..........................................................................28

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ..........................................................................22

*In re Sealed Case*,
  737 F.2d 94 (D.C. Cir. 1984) ............................................................................21

*Judicial Watch v. Rossotti*,
  285 F. Supp. 2d 17 (D.D.C. 2003) ......................................................................3

*Judicial Watch, Inc. v. Dep't of Justice*,
  365 F.3d 1108 (D.C. Cir. 2004) ........................................................................18

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001)………………………………………………………..23

*Kowalczyk v. Dep't of Justice*,
  73 F.3d 386 (D.C. Cir. 1996) ........................................................................4, 5

*Lepelletier v. FDIC*,
  164 F.3d 37 (D.C. Cir. 1999) ............................................................................27

*Mapother v. Dep't of Justice*,
  3 F.3d 1533 (D.C. Cir. 1993) ............................................................................22

*Marks v. Dep't of Justice*,
  578 F.2d 261 (9th Cir. 1978) ...............................................................................4

*Mayer Brown LLP v. IRS*,
  562 F.3d 1190 (D.C. Cir. 2009) .........................................................................31

*McCutchen v. Dep't of Health & Human Servs.*,
  30 F.3d 183 (D.C. Cir. 1994) .............................................................................13

*McGehee v. CIA*,
  697 F.2d 1095 (D.C. Cir. 1983) ...........................................................................2

*Mead Data Cent., Inc. v. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) .....................................................................14, 34

*Media Research Ctr. v. Dep't of Justice*,
  818 F. Supp. 2d 131 (D.D.C. 2011) ...................................................................2, 3

*Meeropol v. Meese*,
  790 F.2d 942 (D.C. Cir. 1986) ..............................................................................5

*Michael v. U.S. Dep't of Justice*,
  Civ. A. No. 17-0197 (ABJ), 2018 WL 4637358 (D.D.C. Sept. 27, 2018) ............33

*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) .........................................................................3, 14

*NARA v. Favish*,
  541 U.S. 157 (2004) ......................................................................................28, 29

*Nat'l Ass'n of Retired Fed. Employees v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989) ......................................................................28, 29

*Nat'l Parks & Conservation Ass'n v. Morton*,
  498 F.2d 765 (D.C. Cir. 1974) ...........................................................................16

*National Treasury Employees Union v. U.S. Customs Service*,
  802 F.2d 525 (D.C. Cir. 1986) ...........................................................................14

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) .....................................................................................18, 23

*Oglesby v. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) ...............................................................................4

*People for the Am. Way Found. v. Nat'l Park Serv.*,
  503 F. Supp. 2d 284 (D.D.C. 2007) ....................................................................28

*Perrin v. United States*,
  444 U.S. 37 (1979) .............................................................................................16

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ..............................................................................3

*Petroleum Info. Corp. v. Dep't of the Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) .........................................................................22

*Public Citizen Health Research Grp. v. FDA*,
  185 F.3d 898 (D.C. Cir. 1999) ...........................................................................13

*Public Employees for Environment Responsibility v. U.S. Section, Internat'l Boundary and
  Water Com'n*,
  740 F. 3d 195 (D.C. Cir. 2014) ..........................................................................32

*Rockwell Int'l. Corp. v. Dep't of Justice*,
  235 F.3d 598 (D.C. Cir. 2001) ...........................................................................18

iv

*SafeCard Servs., Inc. v. S.E.C.*,
  926 F.2d 1197 (D.C. Cir. 1991)......................................................................3, 5, 30
*Salas v. Office of the Inspector Gen.*,
  577 F. Supp. 2d 105 (D.D.C. 2008) ................................................................29
*Schrecker v. DOJ*,
  349 F.3d 657 (D.C. Cir. 2003) ........................................................................4
*Spirko v. U.S. Postal Service*,
  147 F.3d 992 (D.C. Cir. 1998) ........................................................................14
*Steinberg v. Dep't of Justice*,
  23 F.3d 548 (D.C. Cir. 1994) ..........................................................................5
*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ......................................................................35
*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997)....................................................................5, 21
*Truitt v. Dep't of State*,
  897 F.2d 540 (D.C. Cir. 1990) ........................................................................4
*Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) ........................................................................4
*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) ........................................................................14
*Washington v. U.S. Dep't of Labor*,
  478 F. Supp. 2d 77 (D.D.C. 2007) ..................................................................14
*Weisberg v. Dep't of Justiceif USCIS* ,
  627 F.2d 365 (D.C. Cir. 1980)........................................................................4
*Weisberg v. Dep't of Justice*,
  705 F.2d 1344 (D.C. Cir. 1983)......................................................................3
*Weisberg v. Dep't of Justice*,
  745 F.2d 1476 (D.C. Cir. 1984)......................................................................4
*Williams v. Ashcroft*,
  30 Fed. Appx. 5 (D.C. Cir. 2002) ..................................................................5
*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007)........................................................................13
*Zemansky v. United States EPA*,
  767 F.2d 569 (9th Cir. 1985) ..........................................................................5

**Regulations**
21 C.F.R. § 20.61(b)................................................................................................15

**Other Authorities**
H.R. Rep. No. 93-876, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6271 ....................5
H.R. Rep. 89-1497 .........................................................................................................17
Fed. R. Civ. P. 56(a).....................................................................................................2
S. Rep. 89-813 ..............................................................................................................17

## INTRODUCTION

This case involves Freedom of Information Act ("FOIA") requests made by Plaintiff to United States Department of Justice (the "Department") and the Federal Bureau of Prisons ("BOP") for records concerning technical features of the BOP's inmate email system, which is named TRULINCS, and related policies and guidance.  The Executive Office for U.S. Attorneys ("EOUSA"), a Departmental component, undertook appropriate efforts to search for responsive documents, and the Department's Criminal Division, EOUSA, and BOP provided all reasonably segregable records and has withheld only that information that is properly exempt from release under FOIA Exemptions 4, 5, 6, 7(C), 7(E), and 7(F).  Defendants are entitled to summary judgment on these claims. As explained herein, in the attached Statement of Facts ("SMF"), declarations, and the *Vaughn* indices, no material questions of fact remain and Defendants are entitled to judgment as a matter of law.

## BACKGROUND

Defendants hereby incorporates its Statement of Facts; the declaration prepared by Vinay Jolly, as well as the attached declarations of the U.S. Attorneys' Offices and EOUSA's *Vaughn* index; the declaration and BOP *Vaughn* index prepared by Sarah Lilly; and the DOJ declaration and *Vaughn* index prepared by John Cunningham.

