**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-cv-02399 (KBJ) |
| | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, ET AL. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF VINAY J. JOLLY

I, Vinay J. Jolly, declare the following to be a true and correct statement of facts:

1. I am an Attorney Advisor with the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). I am assigned to the component of EOUSA designated to administer the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, amended by the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and the Privacy Act of 1974 ("PA"), 5 U.S.C. §552a.   In that capacity, my responsibilities include the following: acting as liaison with other divisions and offices of the DOJ in responding to requests and litigation filed under both the FOIA/PA; reviewing FOIA/PA requests for access to records located in this office and the ninety-four United States Attorneys' Offices ("USAOs'") and the case files arising therefrom; reviewing correspondence related to requests; reviewing of searches conducted in response to requests; locating responsive records; and preparing EOUSA responses thereto to ensure that determinations to withhold or release such responsive records are in

accordance with FOIA, PA, and Department of Justice regulations (28 C.F.R. §§16.3 et seq. and §§16.40 et seq.).

2. As an Attorney Advisor of the FOIA/PA Unit, EOUSA, I have the authority to release and withhold records requested under the FOIA/PA. The statements I make in this Declaration are based upon my review of the official files and records of EOUSA, my own personal knowledge, and information acquired by me through the performance of my official duties.

3. Due to the nature of my official duties, I am familiar with the procedures followed by this office in responding to the FOIA requests made to EOUSA by Plaintiff. I have reviewed the Complaint for which this Declaration addresses. This Declaration is being submitted in support of Defendant's Motion for Summary Judgment for records withheld by EOUSA.

## BACKGROUND

4. On August 13, 2018, EOUSA received a FOIA/PA request letter dated August 2, 2018, from requester's counsel through its online FOIA portal system, seeking policies and procedures regarding access to prisoner email in twenty-seven USAOs. (**See Exhibit A.**) EOUSA advised the Plaintiff that it had received his request and assigned it a number of 2018-005641.[1]

5. EOUSA notified Plaintiff by letter dated June 12, 2019, that a search for records has revealed responsive records regarding his FOIA/PA request. In the letter, EOUSA notified Plaintiff that thirty-eight (38) pages were released in full, 9 pages were released in part (with

---

[1] In its September 17, 2018 letter, EOUSA initially closed the request on September 17, 2018 as being unreasonably burdensome. EOUSA then subsequently proceeded to search for responsive records in all the USAOs on or about December 20, 2018.

redactions per 5 U.S.C. § § 552 (b)(6), (b)(7)(C)), and forty-three (43) pages were withheld in full pursuant to 5 U.S.C. § § 552 (b)(5) and (b)(6).[2] (**See Exhibit B.**)

6. Upon a referral of records from the Criminal Division, EOUSA also withheld 9 pages in full on October 10, 2019 (and released 30 pages in part) and withheld 4 pages in full on October 15, 2019 (and released 13 pages in part).[3]

7. As part of USAO searches in this litigation, EOUSA also made supplemental responses to the Plaintiff.[4]

---

[2] In this letter, EOUSA also referred records to the U.S. Criminal Division and the Bureau of Prisons for a direct response to the requester. In response to the request for a fee waiver, EOUSA did not charge Plaintiff any search fees.

[3] In connection with this litigation, and upon completion of supplemental USAO searches, EOUSA has now released all of these pages to the Plaintiff. (Items 8-9 on the *Vaughn* Index, annexed hereto as Attachment A, and in EOUSA's October 16, 2020 supplemental response to Plaintiff.) EOUSA also referred two pages on November 6, 2019 to the FBI for a direct response to the requester, and made referrals to the Bureau of Prisons and Criminal Division on or about July 28, 2020, as well as a referral to the Bureau of Prisons on September 10, 2020.

[4] In connection with this litigation, and upon completion of supplemental searches in the USAOs approximately July through September 2020 for the USAOs in the Eastern District of New York, Western District of Washington, Colorado, Western District of Pennsylvania, Northern District of Illinois, Eastern District of Michigan, Central District of California, Northern District of California, Southern District of California, Kansas, Hawaii, Eastern District of Texas, Eastern District of Virginia, Southern District of Alabama, Eastern District of Louisiana, Southern District of Texas, Southern District of Alabama, Eastern District of Texas, Eastern District of Pennsylvania, Massachusetts,Virgin Islands, Puerto Rico, Arizona, Southern District of New York, and Southern District of Florida, EOUSA has now made further releases of any responsive documents, including some of the pages initially withheld. For those responsive pages still withheld, EOUSA has placed them on its *Vaughn* Index. Items 1-7 were items initially withheld in EOUSA's June 12, 2019 production. Items 10-26 were withheld in conjunction with supplemental USAO searches.

## ADEQUACY OF THE SEARCH

8. After receiving Plaintiff's request, EOUSA undertook the search for documents responsive to Plaintiff's FOIA request. The USAOs in 27 districts searched for responsive records[5]. As each District is organized differently and has its unique recordkeeping systems, each USAO searched its own offices in all relevant places for any responsive records. As shown in the annexed search declarations, the USAOs searched all reasonable places where responsive records would exist. As outlined in the search declarations more clearly, the files of Criminal Chiefs, First U.S. Attorneys, and other AUSAs were searched, as well as all relevant places in the USAO such as physical and digital files, including emails and internal USAO intranet sites. As the Declarations attest, no other responsive records exist in the USAOs. The USAOs conducted a systematic search for records responsive to Plaintiff's request. The FOIA Contacts also contacted all pertinent personnel in the USAO to see if they have responsive records to the FOIA request. Responsive documents were identified and sent to EOUSA, and EOUSA processed and released all nonexempt the records. As noted in the attached search declarations, the USAOs are not aware

---

[5] For purposes of this briefing, and in connection with EOUSA's supplemental releases and search representations, Plaintiff's counsel has agreed with DOJ's counsel that certain USAOs named in the FOIA request would not be subject to search challenges. As such, only the attached USAO search declarations are being challenged from the following districts: Eastern District of Virginia, Massachusetts, Northern District of Illinois, Southern District of Florida, Southern District of New York, Eastern District of Michigan, Eastern District of Pennsylvania, Colorado, Western District of Washington, and Arizona. Furthermore, the Plaintiff has indicated its challenged withholdings in its Amended Complaint. In addition to addressing those specific withholdings, and in the interest of judicial economy, EOUSA is adding any additional withheld documents to its *Vaughn* Index, as a result of its supplemental searches, even though Plaintiff has not indicated it is challenging any new withholdings. Moreover, in its June 12, 2019 production, EOUSA also withheld the March 26, 2009 Memo from the Eastern District of Pennsylvania. (*See* Item 3 of the *Vaughn* Index.) And in its June 12, 2019 production, EOUSA released in part the October 19, 2017 email from the Eastern District of New York, with redactions for AUSAs. Please note the original b5 redactions were in error, and should have been marked non-responsive.

of any other places within the USAOS in which other files pertaining to the Plaintiff's request were maintained.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

### EXEMPTION 5 U.S.C. §552(b)(5)
### PRIVILEGED INFORMATION

9.  Exemption (b)(5) protects "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The courts have construed this language to exempt those documents that are normally privileged in the civil discovery context.

10.  For the documents withheld from various USAOs, EOUSA asserted Exemption 5 to protect AUSAs' memoranda including drafts (Items 1, 3, 5, 12, 15-19, 22, 27) and AUSA intra-office emails (Items 2, 6-11, 14-15, 21, 23-27), containing AUSA analysis of and impressions of issues regarding filter team practices and taint teams including statutory and case authorities containing potential legal theories; DOJ Book intranet legal guidance for AUSAs (Items 4, 13) concerning protection and shielding of attorney-client emails, all pursuant to the attorney work-product and the deliberative process privileges.   *See* Documents on the *Vaughn* Index annexed hereto as Attachment A.

11.  EOUSA invoked the attorney work-product privilege to protect records or portions of these records that reflect such matters as AUSA impressions and opinions relating to proper procedures to seek prisoner email, inadvertent production of attorney-client emails and ensuing filter team protocols, as well AUSA evaluations and opinions relating to inmates communications with their attorneys. The relevant records were prepared by or at the request or direction of an

AUSA in anticipation of legal challenges.  The substance of the records withheld in their entirety

is exempt from disclosure pursuant to this privilege because it would reveal the details of an

AUSA's preparation for and uses in federal cases.  Release of this information would provide the

requester with the scope of the government's thinking by setting forth where the government

sought to find evidence to develop policies, how the government developed its practices, and who

the government relied upon to develop procedures for its USAOs. These records are also no doubt

protected by the deliberative process privilege in that they contain preliminary strategy,

discussions of various legal issues in creating policy, and alternatives, anticipated defenses, and

draft arguments. The records, moreover, cannot be reasonably segregated without exposing the

deliberative process.

12.  The material also consists of attorney-client privileged communications regarding

possible AUSA access of prisoner email considerations.  The documents on DOJ's internal

intranet site consists of legal confidential guidance to AUSAs regarding legal strategy and policy.

(See Documents 4, 13).

13.    The records also contain pre-decisional and deliberative information related to

matters that were being considered by the USAOs and other related law enforcement federal

agencies for possible legal action.  To disclose this information would reveal internal

deliberations among government personnel, USAO prosecutors and personnel, namely discussion

of various attorney-client safeguarding issues in pursuit of recommendations and overall USAO

strategy.  Disclosure would jeopardize the candid and comprehensive discussions that are

essential for efficient and effective agency decision-making. To disclose this information would

reveal internal deliberations among government personnel, namely discussion of potential issues

and strategy.  The attorney work-product and deliberative process information is so interwoven as to make it all, in essence, attorney work-product.

## EXEMPTION 5 U.S.C. §552(b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

14.  5 U.S.C. § 552(b)(7)(C) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy.

15.  All of the information at issue in this matter was compiled by the USAOs for use in criminal cases and therefore, it was compiled for law enforcement purposes.  Exemption (b)(7)(C) is the law enforcement counterpart to Exemption (b)(6), which is the personal privacy exemption that covers personnel, medical, and similar files.