Plaintiff challenges EOUSA's searches and further contends they have a right to the withheld records in their entirety.  However, EOUSA undertook reasonable searches designed to uncover all responsive records, moreover, the Defendants have released all reasonably segregable, non-exempt materials to Plaintiff.

## **LEGAL STANDARDS**

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See id.* at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

## I.    DEFENDANT EOUSA PERFORMED A REASONABLE SEARCH

### A.    Applicable Standards

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured").  It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp.

2d 1, 8 (D.D.C. 2004).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in a particular place.  *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does FOIA require that an agency search every record system.  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search."  *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009).  However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micromanage the executive branch."  *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

"[T]he sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment in the agency's favor to be inappropriate based on the adequacy of the search.  *Weisberg v. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980) (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979)).  A plaintiff "cannot

rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Justice*, 724 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard Servs.*, 926 F.2d at 1200); *accord Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (a plaintiff's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them"); *SafeCard Servs.*, 926 F.2d at 1201 ("When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.").

Moreover, in responding to a FOIA request, an agency looks to the "reasonabl[e] descri[ption]" of the records sought. 5 U.S.C. § 552(a)(3)(A). That is, a professional agency employee familiar with the subject area must, in light of the FOIA request framed by the requestor, be able to locate the requested records with a "reasonable amount of effort." H.R. Rep. No. 93-876, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6271. The agency must be able to determine "precisely" which records are being requested. *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (citation and internal quotation marks omitted). The agency then is obligated to perform a "reasonable" search in response to the request framed by the requestor. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986); *Zemansky v. EPA*, 767 F.2d 569, 571-73 (9th Cir. 1985). An agency, however, is "not obligated to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk*, 73 F.3d at 389; *see also Williams v. Ashcroft*, 30 F. App'x 5, 6 (D.C. Cir. 2002) (agency need not look for records not sought in initial FOIA request).

**B.**     <u>**EOUSA's Searches Were Reasonable and Legally Sufficient**</u>

Here, there is no material doubt that the searches performed were adequate under FOIA. As explained in the Jolly Declaration, the Attorney Advisor for EOUSA assigned to FOIA matters is familiar the organization of EOUSA and its FOIA procedures.  Jolly Decl. ¶¶ 1-3.  EOUSA received Plaintiff's August 2, 2018 FOIA request on August 13, 2018 and assigned it a tracking number (2018-0005641).  *Id.* ¶ 4.  The request sought policies and procedures regarding access to prisoner email in twenty-seven specific U.S. Attorneys' Offices.

Each U.S. Attorney's Office is organized differently and has unique recordkeeping systems, and therefore, each U.S. Attorney's Office conducted its search for relevant responsive documents differently.  *Id.* ¶ 8.  Generally, the files of Criminal Chiefs, First Assistant U.S. Attorneys, and other Assistant U.S. Attorneys were searched, as well as any relevant places such as physical and digital files, emails, and internal U.S. Attorney's Office intranet sites.  *Id.*  Plaintiff has challenged the searches in the following ten U.S. Attorney's Offices: District of Massachusetts, Eastern District of Michigan, District of Colorado, Eastern District of Pennsylvania, Eastern District of Virginia, Northern District of Illinois, Southern District of New York, Southern District of Florida, Western District of Washington, and District of Arizona.  In manner and method, EOUSA's searches were reasonably designed to uncover all responsive documents and thus are legally sufficient.  The U.S. Attorney's Offices at issue in this lawsuit searched the places it reasonably determined were most likely to yield responsive records, and then segregated all responsive records from the overall volume of records located as a result of these searches.

   i.     *United States Attorney's Office for the District of Massachusetts*

As outlined in the declaration of Susanne Husted, paralegal specialist and FOIA point of contact for the District of Massachusetts, when the Criminal Division Chief and Deputy Chief

received this FOIA request on or about February 9, 2019.  Husted Decl. ¶ 1-3, 9.  In initial meetings held in February 2019 with the Deputy Criminal Division Chief and the taint review coordinator, both stated that they were unaware of any responsive documents or communications to the request. *Id*. ¶ 10-11.   The FOIA point of contact then reviewed manuals and policies for the Criminal Division, located on the intranet site, and found no responsive documents. *Id*. ¶ 12.  A no records response was sent to EOUSA around February 21, 2019.  *Id*. ¶ 13.

In July 2020, to prepare for the search declaration, the office conducted another search, and tasked the Criminal Division Chief and Deputy Chief, as well as two Criminal Division supervisors.  *Id*. ¶ 15.  The FOIA point of contact again reviewed any manuals or policies, and expanded the search to include instructions for non-attorneys.   *Id*.  ¶ 16.  No response records were found.  *Id*. ¶ 15-16.  In August 2020, a search of all U.S. Attorney's Office emails was conducted, and 168 potentially responsive emails and attachments were found; these records were reviewed and nay responsive records were sent to EOUSA.  *Id*. ¶ 19-22.  The U.S. Attorney's Office attests that all systems of records likely to contain records have been searched, and there is no other location and/or search method(s) that could uncover any further documents.  *Id*. ¶ 23.

ii.    *United States Attorney's Office for the Eastern District of Michigan*

As outlined in the declaration of Theresa M. Boyer, FOIA coordinator for the Eastern District of Michigan, upon receipt and review of Plaintiff's FOIA request, Ms. Boyer sent the FOIA request to the U.S. Attorney, the First Assistant U.S. Attorney ("First Assistant"), the Criminal Chief (who was out on medical leave), and the Deputy Criminal Chief to obtain potentially responsive records.   Boyer Decl. ¶ 1, 6-7.  In February 2019 meetings with the First Assistant and the Deputy Criminal Chief determined that a review of electronic and physical records, as well as emails, using the search terms "policies, practices or procedures to request

inmates' attorney client emails from the Bureau of Prisons" would be appropriate, although both parties stated that they believe the U.S. Attorney's Office had no policies regarding the seeking of inmates' attorney-client emails from the Bureau of Prisons, as any such policies would be those of the BOP and not the U.S. Attorney's Office. *Id.* ¶ 8.   The First Assistant located one email that was given to EOUSA. *Id.* ¶ 9.   Searches conducted by Ms. Boyer also returned no records. *Id.* ¶ 10.