16.  When withholding information pursuant to this exemption, EOUSA is required to balance the privacy interests of the individuals mentioned in these records against any public interest in the disclosure.  In asserting this exemption, each item of information was examined to determine the degree and nature of the privacy interest of every individual whose name and/or identifying data appears in these records.  The public interest in disclosure of this information is determined by whether the information in question would inform plaintiff and the general public about the USAOs, and other federal law enforcement agencies' performance of their mission to enforce federal criminal and civil statutes and/or how the USAO and other federal agencies

actually conduct internal operations and investigations. In each instance where information was withheld, it was determined that individual privacy interests were not outweighed by any public interest in disclosure. To reveal names, identifying data, and/or non-public information of third-party individuals in the context of a federal investigation could reasonably be expected to cause embarrassment and humiliation, and thus constitute an unwarranted invasion of personal privacy.

17. At the time that these records were reviewed, EOUSA considered the passage of time and its effect on the privacy interests of third-party individuals in balancing the privacy and public interests. It was determined that the privacy interests are as strong and pertinent now as when the records were created, and that there is no public interest in these records that would outweigh the privacy interests of these individuals.

18. Every effort has been made to release all segregable information without invading the privacy interests of the third-party individuals named in these records. EOUSA asserted Exemption (b)(7)(C) in conjunction with (b)(6) to withhold the names, contact information including email addresses and phone numbers, and related identifying information pertaining to AUSAs and USAO personnel, as well as third-party individuals merely mentioned, or of law enforcement interest, in the investigative materials received and in documents 1-3, 5-12, 14-16, and 18-27 on the *Vaughn* Index.

### Name of AUSAs and USAO Law Enforcement Personnel

19. Exemption (b)(7)(C) has been asserted in conjunction with Exemption (b)(6) to protect the names and underlying related identifying information of AUSAs and supporting USAO personnel who were responsible for helping to conduct and/or maintain the investigative activities reported in this investigation. Publicity, adverse or otherwise, may seriously impair the

USAO personnel effectiveness in conducting future investigations or carrying out office duties such as promulgating office practices. This privacy consideration also protects the AUSAs and USAO personnel from unnecessary, unofficial questioning. Law enforcement personnel conduct official inquiries into violations of various statutes and come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disruptions in the lives of individuals. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on those involved in policy formation. The publicity associated with the release of the identity of an AUSA or USAO personnel could trigger hostility towards the persons. Balancing this substantial privacy interest against the public interest in the disclosure, EOUSA could find no legitimate public interest to be served in the disclosure of identity and related identifying information of the AUSAs and USAO personnel because it will not shed light on the operations and activities of the federal government.

Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) to withhold the names and identifying information of the AUSAs and supporting USAO personnel in the records.

**Names and/or Identifying Information Pertaining
to Third Parties Merely Mentioned**

20. Exemption (b)(7)(C) has also been asserted in conjunction with Exemption (b)(6) to protect the name, professional qualifications, and other identifying information of those individuals who are only incidentally mentioned in the investigatory records. To release the identities, identifying information, and records of third-party individuals who are merely mentioned in any USAO records would not shed any light on the government's performance of its statutory duties. However, the disclosure of such privacy-protected material could cause

unnecessary attention to be focused on them and/or their family members. The mention of their names in the context of a federal matter could cast them in an unfavorable or negative light if released to the public. Thus, these individuals have a strong privacy interest in the protection of such personal information. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who were merely mentioned in the USAO records because it will not shed light on the operations and activities of the federal government.

**EXEMPTION 5 U.S.C. §552(b)(6)**

**CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY**

21.  5 U.S.C. §552(b)(6) exempts from disclosure:

> personnel and medical files and similar files when the disclosure of each information would constitute a clearly unwarranted invasion of personal privacy.

22.  This exemption has been interpreted broadly to cover all information pertaining to an identifiable individual. EOUSA has applied Exemption (b)(6) in conjunction with Exemption (b)(7)(C) to protect certain identifying information pertaining to AUSAs, USAO and other third-party individuals because their privacy interests in the information outweighs any legitimate public interest in disclosure. And the application of this exemption is appropriate because no consent or authorization to release this information was provided to EOUSA in connection with this request. For these reasons, EOUSA determined that release of this information would constitute an unwarranted invasion of the personal privacy of third-party individuals herein

described that could result in harassment or embarrassment.[6]  Accordingly, EOUSA has asserted Exemption 6 in conjunction with Exemption (b)(7)(C) to protect certain third-party and law enforcement personnel as well as third parties mentioned in the records. *See* documents 1-3, 5-12, 14-16, and 18-27 on the *Vaughn* Index.

## CONCLUSION

23.  Each step in the handling of Plaintiff's request has been entirely consistent with the EOUSA's procedures adopted to ensure an equitable response to all persons seeking access to records under the FOIA/PA. Thus, the EOUSA has properly responded to Plaintiff's FOIA request.

I declare under penalty of perjury that the foregoing is true and correct and that Exhibits A-B and Attachment A attached hereto are true and correct copies.

Executed on __NOVEMBER 2ND__, 2020.

Vinay J. Jolly

Attorney Advisor

EOUSA, FOIA/PA Unit

---

[6]  EOUSA's balancing of the privacy and public interests in determining whether to withhold third-party information under Exemption (b)(7)(C), as set forth in Paragraphs 14-20, supra, applies equally to the balancing of interests under Exemption 6.

National Association of Criminal Defense Lawyers

RECEIVED
AUG 1 3 2018

**Kevin Krebs**
**Assistant Director**
**FOIA/Privacy Unit**
**Executive Office for United States Attorneys**
**Department of Justice**
**175 N Street, N.E.**
**Suite 5.400**
**Washington, DC 20530-0001**
**(202) 252-6020**

**August 2, 2018**

Re:     **Freedom of Information Act Request**

To Whom It May Concern:

The National Association of Criminal Defense Lawyers ("NACDL")[1] submits this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records concerning federal prosecutors' access to emails between individuals held at Bureau of Prisons ("BOP") facilities and their legal counsel.

## I. Background

To use the email system at BOP facilities, inmates must consent to having their email monitored, including email to and from their attorneys.[2] If inmates and their attorneys choose to communicate via email, the BOP may supply the contents of the emails to prosecutors for use against the inmates in court,[3] and indeed prosecutors assert the right to request inmates' emails

---

[1] Founded in 1958 as a professional bar association, NACDL is the preeminent organization in the United States dedicated to defense attorneys' mission of ensuring fairness in the criminal justice system. NACDL has thousands of direct members, including private criminal defense lawyers, public defenders, active U.S. military defense counsel, law professors, and judges.

[2] In relevant part, the BOP email system's "Consent to Monitoring" agreement states: "I am notified of, acknowledge, and voluntarily consent to having my messages and transactional data (incoming and outgoing) monitored, read, [and] retained by Bureau staff . . . . I am notified of, acknowledge, and voluntarily consent that this provision applies to messages both to and from my attorney or other legal representative, and that such messages will not be treated as privileged communications." U.S. Dep't. of Justice, Fed. Bureau of Prisons, "Inmate Agreement for Participating in TRULINCS Electronic Messaging Program," https://www.bop.gov/policy/forms/BP_A0934.pdf.

[3] See, e.g., *United States v. Walia*, No. 14-CR-213-MKB, 2014 WL 3734522, at *16 (E.D.N.Y. Jul. 25, 2014) (denying defendant's pre-trial motion to prevent prosecutors from reviewing emails with his attorneys).

"Liberty's Last Champion"

EXHIBIT A

from the BOP.[4] As a result, inmates who wish to avoid government review of their attorney-client communications must rely on slower and costlier forms of communication, such as postal mail and in-person visits.

A recent letter from the United States Attorney's Office for the Eastern District of New York indicates that the BOP "now has the technical capability to filter out of its production of BOP email communications emails to and from a particular email address."[5] The letter further states that "the government now agrees to request that the BOP exclude from most productions communications between a defendant and his or her attorneys and other legal assistants and paralegals on their staff."[6] It is unclear what "most productions" encompasses, and it is also unclear whether other U.S. Attorneys' Offices have adopted similar policies concerning emails exchanged between prisoners and their attorneys.

The Supreme Court has consistently recognized the foundational importance of the attorney-client privilege as a means to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice."[7] The American Bar Association has also emphasized the importance of the privilege, and recently adopted a resolution urging "the Department of Justice and the Federal Bureau of Prisons to amend their policies . . . to permit attorneys and their incarcerated clients to communicate confidentially via email and thereby maintain the attorney-client privilege."[8]

NACDL seeks to inform the public about the extent to which United States Attorneys' Offices obtain attorney-client emails from the BOP. As email has largely supplanted traditional modes of communications, access to email may be the only way for inmates to engage in strategic discussions or confer on time-sensitive matters with their attorneys. This is especially true for the majority of inmates represented by publicly funded counsel that already strain to

---

[4] Letter from James D. Gatta, Criminal Division Chief, U.S. Attorney's Office for the Eastern District of New York, to Deirdre D. von Dornum, Attorney-in-Charge, Federal Defenders of New York, at 1 (Oct. 17, 2017) (attached hereto as Exhibit 1) ("The Office frequently requests that the BOP produce to the government BOP email communications and has taken the position that BOP email communications, including those between a defendant and his or her attorney, are not privileged communications.").

[5] *Id.*

[6] *Id.*

[7] *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009).

[8] Am. Bar Ass'n, Resolution 10A (adopted Feb. 2016), https://www.americanbar.org/content/dam/aba/images/abanews/2016mymres/10a.pdf.

provide adequate representation with limited resources.[9] Indeed, for inmates, access to confidential email can be the difference between a successful and failed defense.