The U.S. Attorney's Office conducted a supplemental search of emails in September 2020. *Id.* ¶ 15.   Each executive team member's email was searched using identical search strings, including the U.S. Attorney, First Assistant, and Criminal Division Chief and Deputy Chief, and resulted in one potentially responsive memorandum being located and turned over to EOUSA. *Id.* ¶¶ 14-17.  The U.S. Attorney's Office attests that a search was conducted of all known areas where records may exist and any responsive records that were located have been produced to EOUSA *Id.* ¶ 18.

### iii.    *United States Attorney's Office for the District of Colorado*

As outlined in the declaration of Teresa Robinson, paralegal and FOIA coordinator, for the District of Colorado, upon receipt and review of Plaintiff's FOIA request, Ms. Robinson consulted with supervisory attorneys that had knowledge of the office's written policies and procedures. Robinson Decl. ¶ 1, 5.   The First Assistant previously served as the Criminal Division Chief, among other important roles; he discussed the request with relevant staff and reviewed all criminal division policies on the intranet site, and determined that the USAO had no policies outside of a 2009 EOUSA memorandum that all U.S. Attorney's Offices followed. *Id.* ¶ 6.  The Chief of the U.S. Attorney's Office's Civil Division determined there are no formal written "policies" or "procedures" responsive to the FOIA request that pertain to the Civil Division, but that in the

course of doing work, attorneys may have received or generated information relating to informal policies and procedures, or information relating to "practices," for requesting inmates' emails from the BOP, including attorney-client emails. *Id.* ¶¶ 7-8. As a result, every Assistant U.S. Attorney in the USAO was tasked to search, and 10 attorneys identified cases (criminal and civil-defensive) where they received inmate emails from BOP during the routine handling of a case. *Id.* ¶¶ 10-21. All potentially responsive documents were sent to EOUSA, and the U.S. Attorney's Office attests that there are no other places where responsive records exist. *Id.* ¶ 22.

    *iv.*   *United States Attorney's Office for the Eastern District of Pennsylvania*

  As outlined in the declaration of Beverly Brown, paralegal specialist and FOIA point of contact for the Eastern District of Pennsylvania, she met with the Criminal Chief and the Criminal Appeals Chief in February 2019 after the receipt of Plaintiff's FOIA request. Brown Decl. ¶¶ 1, 9-10. The Criminal Chief searched the Criminal Division Manual and the USAO SharePoint Page and found no records. *Id.* ¶ 11. The Criminal Appeals Chief searched his computer, where he has kept pertinent old emails by topic and pertinent old papers by labeled files for the past 20 years that he has held the position; his search turned up the 2009 memo issued by EOUSA. *Id.* ¶ 12.

  The U.S. Attorney's Office conducted a supplemental search in September 2020 and reiterated that there were no specific memorandum regarding policies or procedures for obtaining prisoner emails in the U.S. Attorney's Office. *Id.* ¶ 16-18. The U.S. Attorney's Office attests that a search was conducted of all known areas where responsive records may exist *Id.* ¶ 19.

    *v.*   *United States Attorney's Office for the Eastern District of Virginia*

  As outlined in the declaration of Tammy Zimmie, paralegal specialist and FOIA coordinator, for the Eastern District of Virginia, upon receipt and review of Plaintiff's FOIA request, she emailed all supervisor and/or managing attorneys in the U.S. Attorney's Office.

Zimmie Decl. ¶ 1, 7.  No records were located.  *Id.* ¶ 7.  Ms. Zimmie then conducted a search of the intranet for potentially responsive records, and located three records that were turned over to EOUSA.  *Id.* ¶¶ 8-9.

The U.S. Attorney's Office conducted a supplemental search of emails in September 2020. Twenty-seven Criminal Division Supervisory and Managing attorneys and one Senior Litigation Counsel were tasked, and 8 attorneys located potentially responsive records.  *Id.* ¶¶ 10-11.   The U.S. Attorney's Office attests that all systems of records likely to contain records have been searched, and there is no other location and/or search method(s) that could uncover any further documents.  *Id.* ¶ 12.

vi.   <em>United States Attorney's Office for the Northern District of Illinois</em>

As outlined in the declaration of Merle Payne, paralegal specialist and FOIA coordinator, for the Northern District of Illinois, upon receipt and review of Plaintiff's FOIA request, the previous FOIA point of contact conducted a search for responsive records in the email server and also tasked the Executive Assistant U.S. Attorney, and all responsive records found were turned over to EOUSA in February 2019.   Payne Decl. ¶ 1, 4-5.

In September 2020, the U.S. Attorney's Office conducted a supplemental search of emails. *Id.* ¶ 6.  Mr. Payne also searched the U.S. Attorney's Office intranet, and the Executive Assistant and Criminal Division Chief (who have been at the U.S. Attorney's Office for the Northern District of Illinois since 2006) also searched their emails; one document was located and sent to EOUSA. *Id.* ¶¶ 7-10.  Searches were also conducted for any responsive emails from the last 3 years of emails for all Assistant U.S. Attorney's.  *Id.* ¶ 10.  The U.S. Attorney's Office attests that they are not aware of any other locations where responsive records would exist.  *Id.* ¶ 11.

10

*vii.     United States Attorney's Office for the Southern District of New York*

As outlined in the declaration of John McEnany, Assistant U.S. Attorney and member of the Executive Staff for the U.S. Attorney's Office for the Southern District of New York since 2006, upon receipt and review of Plaintiff's FOIA request, he searched the folder where he stores TRULINCS-related files, reviewed his emails from the timeframe indicated in the FOIA request, and consulted with the Chief of the Criminal Division.  McEnany Decl. ¶¶ 1-3.  Three potentially responsive documents that contain policies for the U.S. Attorney's Office were located and were sent to EOUSA.  *Id.* ¶ 3.  Mr. McEnany attests that there are no other locations within the U.S. Attorney's Office where any non-duplicative responsive records would exist, and that given his role in the USAO and in developing these policies, he cannot conceive that the U.S. Attorney's Office would have a policy in this area that he would not be aware of.  *Id.* ¶ 4.

*viii.    United States Attorney's Office for the Southern District of Florida*

As outlined in the declaration of Francys Marcenaros, FOIA paralegal specialist for the Southern District of Florida, upon receipt and review of Plaintiff's FOIA request, the Criminal Division Chief found potentially responsive records in the USA Book, which provides guidance to DOJ attorneys, and turned those records over to the EOUSA in February 2019.  Marcenaros Decl. ¶¶ 1, 6-8.