## II. Records Requested

NACDL requests the following records made on or after January 1, 2006 by the U.S. Attorneys' Offices for the Southern District of Alabama, District of Arizona, Central District of California, Northern District of California, Southern District of California, District of Colorado, Middle District of Florida, Southern District of Florida, District of Hawaii, Northern District of Illinois, District of Kansas, Eastern District of Kentucky, Eastern District of Louisiana, District of Massachusetts, Eastern District of Michigan, District of Minnesota, Eastern District of New York, Southern District of New York, Eastern District of Pennsylvania, Western District of Pennsylvania, District of Puerto Rico, Eastern District of Texas, Southern District of Texas, District of the Virgin Islands, Eastern District of Virginia, Eastern District of Washington, and Western District of Washington:

1. All records containing those U.S. Attorneys' Offices' policies, practices, or procedures for requesting copies of inmates' attorney-client emails from the BOP.

2. All records containing those U.S. Attorneys' Offices' policies, practices, or procedures for requesting copies of inmates' emails from the BOP, including non-attorney-client emails.

3. All external guidance, including directives, emails, or other communications, sent to those U.S. Attorneys' Offices, regarding policies, practices, or procedures for requesting copies of inmates' attorney-client emails from the BOP.

4. All external guidance, including directives, emails, or other communications, sent to those U.S. Attorneys' Offices, regarding policies, practices, or procedures for requesting copies of inmates' emails from the BOP, including non-attorney-client emails.

5. All records containing those U.S. Attorneys' Offices' policies, practices, or procedures concerning the use of attorney-client emails once they have been obtained from the BOP.

---

[9] *See* Caroline Wolf Harlow, *Defense Counsel in Criminal Cases*, Bureau of Justice Statistics Special Report (Nov. 2000), *available at* https://www.bjs.gov/content/pub/pdf/dccc.pdf (noting that over eighty percent of felony defendants charged with violent crime in the nation's seventy-five largest counties relied on publicly financed attorneys); Ron Nixon, *Public Defenders Are Tightening Belts Because of Steep Federal Budget Cuts*, N.Y. TIMES (Aug. 23, 2013), *available at* https://nyti.ms/2GOiMWc (explaining that federal budget cuts in the 2014 fiscal year caused federal defender offices around the country to reduce staff and spend less on things like expert witnesses).

6. All legal or policy memoranda concerning any decision to change those U.S. Attorneys' Offices' policies, practices, or procedures for requesting inmates' emails from the BOP, including any policies, practices, or procedures for requesting that the BOP exclude from production any emails between an inmate and their attorney, as well as any policies, practices, or procedures concerning the circumstances under which the government does not request such exclusions.

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

We also ask that you provide responsive electronic records in their native file format or a generally accessible electronic format (e.g., for tabular data, XLS or CSV). *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, please provide the records electronically in a text-searchable, static-image format (e.g., PDF), in the best image quality in the agency's possession, and in separate Bates-stamped files.

### III. Application for Waiver or Limitation of Fees

NACDL requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further NACDL's commercial interest. NACDL will make any disclosed information available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citation omitted).

In addition, NACDL requests a waiver of search and review fees on the ground that it is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). NACDL qualifies as a "representative of the news media" because, as explained above, it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); *Serv. Women's Action Network v. U.S. Dep't of Defense*, 888 F. Supp. 2d 282, 287–88 (D. Conn. 2012); *ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004). Courts have found other non-profit organizations with research and public education missions similar to that of NACDL to be representatives of the news media. *See, e.g., Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*,

241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," qualified as a news media requester).

   For these reasons, NACDL is entitled to a fee waiver.

*  *  *

   Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email to clarify any aspect of the request or, where reasonable, to narrow it.

   I certify that the foregoing is true and correct.

               Sincerely,

               Jumana Musa, Director,
               Fourth Amendment Center,
               NACDL



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff

*Suite 5.400, 3CON Building*
*175 N Street, NE*
*Washington, DC 20530*

*(202) 252-6020*
*FAX (202) 252-6048*

June 12, 2019

Jumana Musa
National Association of Criminal Defense Lawyers
1660 L Street NW 12th Floor
Washington, D.C. 20036

Re: Request Number: <u>EOUSA 2018-005641</u>
Date of Receipt: <u>August 13, 2018</u>
Subject of Request: <u>Policy Documents Regarding Prisoner Emails, etc.</u>

Dear Mr. Musa:

      This is in reply to your Freedom of Information Act/Privacy Act request of August 16, 2018. Records were located in the District of United States Attorney's Office.

      The material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access. This letter is a partial release. An Enclosure to this letter explains the exemptions in more detail.

      B5, and b6

  __38__  page(s) are being released in full (RIF);
   __9__  page(s) are being released in part (RIP);
  __43__  page(s) are withheld in full (WIF) and
  _____page(s) were duplicate copies of material already processed.

      While processing this request, we located records which originated with the Federal Bureau of Prisons (BOP) and the Department of Justice Criminal Division (CRM). These records were found in the U.S. Attorney's Office files. We are referring the material and a copy of the request to BOP and CRM for a direct response you.

      This is a final action on this above-numbered request. If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following website: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

EXHIBIT B

You may contact our FOIA Public Liaison at the Executive Office for United States Attorneys (EOUSA) for any further assistance and to discuss any aspect of your request. The contact information for EOUSA is 175 N Street, NE, Suite 5.400, Washington, DC 20530; telephone at 202-252-6020; or facsimile 202-252-6048. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Kevin Krebs
Assistant Director

Enclosure

Form No. 0024 – 12/15

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF CRIMINAL    )
DEFENSE LAWYERS    )
    )
    Plaintiff,    )
    )
v.    )    Civil Action No. 18-cv-02399 (KBJ)
    )
    )
FEDERAL BUREAU OF PRISONS, ET AL.    )
    )
    Defendant.    )
    )

## DECLARATION OF TERESA ROBINSON

I, Teresa Robinson, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and other personnel during the course of my employment, hereby declare as follows relating to the above-titled matter:

1. I am a Paralegal Specialist for the Civil Division of the United States Attorney's Office for the District of Colorado ("USACO"). Since approximately April 2016, my duties have included serving as the Freedom of Information Act/Privacy Act ("FOIA//PA") Coordinator for the USACO Civil Division. I later became the FOIA//PA Coordinator for both the USACO Civil and Criminal Divisions. My responsibilities in this position include coordinating with the Executive Office for United States Attorneys in response to all FOIA requests for records located in the USACO, and working with USACO employees to search for and gather documents in response to FOIA requests.

1

2.  Upon receiving a FOIA request I immediately log it into an Excel spreadsheet, save the request, by FOIA number, in the T: drive of my computer and, finally, print out a copy of the request for review.

3.  After reviewing a FOIA request, I conduct a search of the Legal Information Network System (LIONS or CaseView)[1] to determine the following: (1) if there is a matter regarding the subject matter of the request, (2) if the requester is a criminal defendant, (3) if the matter is open or closed, and, finally, (4) who the assigned Assistant United States Attorney(s) ("AUSA") is or was. If the requester is a criminal defendant, I compare the participant information screen in LIONS to the identifying information provided by the requester. For example, I compare the social security number, Marshals number, and date of birth, to verify I am retrieving the correct case file. Next I retrieve the docket sheet to gain an understanding of what transpired in the case. I then contact the assigned AUSA(s) and his/her legal assistant (if the AUSA is still employed with the USACO), giving them notice that a FOIA request has been received on the matter and a copy of the request. I ask the AUSA(s) to search their computer drives, e-mail account, T: drive, and hard-copy documents, for any documents which would fit the parameters of the request. I request a response to my email indicating their findings.  I also ask the AUSA(s) to identify (1) any other locations where responsive documents might be located, and (2) anyone else in the office who might have responsive records.

4.  If the case is closed, I determine whether the case file is being housed in our office in the "closed cases" filing area, or if the file has been sent to the Federal Records Center (FRC). If it is still located in our office, I retrieve the file. If it has already been shipped to the FRC, I then

---

[1] The LIONS system was phased out in 2017 and the USACO now uses CaseView.

email the Records Coordinator and request that the entire case file be obtained from the FRC. Once I have received the case file, I begin searching through records.

**FOIA 2018-005641**

5. In response to FOIA 2018-005641, the USACO began its search by consulting supervisory attorneys with knowledge of the office's written policies and procedures.

6. First Assistant United States Attorney Matthew Kirsch has been with the USACO for over 18 years. In addition to FAUSA, he was Chief of the Criminal Division from 2016-2018, and Chief of the Economic Crimes Section of the Criminal Division from 2010-2016. Prior to mid-2010, AUSA Kirsch was a line AUSA in the Criminal Division. In these various roles AUSA Kirsch has been responsible for promulgating, overseeing, and implementing Criminal Division policies. To determine whether the Criminal Division had documents responsive to the FOIA request, AUSA Kirsch also consulted with AUSA Suneeta Hazra, who was Criminal Chief at the time the request was submitted. He also reviewed Criminal Division policies posted on the USACO's intranet website. AUSA Kirsch is aware that EOUSA issued a memorandum in 2009 relating to requests for inmate email communications, but AUSA Kirsch determined that the Criminal Division of the USACO had no additional written "policies" or "procedures" responsive to the subject-matter of the request.

7. AUSA Kevin Traskos is the current Chief of the USACO's Civil Division.  He has been Chief since 2010, and prior to that was a line Civil AUSA in the USACO for eight years. In his capacity as Chief and line AUSA, he has supervised or handled hundreds of civil cases involving inmates incarcerated in the BOP. As Chief, AUSA Traskos promulgates and oversees all internal

policies for the Civil Division of the USACO. According to AUSA Traskos, there are no formal written "policies" or "procedures" responsive to the FOIA request that pertain to the Civil Division.

8. Although there are no written policies responsive to the request, the USACO determined that line AUSAs handling criminal prosecutions and civil litigation may have received or generated information relating to informal policies and procedures, or information relating to "practices," for requesting inmates' emails from the BOP, including attorney-client emails.

9. Cases in the USACO are not organized by any criteria that would permit a reasonable search of every case to determine whether policies, practices, or procedures regarding inmate emails might be involved. Thus, the only reasonable method of searching for documents responsive to this request is to query AUSAs individually to determine whether they had experience with policies, practices, or procedures relating to inmate emails.