In October 2020, the U.S. Attorney's Office conducted a supplemental search of emails. *Id.* ¶ 9.  The Criminal Division Chief, along with two senior-level attorneys identified by the Chief, searched their emails using 15 search terms, as well as specific names of BOP counsels that they worked with on cases.  *Id.* ¶¶ 10-12.  They also searched folders on their hard drives using the same search terms.  *Id.* ¶ 12.   In total, 35 emails, 12 memos, and 1 page of attorney notes were turned over to EOUSA in October 2020.   The U.S. Attorney's Office attests that they conducted

a search reasonably calculated to uncover and identify all records potentially responsive to Plaintiff's FOIA request, and that they are unaware of any other method or means by which a further search could be conducted that would uncover additional responsive records. *Id.* ¶ 14.

ix.     *United States Attorney's Office for the Western District of Washington*

As outlined in the declaration of Thomas Woods, Deputy Chief of the Terrorism and Violent Crimes Unit for the Western District of Washington, upon receipt and review of Plaintiff's FOIA request, the U.S. Attorney's Office identified six people who were likely to have responsive records, which includes the First Assistant, current and former Criminal Division Chiefs, current and former Criminal Discovery Coordinators, and two former U.S. Attorneys.  Woods Decl. ¶¶ 1, 3.  Current employees searched their hard copy files, network files, emails and email archives using 6 search terms.  *Id.* ¶ 5.  They also searched any remaining available hard copy and network files of the former U.S. Attorneys, as well as any available email archives using set search terms that are set out in the declaration.  *Id.* ¶ 6-7.  All responsive documents were given to EOUSA and the U.S. Attorney's Office attests that they are unaware of any other locations where it is reasonable to believe that potentially responsive records would be found using reasonable search methods.  *Id.* ¶ 8.

x.     *United States Attorney's Office for the District of Arizona*

As outlined in the declaration of Michael Ambri, the Civil Chief for the District of Arizona, upon receipt and review of Plaintiff's FOIA request, at least 19 attorneys were tasked to search, including the Civil Chief, the two Criminal Division Chiefs, and the Unit Chiefs. Ambri Decl. ¶¶ 1, 4.  Mr. Ambri also searched all written Department and U.S. Attorney's Office policies, memoranda and guidance, available to the U.S. Attorney's Office through the Department and U.S. Attorney's Office intranet sites, and searched his archived email using key words such as

"prisoner email," "Bureau of Prisons email," "inmate email," and "BOP email." *Id.* ¶ 4. The Criminal Division Chiefs conferred with attorneys within their supervisory chain to determine whether potentially responsive records might exist, and also searched the available written Department of Justice policies, memoranda and guidance. *Id.* Experienced attorneys were also tasked to search. *Id.*

At the request of EOUSA, the USA U.S. Attorney's Office O performed a supplemental search, tasking division chiefs within the U.S. Attorney's Office who further consulted with section chiefs and attorneys within the U.S. Attorney's Office. *Id.* ¶ 5. Hard copy and electronic files, Department and U.S. Attorney's Office intranet sites, and emails for select attorneys and division and section chiefs were also searched using key words including "prisoner email," "inmate email," "BOP email," and "Bureau of Prisons email." *Id.* Two potentially responsive records were found, including the 2009 EOUSA memo and a webpage from "DOJ Book," the Department's internal electronic legal resource manual. *Id.* ¶ 7. The DOJ Book is a compilation of attorney work product on a variety of subjects and practice areas created by Department attorneys for internal use by Department attorneys. *Id.* The U.S. Attorney's Office attests that they are aware of no other locations within the U.S. Attorney's Office where responsive records might exist. *Id.* ¶ 6.

## II.   DEFENDANTS PROPERLY APPLIED FOIA EXEMPTIONS TO RECORDS

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are

protected from disclosure by one or more of the Act's nine exemptions.  5 U.S.C. § 552(b); *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).  To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions.  *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption."  *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)).  The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record."  *Nat'l Treasury*, 802 F.2d at 527 n.9.

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *CREW v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

As shown in the attached declarations and accompanying *Vaughn* indexed, Defendants properly and judiciously applied FOIA Exemptions 4, 5, 6, 7(C), 7(E), and 7(F) to withhold limited information within the responsive records, including: confidential commercial information about TRULINCS; written materials protected by the deliberative process, attorney-work product, and attorney-client privilege; personally identifiable information of third parties and employees; law enforcement sensitive techniques and procedures; and information that would cause harm to individuals if disclosed.   Moreover, in each case, Defendants evaluated the requirement that, to invoke an exemption, an agency must show that it "reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I); *see* Lilly Decl. ¶ 36; Cunningham Decl. ¶¶ 38-40; Jolly Decl. ¶¶ 11. Defendants describe each of these exemptions and the bases for their application below.

### A.    BOP's Withholdings Pursuant to Exemption 4 are Appropriate

Plaintiff is challenging BOP's application of FOIA Exemption 4 to five pages of records from a user guide for the TRULINCS software platform, which is used, among other things, for inmates to communicate with third-parties via email.   Lilly Decl. ¶ 31.  The TRULINCS User Guide pages contain "User interface strategy;" "Granularity of the tracking;" "Classification of messaging functions;" "Capabilities of the system;" and "Details of alerts that are tracked and displayed (via the use of prompts and color-coding in the search results)."     Lilly Decl. ¶ 32. Exemption 4 was applied to withhold these pages in full, as the categories of information identified represent the proprietary property of the vendor, Advanced Technologies Group, L.L.C. ("ATG"). *Id.*  Because BOP has properly applied Exemption 4 to withhold ATG's confidential commercial information, Defendants are entitled to summary judgement.

FOIA Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). This exemption helps safeguard the interests of both the government and submitters of information. Under Exemption 4, information that is (a) commercial or financial; (b) obtained from a person; and (c) privileged or confidential is exempt from disclosure under FOIA. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019); *see also* 21 C.F.R. § 20.61(b) (defining "[c]ommercial or financial information that is privileged or confidential" to mean "valuable data or information which is used in one's business and is of a type customarily held in strict confidence or regarded as privileged and not disclosed to any member of the public by the person to whom it belongs.").