10. An email was sent to every AUSA in the Civil and Criminal Divisions that described the subject matter of FOIA 2018-005641, and included as an attachment a copy of the original request. AUSAs were asked to respond to the email regardless of whether they possessed or believed they may possess responsive documents.

11. Every Civil and Criminal AUSA in the USACO who has been directly responsible for or has supervised cases and is not mentioned in this declaration responded to the email referenced in the prior paragraph and confirmed that he or she had no responsive documents. Below I describe in more detail the searches conducted in response to this FOIA request:

12. AUSA Zeyen Wu identified one civil-defensive case where he received inmate emails from the BOP. All documents relating to this case in AUSA Wu's possession that might contain responsive information were saved in a single folder on the USACO's electronic server. AUSA

4

Wu searched the electronic files in this folder manually, and found no responsive documents. AUSA Wu no longer possessed emails in his Microsoft Outlook email Inbox from the time period he received inmate emails relating to this case. He thus searched in his Proofpoint email archive system using the search terms "TRULINCS," "filter team," "BOP Consent to Monitoring," and "inmates attorney-client emails." He found a few emails that might be responsive to the FOIA request and turned them over to me.

13. AUSA Susan Prose identified four civil-defensive cases where she received inmate emails from the BOP. AUSA Prose determined that potentially responsive documents would only be contained in email exchanges relating to these cases. AUSA Prose organizes documents for each case in a Microsoft Office .pst folder, and saves all substantive emails relating to cases in these .pst files. AUSA Prose searched each of her .pst files for the four cases using the search terms "TRULINCS," "filter team," "BOP Consent to Monitoring," and "inmates attorney-client emails." AUSA Prose did not find any responsive documents.

14. AUSA Marcy Cook identified four to five civil-defensive cases where discovery may have involved policies regarding inmates' means of communication within the BOP. AUSA Cook searched her files for those cases, including her case documents, which are indexed using Perceptive Workgroup Search. She searched for "TRULINCS" within that index. She found multiple copies of the BOP Program Statement and Institution Supplement on Inmate Correspondence. She reviewed those documents and confirmed that they do not include any information relating to policies or procedures relating to "requesting" copies of inmate emails. AUSA Cook found no other potentially responsive documents. AUSA Cook determined that she never engaged in any communications with the BOP or otherwise regarding policies or procedures relating to "requesting" copies of inmate emails. This determination was made based

on the fact that she has never requested inmate emails, and that most of the cases involved

inmates housed at the Administrative Maximum ("ADX") facility at FCC-Florence, who did not

have access to email through TRULINCS.

15. AUSA Lauren Dickey identified one civil-defensive case where she received inmate

emails from the BOP. All documents relating this case in AUSA Dickey's possession that might

contain responsive information were saved in a single folder on the USACO's electronic server.

AUSA Dickey searched the electronic files in this folder manually, and found no responsive

documents. AUSA Dickey saved all of her substantive emails relating to this case in a Microsoft

Outlook folder, and she had not deleted any emails relating to this case. She searched that

Outlook folder using the search terms "TRULINCS," "filter team," "BOP Consent to

Monitoring," and "inmates attorney-client emails." She reviewed the results of those searches

and found no responsive documents.

16. AUSA Pegeen Rhyne located an email from a BOP attorney sent to her on March 28,

2018, that contained a 2009 memorandum from EOUSA relating to requests for inmate emails.

Although the memorandum references a separate policy and a sample letter, AUSA Rhyne does

not have a copy of those documents. At the time she received the email from the BOP attorney,

she was only interested in inmate phone calls, and the policy regarding inmate emails was sent to

her incidentally, so she did not follow-up to request additional information about inmate emails,

nor did she receive any information regarding inmate emails other than what is in the March 28,

2018, email. AUSA Rhyne identified an ongoing criminal investigation where the investigative

agents received BOP inmate emails. AUSA Rhyne manually searched her electronic files

relating to this ongoing matter, and her emails relating to this ongoing matter, and she found no

other responsive documents.

17. AUSA Peter McNeilly identified two criminal prosecutions where he received inmate emails from the BOP. AUSA McNeilly stores all of his emails for a particular case in a folder in a Microsoft Outlook .pst file. He searched in both of the case folders for the two cases he identified using the keywords "Email," and "Kizzier," which is the name of the BOP employee that he knew he communicated with regarding all requests for inmate emails. He also conducted a manual search of these email folders. AUSA McNeilly also searched in his electronic files relating to these cases in folders entitled "Warrants, Petitions, Records Requests," and "Guidance and Policies." AUSA McNeilly searched in an email archive folder using the keyword "BOP," and he searched his Proofpoint email archive with the keyword "Kizzier." Based on these searches, AUSA McNeilly found a few emails that might be responsive to the FOIA request and turned them over to me.

18. AUSA Emily Treaster identified one criminal prosecution where she received inmate emails from the BOP. She searched her existing emails for all emails that contained the word "Robinson," the name of the criminal defendant, and she also separately searched her inbox for emails that included the subject line "Privileged communications" because there was a string of emails related to the criminal defendant with emails under that subject line. She also reviewed the entire contents of her inbox folder for the case; that folder consists of emails that she intentionally saved to that location. She searched her sent inbox for all emails that she sent to the criminal defendant's trial attorney. Finally, she searched her inbox and sent mailbox for emails to and from BOP employee Michael Barrera, who assisted her in obtaining the inmate's emails. AUSA Treaster found a few emails that might be responsive to the FOIA request and turned them over to me. A USACO staff member recognized attorney-client communications when she was reviewing the inmate's emails. The staff member stopped reviewing the emails and after

verbally consulting with a supervisor, AUSA Julia Martinez was assigned to conduct a filter-team privilege review to segregate emails that may have been considered privileged.

19. AUSA Julia Martinez also conducted a search of her emails relating to the filter-team privilege review she conducted for AUSA Treaster's case. She did not find any responsive documents.

20. AUSA David Tonini identified one criminal prosecution that includes an ongoing investigation where he received inmate emails from the BOP. AUSA Tonini manually searched his emails and electronic case files for this case, and he did not find any responsive documents.

21. AUSA Tim Neff identified one criminal prosecution where he received inmate emails from the BOP. AUSA Neff manually searched hard-copy files for this case, and he also conducted a manual search of electronic files, including emails, relating to the case. AUSA Neff did not find any responsive documents.

22. I sent all of the potentially responsive documents to EOUSA. To the best of my knowledge, there are no other places in the USACO where responsive records exist.

23.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 26th day of October, 2020.

**TERESA ROBINSON** Digitally signed by TERESA ROBINSON
Date: 2020.10.26 12:42:34 -06'00'

Teresa Robinson
Paralegal Specialist
U.S. Attorney's Office
for the District of Colorado

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-02399 (KBJ) |
| v. | ) ) | |
| FEDERAL BUREAU OF PRISONS, ET AL. | ) ) | |
| Defendant. | ) ) ) | |

### DECLARATION OF FRANCYS MARCENAROS

I, Francys Marcenaros, declare as follows:

1.    I am the Freedom of Information Act ("FOIA") Paralegal Specialist for the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL"). One of my responsibilities is coordinating with the Executive Office for the United States Attorneys ("EOUSA") regarding Freedom of Information Act/Privacy Act ("FOIA/PA") requests for records located in the USAO-SDFL. I search for, identify, and forward responsive records to EOUSA for review and processing. I do not make determinations regarding the release or withholding of records. It is my understanding that EOUSA FOIA/PA staff, in accordance with 28 C.F.R. § 16.3, process and respond to all FOIA/PA requests for all United States Attorney's Offices, including USAO-SDFL. I have been the FOIA point of contact for the USAO-SDFL since January 2016.

2.    I am familiar with the procedures followed by the USAO-SDFL in searching for records responsive to FOIA/PA requests.

3.    The purpose of this declaration is to provide the Court with additional information regarding the searches performed by the USAO-SDFL to locate records responsive to Plaintiff's

FOIA request in question.

4.      On August 2, 2018, the Plaintiff submitted a FOIA request. EOUSA acknowledged its receipt of the FOIA request on that date and assigned it FOIA No. 2018-005641. The request was for "records relating to the policies, practices, procedures and guidelines of this office in order to obtain attorney-client emails from the BOP".

5.      On February 8, 2019, I retrieved the referenced FOIA request from FOIAonline, an automated database system designed to coordinate the processing of every aspect of FOIA/PA requests to United States Attorney's Offices, including USAO-SDFL.

**USAO-SDFL SEARCH FOR RESPONSIVE RECORDS**

6.      To process Plaintiff's FOIA request, FOIA No. 2018-005641, I transmitted an email to the USAO-SDFL's Chief, Criminal Division, Joan Silverstein ("SDFL's Chief, Criminal Division ") notifying of the substance of Plaintiff's FOIA request. I asked SDFL's Chief, Criminal Division to contact me if she had any records responsive to the request, "relating to the policies, practices, procedures and guidelines of this office in order to obtain attorney-client emails from the BOP."

7.      On February 20, 2019, SDFL's Chief, Criminal Division, identified as responsive to the request certain provisions from the USA Book. The USA Book provides guidance to DOJ attorneys on legal issues and policy.

8.      On February 25, 2019, our office provided these responsive records to EOUSA for its review and processing. I provided the records by uploading them into the FOIA online portal and notifying EOUSA that the records had been uploaded.

9.      On or about October 13, 2020, EOUSA informed the USAO-SDFL's FOIA Unit via email that the requester had filed a lawsuit regarding the subject FOIA request. EOUSA asked

the USAO-SFL to perform a supplemental search on an expedited basis.  In particular, EOUSA directed me to search for and provide any emails from or to any Assistant United States Attorneys ("AUSAs") in the USAO-SDFL's criminal division leadership who would have been involved in discussions about the Office's policies regarding requests for inmate emails.