Confidentiality is the key consideration in evaluating application of Exemption 4. In *Argus Leader*, the Supreme Court articulated that "confidential," as it is used in Exemption 4, must be given its "ordinary, contemporary, common meaning" at the time the statute was enacted in 1966 and that "[t]he term 'confidential' meant then, as it does now, 'private' or 'secret.'" 139 S. Ct. at 2362-63 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). The Court rejected the "competitive harm" standard, which had required a showing that disclosure of the information was "likely to cause substantial harm to the competitive position of the person from whom the information was obtained." *Argus Leader*, 139 S. Ct. at 2367 (quoting *Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C. Cir. 1974)). The Court further explained that "FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' . . . and '[t]hose exemptions are as much part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirements.' . . . So just as we cannot properly *expand* Exemption 4 beyond what its terms permit, we cannot arbitrarily *constrict* it either by adding limitations found nowhere in its terms." *Argus*

16

*Leader*, 139 S. Ct. at 2366 (citations omitted, alterations and emphasis in original).  The Supreme Court further observed that, in some instances, it might be possible for "privately held information [to] *lose* its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private." *Id.* at 2363.

However, nothing in the statute's text or history suggests that, for information that is typically treated as confidential by its owner, the government must in each instance show that it made assurances of confidentiality in order to establish that the information would be exempt. FOIA's legislative history confirms this reading.  The House and Senate Reports that accompanied FOIA's enactment explained that Exemption 4 generally exempts information "if it would not customarily be made public by the person from whom it was obtained by the Government."  H.R. Rep. 89-1497, at 10; *accord* S. Rep. 89-813, at 9.  Thus, the way a particular type of information is typically treated by its owner usually suffices to settle the inquiry.  The House Report explains that, in addition to the foregoing, the exemption "would *also* include information which is given to an agency in confidence, since a citizen must be able to confide in his Government."  H.R. Rep. 89-1497, at 10 (emphasis added).  That is because "where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations."  *Id.*

FOIA is intended to require disclosure when it will "contribut[e] significantly to public understanding of the operations or activities of the government."  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989) (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).  Congress did not design FOIA generally to require disclosure of the commercial or financial information of nongovernment entities.  Just as the "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind," *id.* at 765, the

17

disclosure of commercial or financial information about private individuals, businesses, and other organizations is not what Congress intended FOIA to address. The standard of confidentiality adopted in *Argus Leader* is thus applicable to these facts and there can be no question but that the withheld information comes within the parameters of the exemption.

BOP properly withheld proprietary software information under Exemption 4 because ATG treats this information as "confidential." Lilly Decl. ¶ 32. The items identified in the User Guide are customarily considered confidential in the software industry, and the vendor used by BOP treats this information as confidential. *Id.* The vendor developed and provided the software to the BOP under the assurance of its limited internal use; the contract specifically states that the ordering activity, in this case the BOP, "shall not provide or otherwise make available the software or documentation, or any portion thereof, in any form, to any third party without the prior written approval of the Contractor." *Id.* Because ATG does not customarily disclose its software information, which is reflected in the contract and is customary in the field, the information is confidential within the meaning of Exemption 4. *See Argus Leader*, 139 S. Ct. at 2363.

B.      **Defendants' Withholdings Pursuant to Exemption 5 are Appropriate**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l. Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001).

Defendants' withholdings invoke the attorney work-product doctrine and the deliberative-process privilege.

### i. Attorney-Work Product Privilege

Under Exemption 5, the attorney-client privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947); *Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 297 (D.D.C. 2011) (concluding that EOUSA properly invoked attorney work-product privilege "to protect records reflecting 'such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to Plaintiff's criminal case'") (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980)).  The attorney work-product doctrine protects tangible items prepared or developed by an attorney in anticipation of litigation such as interviews, memoranda and correspondence, and intangible items such as mental impressions, conclusions, opinions, personal beliefs or legal theories based upon the recognition that proper preparation of a case depends upon an attorneys' ability to assemble information, sort relevant from irrelevant facts, and prepare his/her legal theories and strategies without intrusive or needless scrutiny. The courts have held that documents that provide tips on handling future litigation are also covered by the attorney work-product privilege. *See Hunt v. U.S. Marine Corps*, 935 F. Supp. 46, 53 (D.D.C. 1996).

Moreover, "factual material is itself privileged when it appears within documents that are attorney work-product." *Judical Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. 2005) (citing *Tax Analysts*, 117 F.3d at 620), where the D.C. Circuit held that "[a]ny part of a document prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under Exemption 5 . . . In other words, factual material is itself privileged when it appears within documents that are attorney work

product. If a document is fully protected as attorney work product, then segregability is not required.").

As the Lilly Declaration and accompanying *Vaughn* index explains in more detail, the BOP applied the Exemption 5 attorney-work product privilege to the BOP Legal Holds Protocols, emails concerning inmate email and/or email searches, a draft memo concerning new TRULINCS features, the DOJ Book, and a PowerPoint about legal strategies prepared by BOP attorneys for Assistant U.S. Attorneys.  Lilly Decl. ¶ 35; *see* BOP *Vaughn* Index.  As explained in great detail in the declaration, all of these documents were prepared by attorneys, contain legal strategy and/or guidance, and were created in anticipation of litigation, clearly demonstrating that they are attorney work product and fully protected by the privilege.  *Id.*

As the Cunningham Declaration and accompanying *Vaughn* index explains in more detail, the Criminal Division applied the Exemption 5 attorney-work product privilege to emails and email chains that discuss the subject of BOP's policy pertaining to the practice of permitting inmates' access to email communications.  Cunningham Decl. ¶ 24; *see* Criminal Division *Vaughn* Index.  The emails and email chains discuss statutory and/or case law related to the issue of how a federal prosecutor would proceed in order to obtain BOP inmate email communications for an investigation and/or prosecution, as well as discussions about potential impacts on Department programs.  *Id.*  The email records were prepared by or at the direction of an attorney in anticipation of the possibility of litigation related to the subject of obtaining BOP inmate email communications in connection with an underlying federal criminal investigation and/or subsequent prosecution.  *Id.* ¶ 25.  Because the emails contain information constituting the legal and statutory analysis of Assistant U.S. Attorneys, BOP agency counsel, and other Department attorneys, and details their analysis of the legal ramifications of employing certain methods of obtaining and using BOP

inmate email communications, in connection with an underlying federal criminal investigation and/or prosecution, the Criminal Division has properly withheld these emails under FOIA Exemption 5.