10.     On October 13, 2020, I emailed the SDFL's Criminal Division Chief to advise her of EOUSA's request for the performance of an additional search.  I asked the Criminal Division Chief which, if any, other AUSA's would have been involved in discussions about the Office's policies regarding requests for inmate emails.   The Criminal Division Chief identified two senior level AUSA's whom she recalled were involved in a discussion of processes for requesting inmate emails from the Bureau of Prisons.   The Criminal Division Chief also provided one email which she remembered having sent out to line AUSAs in the USAO's criminal division, regarding the process of requesting inmate emails from BOP.

11.     On October 19, 2020, I emailed the senior level AUSAs identified to me by the SDFL Criminal Division Chief, explaining the nature of the request for records and requesting that they contact me if they had any records that were responsive to the request.

12.     Together with the Criminal Division Chief and the two senior level AUSAs she had identified, we undertook searches  of each individual's email archives using the following terms: "inmate emails," "inmate e-mails," "prisoner emails," "prisoner e-mails," "jail emails," and "jail e-mails," and made various additional searches for "inmate calls," "inmate telephone calls," "inmate phone calls," "prisoner calls," "prisoner telephone calls," "prisoner phone calls," "jail calls," "jail telephone calls," and "jail phone calls". We also searched for BOP's counsel name in Miami with whom the USAO-SDFL would have discussed the subject practices, "D'Aguiar," and "Hector Martinez".  Additionally, we searched the document folders on their computer hard

drive using various permutations of those terms and any specific folders or areas where they thought responsive material might have been saved. The search yielded to potentially responsive records as follows: 35 emails, 12 memorandums and 1 page of attorney notes.

13.     On October 23, 2020, the USAO-SDFL provided to EOUSA via email all of the supplemental records and emails that were located which were responsive to the request at issue.

14.     I believe the search I performed on behalf of USAO-SDFL was reasonably calculated to uncover and identify all records potentially responsive to plaintiff's FOIA request that were within the custody, control, or possession of the USAO-SDFL.  I am not aware of any other method or means by which a further search could be conducted that would likely uncover additional responsive records.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 29th day of October 2020.

Francys Marcenaros
FOIA Paralegal Specialist
United States Attorney's Office for the
Southern District of Florida
United States Department of Justice

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

National Association
of Criminal Defense Lawyers,

      Plaintiff,

    vs.

Federal Bureau of Prisons
and Department of Justice,

      Defendants.

**18-CV-02399-KBJ**

**DECLARATION
OF MICHAEL A. AMBRI**

Michael A. Ambri states as follows:

1.    I am the Civil Chief for the United States Attorney's Office for the District of Arizona (the "USAO").

2.    As part of my duties, I at times help coordinate the USAO's searches for records in response to Freedom of Information Act ("FOIA") and Privacy Act ("PA") requests. I helped coordinate the USAO's search for records in connection with the FOIA request in the above-referenced action.

3.    This Declaration describes the search conducted within the USAO for records responsive to the FOIA request. This Declaration is based upon my actions taken to search for potentially responsive records and upon information provided to me by others within the USAO who helped search for records.

4.    The FOIA request was circulated to at least 19 Assistant United States Attorneys within the USAO including myself, the two criminal division chiefs and unit chiefs. After reading the FOIA request, I examined all written Department of Justice and USAO policies, memoranda and guidance, available to the USAO through the Department of Justice intranet site and on the USAO's intranet site, and searched my archived email using key words such as "prisoner email," "Bureau of Prisons email," "inmate email," "BOP email." The criminal division chiefs conferred with AUSAs within their supervisory chain to determine whether potentially responsive records might exist, and also searched

1   the available written Department of Justice policies, memoranda and guidance. The FOIA

2   request was circulated to further select Assistant United States Attorneys with significant

3   experience within the USAO to confirm whether potentially responsive records might exist

4   within the USAO and who also searched their emails and paper files where they believed

5   such materials might be located if they existed.

6         5.    At the request of the Executive Office for United States Attorneys

7   ("EOUSA"), after the previous searches, the USAO went back and searched for potentially

8   responsive records to make sure it had conducted a thorough search. The FOIA request was

9   again distributed to division chiefs within the USAO who further consulted with section

10   chiefs and AUSAs within the USAO. We reviewed all written DOJ and USAO policies

11   and procedures in electronic and written form including the Department of Justice's and

12   USAO's intranet sites and including all available records regardless of date. We also had

13   several AUSAs, including division and section chiefs, search their email folders, including

14   archived emails, using key words including "prisoner email," "inmate email," "BOP

15   email," and "Bureau of Prisons email."

16         6.    To the best of my knowledge, and in consultation with others in the USAO,

17   I am aware of no other locations within the USAO where responsive records might exist.

18         7.    Two potentially responsive records were found. The first is a 2009

19   Memorandum titled Prisoner E-mail Accounts by Marshall Jarrett. The second is a web

20   page from DOJ Book, the Department of Justice's internal electronic legal resource

21   manual. DOJ Book is a compilation of attorney work product on a variety of subjects and

22   practice areas created by DOJ attorneys for internal use by DOJ attorneys.

23         I declare under penalty of perjury that the foregoing is true and correct to the best

24   of my information and belief.

25         EXECUTED THIS 28th day of October, 2020.

26                         MICHAEL AMBRI  Digitally signed by MICHAEL AMBRI
                                       Date: 2020.10.28 15:26:26 -07'00'

27

28                         MICHAEL A. AMBRI
                          Civil Chief, District of Arizona

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 18-cv-02399 (KBJ) |
| FEDERAL BUREAU OF PRISONS, ET AL. | ) ) ) | |
| Defendant. | ) | |

## DECLARATION OF MERLE A. PAYNE

I, Merle A. Payne declare as follows:

1.      I am currently a Paralegal Specialist in the Criminal Division of the United States Attorneys Office for the Northern District of Illinois ("USAO/NDIL").   My responsibilities include serving as the FOIA Coordinator ("liaison") to the Freedom of Information Act and Privacy Act Staff ("FOIA/PA") for the Executive Office of the United States Attorneys ("EOUSA") in Washington, D.C.

2.      My duties require me to receive and assign FOIA requests filed under both the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, *amended by* the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and the Privacy Act of 1974 ("PA"), 5 U.S.C. §552a, when requested records are identified as likely to be located at the Northern District of Illinois.

3.      The statements I make in this declaration are made on the basis of my review of the official files and records of the USAO/NDIL and my personal knowledge, including knowledge acquired by me through the performance of my official duties.

4.      On February 7, 2019, Amber Baker-Mills, former FOIA Coordinator, conducted a records search for FOIA request 2018-005641 from Jumana Musa regarding a search for BOP inmate emails. Amber used the search term 'BOP Inmate Emails' in an attempt to locate records specified in this FOIA request. A search of NDIL MicroSoft Outlook emails using the search term 'BOP Inmate Emails' was performed. Several potentially responsive emails were located and uploaded to EOUSA FOIA on 02/07/2019 along with the FOIA checklist.

5.      Meghan Morrissey, Executive, AUSA, was also emailed asking for assistance in locating responsive records for this FOIA request. Amber was directed to review NDIL BOPMCC-USMS Issues/Prisoner Email Accounts folder for any responsive information. Any responsive records she located were forwarded to EOUSA FOIA at that time.

6.      On September 21, 2020, I was contacted by EOUSA FOIA, to do a supplemental search of ILN email records in an effort to locate USAO policies and procedures for prisoner email and issues relating to attorney client privilege, etc. from 2006 to present.

7.      In my efforts to locate records, I ran a word search on the ILN Intranet website using the following search terms: Bureau of Prisons; BOP; Consent to Monitoring Agreement and Trulincs looking for responsive emails from 2006 to present. After running this search, I was not able to locate any responsive records.

8.      I contacted ILN Executive AUSA Meghan Morrissey and asked her to conduct a search of her emails using the following search terms: Bureau of Prisons; BOP; Consent to Monitoring and Trulincs in an attempt to locate responsive records. Meghan ran an email search and was unable to locate any responsive records.

9.      Lindsay Jenkins, Criminal Chief, AUSA, was also contacted and asked to run an email search using the following search terms: Bureau of Prisons; BOP; Consent to Monitoring

and Trulincs in a continued effort to locate responsive records.  Lindsay ran an email search and located one record that may be a responsive document to this request.  I sent this document to EOUSA.

10.     Meghan Morrissey, Executive AUSA, and Lindsay Jenkins, Criminal Chief AUSA, were asked to conduct the search because they have both been in our office since 2006 and worked closely with the US Attorney and First Assistant and would have first-hand knowledge of any policies and procedures that our office would need to follow or produce.  Additionally, I also asked IT to run a search of former AUSAs in the office, but they have been gone for more than three years and IT does not archive emails over three years.  Amber Baker-Mills included two responsive documents from two former AUSAs, and I requested IT run a search on their emails just to make sure everything was captured.

11.     To the best of my knowledge, I am not aware of any other locations within USAO ILN that responsive records would exist.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the forgoing is true and correct.

Executed this _27th_ day of _October_ 2020.

Merle A. Payne
Paralegal Specialist
USAO NDIL

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS and DEPARTMENT OF JUSTICE,<br><br>    Defendants. |

Case No. 18-cv-02399-KBJ

### Declaration of Theresa M. Boyer

I, Theresa M. Boyer, declare as follows:

1. I am the Freedom of Information Act ("FOIA") coordinator and point of contact for the United States Attorney's Office for the Eastern District of Michigan.

2. My responsibilities include serving as the Freedom of Information Act/Privacy Act (FOIA/PA) contact for the Eastern District of Michigan. In this capacity, I serve as a liaison to the FOIA/PA Staff for the Executive Office for the United States Attorneys ("EOUSA") in Washington, D.C., which processes and responds to FOIA/PA requested located in the USA/EDMI.

3. My duties include receiving and reviewing requests made pursuant to FOIA, 5 U.S.C. 552, and/or the PA, 5 U.S.C. § 552a, for the records maintained

by, or located in the USA/EDMI.   I am responsible for the searches conducted by the USAO/EDMI for records responsive to FOIA/PA requests.