As the Jolly Declaration and accompanying *Vaughn* index explains in more detail, EOUSA applied the Exemption 5 attorney-work product privilege to attorney memoranda including drafts (Items 1, 3, 5, 12, 15, 16-19, 22) and attorney intra-office emails (Items 2, 6-11, 14-15, 21, 23-26), containing attorney analysis of and impressions of issues regarding filter team practices and taint teams including statutory and case authorities containing potential legal theories; DOJ Book intranet legal guidance for attorneys (Items 4, 13) concerning protection and shielding of attorney-client emails. Jolly Decl. ¶ 10; *see* EOUSA *Vaughn* Index. EOUSA applied withholdings to protect records or portions of these records that reflect such matters as attorney impressions and opinions relating to proper procedures to seek prisoner email, inadvertent production of attorney-client emails and ensuing filter team protocols, as well as attorney evaluations and opinions relating to inmates communications with their attorneys. Jolly Decl. ¶ 11. The relevant records were prepared by or at the request or direction of an attorney in anticipation of legal challenges, and thus the substance of the records withheld in their entirety is exempt from disclosure pursuant to this privilege because it would reveal the details of an attorney's preparation for and uses in federal cases. *Id.*

Because the material was prepared by an attorney in anticipation of ongoing or potential litigation, these records are protected under Exemption 5.

### ii. *Attorney Client Privilege*

The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead*

*Data*, 566 F.2d at 252.  This privilege protections "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'"  *Tax Analysts*, 117 F.3d at 618 (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)).  Courts may infer confidentiality where communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests," *Coastal States*, 617 F.2d at 863, courts may infer confidentiality.  *See Tax Analysts*, 117 F.3d at 618 ("In the government context, the 'client' may be the agency and the attorney may be an agency lawyer.").  The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."  *Fisher v. United States*, 425 U.S. 391, 403 (1976).

EOUSA withheld materials that consist of attorney-client privileged communications regarding possible attorney access to prisoner email considerations.  Jolly Decl. ¶12; EOUSA Vaughn Index at Documents 4, 13.  These documents are on an internal Department intranet site and consist of confidential legal guidance from EOUSA attorneys to their clients (i.e., attorneys in the U.S. Attorney's Offices) regarding legal strategy and policy.  *Id.*  Accordingly, EOUSA properly invoked Exemption 5 to withhold these documents, which are protected by the attorney-client privilege.

### iii.    *Deliberative Process Privilege*

The deliberative-process privilege protects intra- or inter-agency documents that are "both pre-decisional and deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). The D.C. Circuit has held:

> A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made. Material is deliberative if it reflects the give-and-take of the consultative process. Our recent decisions on the deliberativeness inquiry have focused on whether disclosure of the requested material would tend to discourage candid discussion within an agency.

*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States*, 617 F.2d at 866).

The deliberative process privilege protects "materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citation omitted). This privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears*, 421 U.S. at 151-53; *Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petroleum Info.*, 976 F.2d at 1433-34 (internal quotations omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the

deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions[.]'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

As the Lilly Declaration and accompanying *Vaughn* index explains in more detail, the BOP applied the Exemption 5 deliberative process privilege to draft Memorandum concerning a new feature for the BOP's TRULINCS system, and a draft decision paper concerning inmate communication monitoring.   Lilly Decl. ¶ 35; *see* BOP *Vaughn* Index.  The TRULINCS memo was withheld because the memo was in draft form, and was seeking input and responses from senior BOP officials that would cause changes to the draft memorandum prior to issuance of the final policy.  *Id.*  The undated, unsigned draft decision paper concerning inmate communication monitoring was prepared by BOP executive level staff to explore policy positions of the agency. *Id.*  This decision paper is not relevant to the FOIA request seeking records regarding the technical features of the inmate email system because the document concerns inmate Video Conferencing and not emails.  *Id.*

Decision papers represents one of the primary tools used by the BOP for staff to engage in open, frank discussions on matters of policy between subordinates and superiors. *Id.*   Further, such papers go through extensive peer reviews and executive level inquiries before any decision to adopt or not adopt the paper as a new policy is reached. *Id.*   Release of these documents would cause a chilling effect on frank and candid conversations amongst staff and/or decision makers, which would harm the decision making process and this in turn prevent the BOP from developing and implementing well-considered policy directives. *Id.*  Further, as this paper is a draft, the release of the same is not only premature, but will create public confusion that might result from disclosure

of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *Id.*

As the Cunningham Declaration and accompanying *Vaughn* index explains in more detail, the Criminal Division applied the Exemption 5 deliberative process privilege to emails and email chains that discuss the subject of BOP's policy pertaining to the practice of permitting inmates' access to email communications. Cunningham Decl. ¶¶ 24, 27; *see* Criminal Division *Vaughn* Index. The email and email chain records are protected by the deliberative process privilege because they are both pre-decisional and deliberative. Cunningham Decl. ¶ 27. The emails contain information gathered by Department attorneys to make assessments or determinations about the process a federal prosecutor should follow in order to obtain BOP inmate email communications in connection with an ongoing investigation and/or criminal prosecution. *Id.*

Second, the emails and email chain records reflect the deliberations of these attorneys about legal issues, as well as expressions of the authors' opinions, and further contains discussions regarding various factual scenarios and the legal basis for choosing specific strategies to be employed in order to obtain BOP inmate email communications. *Id.* Release of this information could have a chilling effect on frank and open discussions by Department attorneys and undermine law enforcement efforts to maintain their concern for ensuring the overall safety and security of federal penal institutions, as well as their respective inmate populations and support staff. *Id.*

As the Jolly Declaration and accompanying *Vaughn* index explains in more detail, EOUSA applied the Exemption 5 deliberative process privilege to attorney memoranda including drafts (Items 1, 3, 5, 12, 15, 16-19, 22) and attorney intra-office emails (Items 2, 6-11, 14-15, 21, 23-26), containing attorney analysis of and impressions of issues regarding filter team practices and taint teams including statutory and case authorities containing potential legal theories; DOJ Book intranet legal guidance for attorneys (Items 4, 13) concerning protection and shielding of attorney-

client emails. Jolly Decl. ¶ 10; *see* EOUSA *Vaughn* Index. The records also contain pre-decisional and deliberative information related to matters that were being considered by the U.S. Attorney's Offices and other related law enforcement federal agencies for possible legal action. Jolly Decl. ¶ 10. To disclose this information would reveal internal deliberations among government personnel, U.S. Attorney's Office prosecutors and personnel, namely discussion of various attorney-client safeguarding issues in pursuit of recommendations and overall U.S. Attorney's Office strategy. *Id.* Disclosure of these internal deliberations would jeopardize the candid and comprehensive discussions that are essential for efficient and effective agency decision-making. Jolly Decl. ¶ 10.

Because the materials are pre-decisional and deliberative, these records are properly protected under Exemption 5.