4.  The statements I make in this declaration are made on the basis of my review of the official rules and records of the USAO/EDMI, my own personal knowledge, or on the basis of the knowledge acquired by me through the performance of my official duties.

5.  I am familiar with the procedures followed by the USAO/EDMI in conducting searches for the records responsive to FOIA/PA requests.  Also, I am familiar with the FOIA request submitted by Jumana Musa dated August 2, 2018, which is FOIA request EOUSA-2018-005641.

6.  In order to locate records responsive to Ms. Musa's request, I reviewed her request and took the following additional steps to search for potentially responsive records.

7.  On February 5, 2019, I assigned the task to myself in the database FOIAonline.gov to process FOIA requests, EOUSA-2018-005641. The assignment of this task was delayed due to a furlough being in place from December 21, 2018 to January 28, 2019, which was followed by two snow days on January 30, 2019 and January 31, 2019.  On Tuesday, February 5, 2019, I reviewed the request of Jumana Musa. On that same day, I sent an email to U.S. Attorney Matthew Schneider, First Assistant U.S. Attorney Saima Mohsin,

Criminal Chief Mark Chutkow and Deputy Criminal Chief Michael Martin advising them that a FOIA request had been received seeking information relating to "policies regarding requesting copies of inmates' emails from the BOP for the time period of January 1, 2006 to present". A meeting with FAUSA Mohsin and Deputy Criminal Chief Martin was scheduled later that same day to discuss and review this FOIA request. It should be noted that Criminal Division Chief Mark Chutkow was on medical leave at this time and therefore did not participate in the February 5, 2019 meeting or in the search for responsive records.

8. During the February 5, 2019 meeting, a copy of Ms. Musa's request was provided to Ms. Mohsin and Mr. Martin. After reviewing the request, the attendees determined that a review of electronic records using the search terms "policies, practices or procedures to request inmates' attorney client emails from the Bureau of Prisons" for the requested time-frame of January 1, 2006 to the present. Ms. Mohsin and Mr. Martin indicated that our office had no policies regarding the seeking of inmates' attorney-client emails from the Bureau of Prisons, as any such policies would be those of the BOP and not the USAO. Nonetheless, FAUSA Mohsin and Deputy Chief Martin agreed to search their emails and physical records for any responsive records that they may have had within their control.

9. After this meeting, FAUSA Mohsin and Deputy Chief Martin produced records to me. FAUSA Mohsin provided me with an email dated May 4, 2009 from Assistant United States Attorney Eric Straus. This email, which included two attachments, was included in our response to EOUSA. I sent these potentially responsive records to EOUSA.

10. On February 14, 2019, I also conducted a search and review of physical records of prior United States Attorneys for the Eastern District of Michigan with tenures after January 1, 2006. There was one box located from the tenure of United States Attorney Stephen Murphy.   I performed a search of this box using the broad term "inmate emails". No responsive records were located during this search.

11. On February 19, 2019, all potentially responsive records that I had located were sent to EOUSA.

12. On July 16, 2020, I received an email from EOUSA asking me to double check my search methods to ensure that all relevant places for responsive records had been searched.

13. On July 18, 2020, I reviewed my search methods and procedure and verified my results.

14. Pursuant to request received on September 18, 2020, a supplemental search was performed after receiving an email from EOUSA. Our office

conducted this supplemental email search, using the USAmail search application.  The following search terms/statements were used in this search:

- **"BOP"** *or* **"Bureau of Prisons" AND Trulincs** *or* **"filter team"** *or* **"inmate transactional data"**
- **"BOP"** *or* **"Bureau of Prisons" AND "Consent to Monitoring Agreement"** *or* **"inmate email" within 20.**

15.   In order to produce a comprehensive search for records and due to the duration of time between the searches, our office conducted the supplemental search as if it were a new FOIA request.

16.   Each executive team member's email was searched using the two search statements referenced above and the results were reviewed for responsive records.   The Executive team includes U.S. Attorney Matthew Schneider, First Assistant U.S. Attorney Saima Mohsin, Criminal Division Chief Mark Chutkow and Criminal Division Deputy Chief Benjamin Coats.  At the time of the first search our Criminal Division Deputy Chief was Michael Martin.  Our current Criminal Division Deputy is Benjamin Coats.  Even though he was no longer the Criminal Division Deputy Chief, Mr. Martin participated in the second search.  Although the Appellate Division Chief and the Civil Division Chief also are members of the Executive team, we did not review their records as we did not believe that they would contain responsive materials.

17.    During the time between the February 2019 search and the supplemental September 2020 search, our office engaged in a discussion regarding inmate emails. This discussion resulted in a memorandum being produced by current Deputy Chief, Benjamin Coats on December 16, 2019. This memorandum was produced as a responsive record to EOUSA.

18.    To the best of my knowledge, a search was conducted of all known areas where records may exist and any responsive records that were located have been produced to EOUSA.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief. Executed on this 23rd day of October, 2020.

THERESA
BOYER

Digitally signed by
THERESA BOYER
Date: 2020.10.23
16:03:28 -04'00'

| NAME | Theresa M. Boyer |
| TITLE | Records and Information Management Specialist |
| DISTRICT | Eastern District of Michigan |

1                 UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLUMBIA

3

4  NATIONAL ASSOCIATION OF CRIMINAL

5  DEFENSE LAWYERS,

6

7             Plaintiff,

8                              Case No. 18-cv-02399-KBJ

9  v.

10

11  FEDERAL BUREAU OF PRISONS and

12  DEPARTMENT OF JUSTICE,

13

14            Defendants.

15

16                **AFFIDAVIT OF THOMAS M. WOODS**

17  I, Thomas M. Woods, an Assistant United States Attorney for the Western District of

18  Washington, Seattle, Washington, hereby state as follows:

19        1.      I am an Assistant United States Attorney for the Western District of

20  Washington, and have been since 2007.  I am currently the Deputy Chief of the Terrorism

21  and Violent Crimes Unit.  I have served as the Office's Criminal Discovery Coordinator

22  since 2012.

23        2.      On May 4, 2020, the Executive Office for United States Attorneys

24  ("EOUSA") sent us a FOIA request, dated August 2, 2018, from the National Association

25  of Criminal Defense Lawyers ("NACDL").  Under the request, our Office was asked to

26  gather the following documents:

27

28

AFFIDAVIT OF WOODS - 1

1. All records containing those U.S. Attorneys' Offices' policies, practices, or procedures for requesting copies of inmates' attorney-client emails from the BOP.

2. All records containing those U.S. Attorneys' Offices' policies, practices, or procedures for requesting copies of inmates' emails from the BOP, including non-attorney-client emails.

3. All external guidance, including directives, emails, or other communications, sent to those U.S. Attorneys' Offices, regarding policies, practices, or procedures for requesting copies of inmates' attorney-client emails from the BOP.

4. All external guidance, including directives, emails, or other communications, sent to those U.S. Attorneys' Offices, regarding policies, practices, or procedures for requesting copies of inmates' emails from the BOP, including non-attorney-client emails.

5. All records containing those U.S. Attorneys' Offices' policies, practices, or procedures concerning the use of attorney-client emails once they have been obtained from the BOP.

6. All legal or policy memoranda concerning any decision to change those U.S. Attorneys' Offices' policies, practices, or procedures for requesting inmates' emails from the BOP, including any policies, practices, or procedures for requesting that the BOP exclude from production any emails between an inmate and their attorney, as well as any policies, practices, or procedures concerning the circumstances under which the government does not request such exclusions.

      3.      The request asked for documents created on or after January 1, 2006. We were advised that we should gather documents created through the date of our search. After consideration, we believed that the following individuals were the persons who reasonably could have responsive documents:

Tessa Gorman – Criminal Chief (2009-19) and First Assistant (2019-present)
Sarah Vogel – Criminal Chief (2019-present)
Robert Westinghouse – Criminal Chief (pre-2006-2009) and Criminal Discovery Coordinator (pre-2006-2012)
Thomas Woods – Criminal Discovery Coordinator (2012-present)
Jenny Durkan – United States Attorney (2009-2014)
Annette Hayes – United States Attorney (2014-2019)

AFFIDAVIT OF WOODS - 2

1    4.    Mr. Westinghouse left our office in 2013.  We were unable to locate any

2  relevant files that were not otherwise transferred to one of the above-mentioned

3  individuals.  His emails are no longer retrievable.

4    5.    Ms. Gorman, Ms. Vogel, and Mr. Woods searched their hard copy and

5  network files.  They also searched their archived emails.  Finally, they each searched

6  USAMail for documents that contain the following search terms, which we believed

7  would reasonably capture all responsive emails:

8  FDC email*
   Inmate email*
9  Jailhouse email*
10 Jail email*
   BOP email"
11 FDC AND filter

12

13 (* represents a wildcard character)

14 Potentially responsive records were located and provided to EOUSA.

15    6.    Ms. Gorman searched the remaining, available network files of former U.S.

16 Attorneys Durkan and Hayes.  Ms. Gorman also searched former U.S. Attorney Durkan's

17 USAMail using the above-identified search terms.  Ms. Gorman also searched former

18 U.S. Attorney Annette Hayes emails that were contained in Web Outlook.  Ms. Gorman

19 used the following search terms for that search:

20  "FDC email"
    "inmate email"
21  "BOP email"
22  "jail email"
    "prisoner email"
23  "Trulincs"
24  Jailhouse email*
    FDC AND filter
25

26 No potentially responsive documents were located that were not otherwise provided to

27 EOUSA pursuant to the searches conducted in paragraph 5.

28

AFFIDAVIT OF WOODS - 3

1      7.     Finally, Ms. Gorman searched an index of former U.S. Attorney Hayes'

2  hard-copy records with the following search terms:

3  FDC
    BOP
4  Prisoner
5  Inmate
    Filter
6  Jail
7  Trulincs

8  No potentially responsive documents were located.

9      8.    As outlined above, we provided all potentially responsive documents

10  pursuant to our searches above to EOUSA.  We are not aware of any other locations in

11  our office where it is reasonable to believe that potentially responsive records would be

12  found using reasonable search efforts.