## C. Defendants' Withholdings Pursuant to FOIA Exemptions 6 and 7(C)

### i. Exemption 7 Threshold

FOIA provides that certain records or information compiled for law enforcement purposes are exempt from disclosure. 5 U.S.C. § 552(b)(7)(A)-(F). FOIA Exemption 7protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. *See* 5 U.S.C. § 552(b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy, Exemption 7(C).

BOP meets the requirements of a law enforcement agency. The BOP is a primary law enforcement agency responsible for the management and regulation of all Federal penal and correction institutions pursuant to 18 U.S.C. § 4042(a)(1) that provides for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held

as a witness or otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2).   Lilly Decl. ¶ 38.   The Lilly
Declaration and accompanying *Vaughn* index go into great detail about the law enforcement nature
of each record.   Lilly Decl. ¶¶ 39, 43.   Thus, these records were compiled for law enforcement
purposes and meet the threshold

The Department (including EOUSA and the Criminal Division) are part of a law
enforcement agency.   Cunningham Decl. ¶¶ 31-32; Jolly Decl. ¶¶ 14-15.   The records at issue
relate to materials compiled for use in criminal cases and therefore, demonstrate that the record
are related to the enforcement of federal laws and that the enforcement activity within the law
enforcement duties of DOJ.   *Id.*   Thus, these records were compiled for law enforcement purposes
and meet the threshold.

### ii.   *Defendants' Exemptions 6 and 7(C) Withholdings are Appropriate*

Exemption 6 permits the withholding of "personnel and medical files and similar files"
when the disclosure of such information "would constitute a clearly unwarranted invasion of
personal privacy."   5 U.S.C. § 552(b)(6).   The term "similar files" is broadly construed and
includes "Government records on an individual which can be identified as applying to that
individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164
F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to
include all information that applies to a particular individual."); *Govt. Accountability Project v.
Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).   In assessing the applicability of
Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the
release of the records in order to determine whether, on balance, the disclosure would work a
clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of
Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).   "[T]he only relevant public interest in the FOIA

balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. DOJ*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Reporters Comm.*, 489 U.S. at 773). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

Importantly, "[t]he privacy interest at stake belongs to the individual, not the agency." *Amuso v. Dep't of Justice*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009); *accord Reporters Comm.*, 489 U.S. at 763-65. And "the concept of personal privacy . . . is not some limited or 'cramped notion' of that idea," *NARA v. Favish*, 541 U.S. 157, 165-70 (2004) (construing analogous Exemption 7(C)), but rather is grounded in "both the common law and the literal understandings of privacy [that] encompass the individual's control of information concerning his or her person." *Reporters Comm.*, 489 U.S. at 763. "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005). An individual's privacy interest "is not limited to [personal information] of an embarrassing or intimate nature." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007); *accord Appleton v. FDA*, 451 F. Supp. 2d 129, 145 (D.D.C. 2006). Moreover, "where there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989). Under Exemption 6, any personal privacy interest greater than *de minimis* is considered to be "substantial." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

Here, Defendants invoked Exemption 6 to withhold the personally identifiable information, including names and contact information, of third parties (and inmates) that appeared in responsive records and that Defendants did not have privacy waivers for.   Defendants' also applied Exemption 6 to the personal information of federal and state employees.   *See* Lilly Decl. ¶ 39*;* Cunningham Decl. ¶ 35; Jolly Decl. ¶¶ 18-19; *see generally* BOP *Vaughn* index, Criminal Division *Vaughn* Index, EOUSA *Vaughn* Index.   These persons maintain a strong privacy interest in this information, the release of which would constitute a clearly unwarranted invasion of personal privacy, thus harming their privacy rights.   *Id.*

The burden is on Plaintiff to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests.   *See, e.g., Carter v. Dep't of Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. Dep't of Def.*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Off. of the Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant" (citing *Favish*, 541 U.S. at 172)).   Here there is no countervailing public interest that would be served by the disclosure of this personal information, when Plaintiff seeks policies and guidance on BOP operations.   Lilly Decl. ¶ 39*;* Cunningham Decl. ¶¶ 37, 40; Jolly Decl. ¶ 19; *see Am. Fed'n of Gov't Emps. v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 156 (D.D.C. 2010) (upholding redaction of names and other information relating to another individual pursuant to Exemption 6).

In sum, because there is no countervailing public interest that can overcome the privacy interest of these individuals, Defendants properly redacted personal information for third parties and agency employees via Exemption 6.   *See Beck v. Dep't of Justice,* 997 F.3d 1489, 1494 (D.C. Cir. 1993) (when there is no public interest at all, the court "'need not linger over the balance;

something outweighs nothing every time'") (quoting *Horner*, 879 F.2d at 879).

Similarly, for information compiled for law enforcement purposes, FOIA Exemption 7(C) protects personal privacy when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  An agency need not link its collection of material to a specific or ongoing investigation.  *See, e.g.*, *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002).

Here, Defendants properly invoked Exemption 7(C) for a law enforcement record to withhold names, initials, and contact information of federal inmates, third-party individuals, lower-level Department employees and support staff, attorneys, BOP agency counsels, and law enforcement personnel.  Cunningham Decl. ¶ 35; Lilly Decl. ¶ 38; Jolly Decl. ¶ 19-20.  The release of this information would not add to the public's understanding of how Defendants' agencies work or how well the agencies perform their statutory duties. Cunningham Decl. ¶ 37; Lilly Decl. ¶ 38; Jolly Decl. ¶¶ 16-17, 20.  This was especially justified because of the sensitivity surrounding criminal issues, on account of which the release of these employee's personal information could subject that individual to harassment or harm by individuals who has been targeted by law enforcement or convicted of crimes and carry a grudge.  Jolly Decl. ¶ 19; Lilly Decl. ¶ 38.  Such reasonably foreseeable harm must be avoided.

In sum, "unless access to the names and addresses of private individuals appearing in files within the ambit of Exception 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs.,* 926 F.2d at 1205.  There is no showing that this information needs to be released to meet a significant public interest, and, given the significant privacy interests at stake, Exemption 7(C) was properly invoked to protect third party and law enforcement officer privacy.