13      I declare the foregoing to be true to the best of my knowledge and belief under

14  penalty of perjury.

15      Dated this 27th day of October 2020.

16

17        THOMAS M. WOODS
18        Assistant United States Attorney

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF WOODS - 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS,

        Plaintiff,

v.

FEDERAL BUREAU OF PRISONS and
DEPARTMENT OF JUSTICE,

        Defendants.

Case No. 18-cv-02399-KBJ

## DECLARATION OF SUSANNE HUSTED

I, Susanne Husted, pursuant to Title 28, United States Code, Section 1746, declare and state
as follows:

1. I am a Paralegal Specialist and the Freedom of Information Act/Privacy Act
("FOIA/PA") point of contact for the United States Attorney's Office for the District of
Massachusetts ("USAO/MA"). My office is located in Boston, Massachusetts.

2. I have been employed at the USAO/MA since March 2010. Beginning in March 2011, I
served as primary FOIA/PA point of contact for the Civil Division of the office, and from
December 2011 through December 2018, as primary FOIA/PA point of contact for both the Civil
and Criminal Divisions. Beginning in January 2019 to the present, I have served as a secondary
FOIA/PA point of contact for both Divisions.

3. As a FOIA/PA contact for the USAO/MA, I serve as a liaison to the FOIA/PA Staff for
the Executive Office for United States Attorneys ("EOUSA") in Washington, D.C, which
processes and responds to FOIA/PA requests located in the USAO/MA.

4. My duties include receiving and reviewing requests made pursuant to FOIA, 5 U.S.C. §
552, and/or the PA, 5 U.S.C. § 552a, for records maintained by, or located in the USAO/MA. I

am responsible for the searches conducted by the USAO/MA for records responsive to FOIA/PA requests.

5.    The statements I make in this declaration are made on the basis of my review of the official files and records of the USAO/MA, my own personal knowledge, or on the basis of knowledge acquired by me through the performance of my official duties.

6.    I am familiar with the procedures followed by the USAO/MA in conducting searches for records responsive to FOIA/PA requests.

7.    I am familiar with the FOIA request submitted by Plaintiff, National Association of Criminal Defense Lawyers, which relate to FOIA Request No. 2018-005641.

8.    In order to locate records responsive to Plaintiff's request, I reviewed the request, and took additional steps to search for potentially responsive records.

9.    On or about February 9, 2019, the Criminal Division Chief and Deputy Chief were sent a copy of the Plaintiff's FOIA request and asked if they were aware of any policies or other communication regarding procedures related to the request.

10.    On or about February 11, 2019, the USAO/MA primary FOIA contact and I met with the Deputy Criminal Division chief to review the FOIA request.  During that meeting, the Deputy Chief stated there were unaware of any responsive documents or communications.

11.    On or about February 19, 2019, I emailed the USAO/MA taint review coordinator a copy of the FOIA request and asked if they were aware of any documents or communications that would be responsive and specific to the Bureau of Prisons.  The taint review coordinator was not aware of any.

2

12.     On or about February 19, 2019, I reviewed manuals and policies for the Criminal

Division available to all employees on the USAO/MA intranet for any responsive documents.

None were found.

13.     On or about February 21, 2019, I sent a notification of no responsive records to FOIA/PA

staff for EOUSA.

14.     On or about July 16, 2020, FOIA/PA staff for EOUSA notified the USAO/MA to

describe the search methods previously taken.

15.     On or about July 30, 2020, I sent the Criminal Division Chief and Deputy Chief another

copy of the FOIA request and asked again if any policies or other communication regarding

procedures related to the request.  Two Criminal Division supervisory staff were also included

on the email exchange.  No responsive records were found.

16.     On or about July 30, 2020, I conducted the same review of manuals and policies as was

completed on February 19, 2019 and expanded the search to include the instructions for non-

attorneys.  No responsive records were found.

17.     On or about August 3, 2020, I sent a notification of the methods used in its February

2019 search to FOIA/PA staff for EOUSA.

18.     On or about August 20, 2020, the USAO/MA was notified by FOIA/PA staff for EOUSA

that it should expand its search for records to email and all other relevant places.

19.     On or about August 28, 2020, I requested a search of email accounts in the USAO/MA

from District information technology staff with the following parameters.

No filters to exclude any mailboxes or any To/From fields etc.

Keyword search: (("Bureau of Prisons" OR "BOP") AND "Consent to Monitoring Agreement") OR (("Bureau of Prisons" OR "BOP") AND "inmate transactional data")

Date filters:
Sent Date between 1/1/2006 Start of Day and 8/28/2020 End of Day or
Received Date between 1/1/2006 SOD and 8/28/2020 EOD

20.    On or about September 14, 2020, 168 potentially responsive documents (emails and attachments) were returned from the search.

21.    Between September 14 and 18, 2020, I reviewed the returned documents for responsiveness.

22.    On September 20, 2020, potentially responsive documents were sent to FOIA/PA staff for EOUSA along with an index of the full search results.

23.    Any system of records within the USAO/MA likely to contain records responsive to Plaintiff's request has been searched.  The searches were conducted utilizing methods which should identify any responsive records.  To my knowledge, there is no other location in the USAO/MA where any other records which might be responsive to Plaintiff's request are likely to be located.   I am not aware of any other method or means by which a further search could be conducted, which would likely locate additional responsive records.

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.  Executed this 23rd day of October, 2020.

SUSANNE HUSTED   Digitally signed by SUSANNE HUSTED
Date: 2020.10.23 11:44:59 -04'00'
SUSANNE HUSTED
Supervisory Legal Administrative Specialist
U.S. Attorney's Office, District of Massachusetts
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

4

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS,

               Plaintiff,

v.

FEDERAL BUREAU OF PRISONS and
DEPARTMENT OF JUSTICE,

               Defendants.

Case No. 18-cv-02399-KBJ

**DECLARATION OF BEVERLY BROWN**

I, Beverly Brown, hereby declare as follows:

1.     I am a Paralegal Specialist in the Criminal Division of the United States Attorney's Office for the Eastern District of Pennsylvania ("USAO-EDPA"). My responsibilities include serving as the liaison to the Freedom of Information Act and Privacy Act ("FOIA/PA") staff in the Executive Office for the United States Attorneys ("EOUSA") located in Washington, D.C., that in accordance with 28 C.F.R. § 16.3, processes and responds to FOIA/PA requests for all United States Attorney's Offices, including the USAO/EDPA.

2.     My duties as the liaison to Freedom of Information Act and Privacy Act ("FOIA/PA") staff in the Executive Office for the United States Attorneys ("EOUSA") located in Washington, D.C., includes receiving and reviewing requests made pursuant to FOIA, 5 U.S.C. § 552, and the PA, 5 U.S.C. § 552a, for records maintained by or located in the

USAO/EDPA; and conducting searches for records located in USAO/EDPA that are responsive to FOIA/PA requests.

3.      The statements I make in this declaration are made on the basis of my personal knowledge and knowledge acquired by me through the performance of my official duties.

4.      The purpose of this declaration is to provide the Court with information regarding the USAO/EDPA's efforts to respond to Plaintiff's FOIA Number 2018-005641 request. This declaration consists of an explanation of the relevant correspondence that I both received and sent related to this FOIA request and an explanation of the search taken to uncover records responsive to this FOIA requests.

5.      Based on this information, I commenced a search to find any records responsive to the requester's FOIA request that might be in the custody and control of USAO-EDPA.

I. CORRESPONDENCE

6.      On August 2, 2018, Plaintiff sent a FOIA/PA request to FOIA/PA staff seeking "records made on or after January 1, 2006, concerning federal prosecutors' access to emails between individuals held at Bureau of Prisons ("BOP") facilities and their legal counsel."

7.      On September 17, 2018, EOUSA FOIA Unit wrote to requestor (NACDL) asking that the request be narrowed because the request is unduly burdensome and a reasonable search cannot be performed.

8.      On February 1, 2019, EOUSA notified me by email that FOIA/PA 2018-005641 was in litigation and to proceed with Plaintiff's request seeking the "records made on or after January 1, 2006, concerning federal prosecutors' access to emails between individuals held at Bureau of Prisons ("BOP") facilities and their legal counsel."

## II. ADEQUACY OF SEARCH

9.      On February 6, 2019, I met with the Criminal Chief in an effort to locate responsive records pertaining to Plaintiff's FOIA/PA 2018-00561.

10.      On February 26, 2019, I emailed the Criminal Appeals Chief and Criminal Chief in an effort to locate responsive records pertaining to Plaintiff's FOIA/PA 2018-005641 request

11.      On February 26, 2019, I received a email message from Criminal Chief stating she conferred with other Chiefs and a search was done on EDPA's Criminal Division Manual as well as EDPA's Sharepoint Page and no written policy was found addressing federal prosecutors' access to emails between individuals held at Bureau of Prisons ("BOP") facilities and their legal counsel.

12.      On February 26, 2019, I also received an email from Criminal Appeals Chief (who has been in this position for over 20 years) who did a search of his computer. He keeps pertinent old emails by topic and pertinent old papers by labeled files. His search for written policy for emails pertaining to federal prosecutors' access to emails between individuals held at Bureau of Prisons ("BOP") facilities and their legal counsel revealed one document. That 2009 memo issued by Main Justice was then attached to our response to FOIA/PA 2018-005641 request.

13.      On February 26, 2019, USAO/EDPA responded to EOUSA, FOIA/PA with the only responsive document our search revealed, the 2009 memo issued by Main Justice, dated May 4, 2009, regarding obtaining prisoner emails.

## III. CORRESPONDENCE

14.     On July 16, 2020, I received an email from FOIA/PA requesting a description of the search terms, connectors, and systems EOUSA/EDPA used in its search for FOIA/PA 2018-005641 request records.

15.     On July 18, 2020, EDPA, by email, EOUSA/EDPA responded to FOIA/PA with a description of its searches performed to produce records in FOIA/PA 2018-005641 request.