### D.      BOP's Withholdings Pursuant to Exemption 7(E) are Appropriate

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."   5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).   In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

Here, pursuant to these FOIA Exemptions, BOP protected documents that cover BOP investigative techniques used to manage federal correctional institutions and ensure the secure and orderly operations of those facilities by providing suitable quarters, safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2).   Lilly Decl. ¶ 42.   Specifically, BOP

withheld: a Special Investigative Supervisors Manual that includes technical details of how the BOP to conduct law enforcement investigations; a decision paper on an internal policy consideration tool to assess the implementation of inmate Video Conferencing; the DOJ Book; and a PowerPoint presentation prepared by BOP staff attorneys as training for Assistant U.S. Attorneys on how to address legal issues/claims raised by inmates confined to the BOP facility.  *Id.*

In all of these documents, FOIA Exemption 7(E) was applied to protect law enforcement sensitive information.  *Id.*  If the withheld portions of the Special Investigative Supervisors Manual or the PowerPoint presentation were disclosed, it could provide an opportunity for inmates to manipulate victims or witnesses to an incident in an effort to improperly influence an investigation, or undermine the effectiveness of BOP internal investigations and thus the security of federal correctional facilities.  *Id.* ¶ 43.

Withholdings were applied to the decision paper on video conferencing to limit information concerning the percentage of telephone calls and other communications monitored by the BOP, which is part of its investigative techniques.  *Id.*   Disclosure of this information will prevent the BOP from conducting adequate investigations into criminal activity engagement by inmates via electronic communications.  *Id.*   Additionally, release of the withheld information would allow inmates to circumvent internal law enforcement investigations in BOP facilities by revealing how BOP collects information.  *Id.*

Withholdings were applied to the DOJBook to limit information concerning the direct email address to the BOP's Special Investigative Supervisor's office, which is the investigative section at BOP facilities, because release of the email address will permit third parties to interrupt or circumvent BOP's investigative requirements and procedures.  *Id.*   Lastly, some of the information withheld from the PowerPoint created by BOP for attorneys concerns how BOP

Case 1:18-cv-02399-JMC   Document 53-1   Filed 01/25/21   Page 39 of 42

schedules its inmates for outside medical visits, and release of that information could jeopardize secure and orderly operations of the BOP and/or could allow the inmate or third-parties the ability to circumvent security measures. *Id.*

Thus, the BOP properly protected this information pursuant to FOIA Exemption 7(E).

### E. **BOP's Withholdings Pursuant to Exemption 7(F) are Appropriate**

Exemption 7(F) allows the withholding of law enforcement-related information necessary to protect the physical safety of a wide range of individuals. 5 U.S.C. § 552(b)(7)(F). "Disclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Public Emps. for Env't Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n,* 740 F. 3d 195, 205-06 (D.C. Cir. 2014). While this exemption has been "invoked to protect the identities of informants, sources, and law enforcement personnel," it is "designed to specifically protect law enforcement officers and special agents." *Michael v. Dep't of Justice,* Civ. A. No. 17-0197 (ABJ), 2018 WL 4637358, *12 (D.D.C. Sept. 27, 2018) (internal citations and quotations omitted); *Garza v. U.S. Marshals Serv.,* Civ. A. No. 16-0976 (EGS), 2018 WL 4680205, *17 (D.D.C. Sept. 28, 2017). The information withheld under Exemption 7(F) is also subject to protection under Exemptions 6 and 7(C). *Id.* Under Exemption 7(F), however, there is no balancing test. *Id.*

Here, the BOP withheld portions of the Special Investigative Supervisors Manual and the PowerPoint presentation pursuant to FOIA Exemption 7(F) because they contain information regarding investigatory techniques of security staff concerning witnesses. Lilly Decl. ¶ 42. Disclosure of this information would pose a significant risk of contamination or influence of witness by other witnesses and/or other inmates because inmates would better understand how to manipulate victims or witnesses to an incident in an effort to improperly influence an investigation

and thus chill any cooperation from the inmate population. *Id.* The overall effect would threaten the safety and security of BOP inmates and staff. *Id.*

The TRULINCS User Guide was withheld pursuant to FOIA Exemption 7(F) because it contains inmate names and register numbers, the names and email addresses of their families and personal email contacts, contents of the messages, BOP non-senior staff names, and their email addresses is reasonably expected to endanger the life and/or physical safety these individuals. *Id.* BOP staff do not lose their right of privacy because they are employed by U.S. Government, and should be able to live free from harassment, ridicule, or threats or personal public scrutiny merely because of their employment with the BOP. *Id.*

BOP also withheld an email discussion between a District Court Judge and a correctional facility staff attorney about discovery because although this information is not relevant to the FOIA request seeking records regarding the technical features of the inmate email system, release of this information to inmates or the general public would do great harm in undermining ongoing cases and/or investigations, as well as undermine the safety of individuals involved in ongoing cases. *Id.*

Lastly, withholdings were applied pursuant to Exemption 7(F) to the decision paper on video conferencing to because the monitoring of electronic communications directly relates to the BOP duty to protect the physical safety of inmates, staff, and members of the general public, and electronic communications are used by inmates to threaten and harass others and to conspire with others to do the same. *Id.* Release of this material to inmates or the general public would do great harm in undermining the effectiveness of how these internal investigations are performed which, in turn, would undermine the security of federal correctional facilities. *Id.*

Thus, the BOP properly protected this information pursuant to FOIA Exemption 7(F).

## III.   DEFENDANTS RELEASED REASONABLY SEGREGABLE INFORMATION

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260. To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, as demonstrated by the declarations of Sarah Lilly, John Cunningham, and Vinay Jolly and their *Vaughn* indices, Defendants examined and processed all of the found records responsive to Plaintiff's requests. Lilly Decl. ¶¶ 29, 35; Cunningham Decl. ¶¶ 22, 41; Jolly Decl. ¶¶ 11,18. Where exempt information was reasonably segregable from nonexempt information, Defendants redacted only the exempt information and produced the rest. *Id.* Therefore, all reasonably segregable information has been released and DHS is entitled to summary judgment.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that this Court grant summary judgment in favor of Defendants as to all claims in this case.


Dated: November 2, 2020          Respectfully submitted,

                                 MICHAEL R. SHERWIN
                                 Acting United States Attorney

                                 DANIEL F. VAN HORN, D.C. BAR #924092
                                 Chief, Civil Division

                        By:      /s/ *Kristin D. Brudy-Everett*
                                 KRISTIN D. BRUDY-EVERETT
                                 Assistant United States Attorney
                                 Judiciary Center Building
                                 555 4th St., N.W.
                                 Washington, D.C.  20530
                                 (202) 252-2536
                                 Kristin.Brudy-Everett@usdoj.gov

                                 *Counsel for Defendants*