16.     On September 21, 2020, I received an email from EOUSA, FOIA/PA requesting a supplemental email search based on "word searches," i.e, "BOP" or Bureau of Prisons," "inmate," "Consent to Monitor Agreement," or "inmate within 20 words of email."

17.     On September 23, 2020, I emailed and sought the guidance of Chief of Appeals who was confident EDPA had no additional records.

18.     Specifically, I again advised that the Chief of the Criminal Division and the Chief of Appeals (who has been in this position for over 20 years) searched their paper (Criminal Division Manual) and electronic files including mails and SharePoint.  The 2009 memo we previously attached is the only guidance issued from Main Justice regarding obtaining prisoner emails. We confirmed that no other memorandum regarding policies and or procedures for obtaining prisoner emails exist. No other searches are needed because we are confident that no office policy apart from the DOJ issued memo was promulgated.

19.     To the best of knowledge, I am aware of no other places within the USAO-EDPA where responsive records would exist.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this ___26th___ day of October 2020

Beverly Brown
Paralegal Specialist
United States Attorney's Office
Eastern District of Pennsylvania

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, | **Declaration** |
| Plaintiff, | |
| v. | **Civil Action No. 18-cv-02399 (KBJ)** |
| FEDERAL BUREAU OF PRISONS, ET AL. | |
| Defendants. | |

STATE OF NEW YORK      )
                                            ) ss.
COUNTY OF NEW YORK  )

JOHN M. McENANY, pursuant to 28 U.S.C. §1746, hereby affirms the truth of the following under penalties of perjury:

1. I am the Associate U.S. Attorney in the United States Attorney's Office for the Southern District of New York ("USAO SDNY") and a member of the USAO SDNY Executive Staff. I have served in that position commencing long prior to 2006, the start date of the FOIA request underlying this litigation. Among other functions, I am the Professional Responsibility Officer for the Criminal Division of the USAO SDNY and the Office's Criminal Discovery Coordinator and in those capacities am very frequently consulted on issues concerning privilege reviews.

2. As Associate U.S. Attorney I am familiar with, and frequently involved in, the development of USAO SDNY policies. As pertinent hereto, I was personally involved in the development and articulation of USAO SDNY policy concerning requests for TRULINCS emails of inmates.

3. I reviewed the folder in which I stored TRULINCS-related files, reviewed my emails from the pertinent time frame, and consulted with the Chief of the Criminal Division, to remind

myself of, and to identify, USAO SDNY policies in this area, and to verify that there was no new policy that I was not aware of (there is not). In so doing I identified three documents that contain all USAO SDNY policies in this area during the relevant time frame. I have provided these documents to the Freedom of Information Act/Privacy Act Unit of the Executive Office for United States Attorneys under the file names SDNY TRULINCS 2016.05.25 Policy.pdf, SDNY TRULINCS 2017.10.06 External Email Chain.pdf, and SDNY TRULINCS 2017.10.06 Policy.pdf.

4. To the best of my knowledge, there are no other locations within the USAO SDNY where any non-duplicative responsive records would exist. Indeed, given my role in the Office and in developing these policies, I can scarcely conceive that the USAO SDNY would have a policy in this area that I would not be aware of.

Dated: New York, New York
October 29, 2020

<br>

_John M. McEnany_

Digitally signed by JOHN
MCENANY
Date: 2020.10.29 14:45:00
-04'00'

JOHN M. McENANY
Associate United States Attorney
Southern District of New York

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 18-cv-02399 (KBJ) ) ) |
| FEDERAL BUREAU OF PRISONS, ET AL. | ) ) |
| Defendant. | ) ) ) |

**DECLARATION OF TAMMY R. ZIMMIE**

I, Tammy R. Zimmie, hereby declare as follows:

1.     I am a Paralegal Specialist in the Civil Division of the United States Attorney's Office for the Eastern District of Virginia ("USAO-EDVA"), Alexandria Division.  My responsibilities include serving as a contact to the Freedom of Information Act and Privacy Act ("FOIA/PA") staff in the Executive Office for the United States Attorneys ("EOUSA").  It is my understanding that EOUSA FOIA/PA staff, in accordance with 28 C.F.R. § 16.3, process and respond to all FOIA/PA requests for all United States Attorney's Offices, including USAO-EDVA.

2.     The statements I make in this declaration are based on my personal knowledge, including knowledge acquired by me through the performance of my official duties.

3.     The purpose of this declaration is to provide the Court with information regarding my efforts to locate records responsive to the FOIA request that I understand to be the subject of this civil action.  This declaration consists of an explanation of the relevant correspondence that I

1

both received and sent related to this FOIA request and an explanation of the search that I

undertook to uncover records responsive to this FOIA request.

**I.      Search for Records**

4.      On February 1, 2019, I received an email from EOUSA FOIA/PA staff instructing

me, as the FOIA Contact for USAO-EDVA, to proceed with a search for records responsive to a

FOIA request that was designated "EOUSA-2018-005641." Shortly thereafter, I retrieved the

referenced FOIA request from FOIAOnline, an automated database system designed to

coordinate the processing of every aspect of FOIA/PA requests to United States Attorney's

Offices, including USAO-EDVA.

5.      I reviewed the FOIA Request and determined that the requester, Jumana Musa,

was generally seeking policies, practices, or procedures from twenty-seven USAOs related to

BOP Inmate emails. Specifically, the requester was seeking the following:

> 1. All records containing those U.S. Attorneys' Offices' policies, practices, or procedures
> for requesting copies of inmates' attorney-client emails from the BOP.
>
> 2. All records containing those U.S. Attorneys' Offices' policies, practices, or procedures
> for requesting copies of inmates' emails from the BOP, including non-attorney-client
> emails.
>
> 3. All external guidance, including directives, emails, or other communications, sent to
> those U.S. Attorneys' Offices, regarding policies, practices, or procedures for requesting
> copies of inmates' attorney-client emails from the BOP.
>
> 4. All external guidance, including directives, emails, or other communications, sent to
> those U.S. Attorneys' Offices, regarding policies, practices, or procedures for requesting
> copies of inmates' emails from the BOP, including non-attorney-client emails.
>
> 5. All records containing those U.S. Attorneys' Offices' policies, practices, or procedures
> concerning the use of attorney-client emails once they have been obtained from the BOP.
>
> 6. All legal or policy memoranda concerning any decision to change those U.S.
> Attorneys' Offices' policies, practices, or procedures for requesting inmates' emails from
> the BOP, including any policies, practices, or procedures for requesting that the BOP
> exclude from production any emails between an inmate and their attorney, as well as any

2

policies, practices, or procedures concerning the circumstances under which the government does not request such exclusions.

The requester limited the search for responsive records made on or after January 1, 2006.

6.    Based on this information, I commenced a search to find any records responsive to the requester's FOIA request that might be in the custody and control of USAO-EDVA.

7.    On February 7, 2019, I sent an email to Managing and/or Supervisory AUSAs within USAO-EDVA, which included attorneys in USAO-EDVA's Alexandria, Norfolk, Newport News, and Richmond Divisions, identifying the specific provisions of the request (*i.e.*, EOUSA-2018-005641), as well as the requester's explanation of that request, in an effort to uncover any and all responsive records.  In that email, I requested the recipients of the email to contact me if they had any records within their custody and control responsive to this request, to inform me where any such responsive records could be located, and to preserve any such responsive records.  I received a response from one individual, which informed me that he with no known responsive records.

8.    Additionally, a FOIA Contractor previously associated with USAO-EDVA and I conducted a search on the USAO-EDVA intranet for potentially-responsive records to the request.  It was my understanding that any emails that would have been sent from relevant Department of Justice components generally related to policies, practices or procedures governing BOP inmate emails were to be posted to the USAO-EDVA intranet. The FOIA Contractor and I utilized the following search terms for this intranet search: "BOP & emails" and "Prisoner emails."  As a result of this search on the USAO-EDVA intranet, the FOIA Contractor and I located three records that were potentially responsive to the request.

3

9.     On February 14, 2019, the FOIA Contractor and I completed the appropriate FOIA paperwork, including a brief description of our search for records, copies of the internal emails related to the search for records, the potentially responsive records, and our comments regarding whether these records should be released to the requester (or withheld pursuant to a FOIA exemption),   We uploaded our response into FOIAONLINE database system for review by EOUSA FOIA/PA Staff.

## II.   Supplemental Search for Records

10.     On September 18, 2020, I received an email from EOUSA directing me to conduct a supplemental search for records for FOIA request EOUSA-2018-005641.

11.     On September 21, 2020, I sent an email to twenty-seven Criminal Division Supervisory and Managing Assistant United States Attorneys, and Senior Litigation Counsel in USAO-EDVA's Alexandria, Norfolk, Newport News and Richmond offices.  That email explained that the requester had exercised her right to challenge the adequacy of the search that had been conducted pursuant to her FOIA request, and that EOUSA has asked that a new email search be completed by Criminal Supervisors and Criminal Senior Litigation Counsel.  I informed the recipients of my email that they should search for any USAO policies, practices, or procedures regarding requests for prisoner emails and issues relating to attorney-client privilege, etc. More specifically, I requested that the recipients of my email use the following search terms: BOP or "Bureau of Prisons" AND one of the following secondary search terms: Trulincs or "filter team" or "inmate transactional data" or "Consent to Monitoring Agreement" or "inmate within 20 words of email."  I received eight responses to my email identifying potentially-responsive records, and each of the other responses to my email indicated that the recipients had not located any potentially responsive records.

4

12. On October 5, 2020, I emailed my supplemental search results with potentially responsive records to EOUSA FOIA/PA for review.

To the best of my knowledge, I am not aware of any other method or means by which a further search could be conducted that would likely uncover responsive records.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this _____ 27th _____ day of October, 2020.

_Tammy Zimmie_

Tammy R. Zimmie
Paralegal Specialist
United States Attorney's Office for the
Eastern District of Virginia, Alexandria Division

5