UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|
NATIONAL ASSOCIATION OF CRIMINAL  |
DEFENSE LAWYERS,  |
|
Plaintiff,  |
|
v.  |
|                  Civil Action No. 18-cv-02399 (D.C.)
FEDERAL BUREAU OF PRISONS  |
|
and  |
|
DEPARTMENT OF JUSTICE,  |
|
Defendants  |

## DECLARATION OF SARAH LILLY

I, Sarah Lilly, declare the following pursuant to 28 U.S.C. § 1746:

**I.  DECLARANT'S BACKGROUND**

1.  I am employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP") as a Government Information Specialist for the Freedom of Information Act/Privacy Act ("FOIA/PA") Section, which is part of the Office of General Counsel. My office is located at FCI Beckley, WV. I have been assigned to my current position since August 2016. Prior to that time, I was assigned to the Consolidated Legal Center (CLC) at FCI Beckley from August 2010 until August 2016.

2.  As a Government Information Specialist, my duties include serving as a FOIA Specialist and responsible for all aspects involved in processing FOIA/PA requests with primary responsibility for analysis of, response to, and monitoring of requests for Bureau of Prisons' (BOP) records pursuant to the FOIA/PA.

3.      This Declaration is submitted in support of the Motion to Dismiss or alternatively

Motion for Summary Judgment of Plaintiff's Freedom of Information Act request as re-stated in

the Second Amended Complaint filed by Plaintiff.  Plaintiff alleges:

> Since the start of this litigation, the BOP has made several productions of records
> responsive to the BOP Request and of records referred to it by other agencies.
> However, as detailed below, the BOP has also withheld certain records in full or in
> part. The BOP has not met its burden of demonstrating that the records are exempt
> from disclosure under the FOIA.

See Second Amended Complaint.

4.      Plaintiff challeges the BOP's failure to adequately justify withholding the

following records in full or in part violates the FOIA, 5 U.S.C. § 552(a)(3):

     a.      Record titled "Change Notice 1380.11, CN-1: Special Investigative
Supervisors Manual" and dated November 30, 2016 that was originally
released in the BOP's March 20, 2019 production and for which a
supplemental production was made on May 19, 2020;

     b.      Forty-nine pages withheld in full in the BOP's March 20, 2019
production;

     c.      Sixteen pages withheld in full in the BOP's April 30, 2019 production;

     d.      Emails found at Bates stamp BOP FOIA 2018-06557-LIT 6 of 36 through
BOP FOIA 2018-06557-LIT 24 of 36 that were released in the BOP's
May 29, 2019 production;

     e.      Emails found at Bates stamp BOP FOIA 2018-06557-LIT 30 of 36 that
were released in the BOP's May 29, 2019 production;

     f.      Emails found at Bates stamp BOP FOIA 2018-06557-LIT 34 of 36 that
were released in the BOP's May 29, 2019 production;

     g.      Six pages withheld in full in the BOP's May 29, 2019 production;

     h.      Email found at Bates stamp BOP FOIA 2018-06557-LIT 1 of 8 that
was released in the BOP's July 2, 2019 production;

     i.      Two pages withheld in full in the BOP's August 1, 2019 production;

     j.       Twenty-two pages withheld in full in the BOP's September 4, 2019 production;

     k.       Emails found at Bates stamp BOP FOIA 2018-06557-LIT 5 of 10 through BOP FOIA 2018-06557-LIT 9 of 10 that were released in the BOP's September 16, 2019 production; and for which a supplemental production was made on May 19, 2020;

     l.       Decision paper titled "Inmate Communication Monitoring" that is mentioned in emails from 2016 in the BOP's May 29, 2019 production, and that the BOP indicated it was withholding in full in its May 19, 2020, production.

     R1.     Documents found at Bates stamp BOP FOIA 2018-06557-LIT 56 of 84 and ending on BOP FOIA 2018-06557-LIT 59 of 84, "DOJBook" from Western District of Washington, that were withheld in part in the August 31, 2020 production.

     R2.     Documents found on pages 56-57, 59, 61, 63, 66, 68, 73, 75-76, 78, 80, 90, that were withheld in part in the September 30, 2020 production.

## II.    PLAINTIFF'S FOIA REQUEST

5.     On August 2, 2018, the BOP received an electronic FOIA request from Plaintiff. See Attachment 1, FOIA Request dated August 2, 2018. The BOP acknowledged receipt of the FOIA request on August 6, 2018, and assigned the request FOIA Number 2018-06557.  Plaintiff's FOIA request sought records made on or after January 1, 2016, by the BOP for the following items:

     1.       All records containing the BOP's policies, practices, or procedures governing the  collection, retention, use, or sharing of inmates' attorney-client emails;

     2.       All records containing the BOP's policies, practices, or procedures governing the collection, retention, use, or sharing of inmates' emails, including non-attorney-client emails;

     3.       All external guidance, including directives, emails, or other communications sent  to the BOP, regarding policies, practices, or procedures governing the collection, retention, use, or sharing of inmates' attorney-client emails;

4.      All external guidance, including directives, emails, or other communications sent to the BOP, regarding policies, practices, or procedures governing the collection, retention, use, or sharing of inmates' emails, including non-attorney-client emails;

5.      All records containing descriptions of any technology capable of filtering emails to or from particular individuals out of BOP productions of inmates' emails to third parties;

6.      All records containing descriptions of any technology capable of filtering emails to or from particular individuals out of emails retained by BOP;

7.      All records containing the BOP's policies, practices, or procedures for the use of any filtering technology for inmate email. Such records would include any policies, practices, or procedures for the use of filtering technology for inmate email within the BOP, in response to government requests for production of inmates' emails, or under any other circumstances;

8.      All documentation provided to the BOP by any company providing inmate email access technology or technology to filter inmate email, including any contracts, agreements, technical specifications, or proposals; and

9.      All records containing the BOP's policies, practices, or procedures for reviewing and processing inmates' email communications. Such records would include any policies, practices, or procedures directing BOP staff with respect to when and how inmates' emails should be reviewed, as well as any information concerning the use of algorithms or other electronic data processing techniques to monitor the content of inmates' emails.

See Second Amended complaint.

## III.    SCOPE OF SEARCH FOR RECORDS

### A.      Divisions Searched

6.      By speaking with subject matter experts in different BOP divisions or other offices and based on the experience of BOP FOIA processors and their understanding of the role and functions of BOP divisions and office, it was determined that the following BOP divisions and/or offices were the most likely location where potentially responsive records were located: Administration Division; Correction Programs Division; Office of General Counsel, and Northeast

Regional Office and New York Consolidated Legal Center ("CLC") using the date range indicated in the FOIA Request.

a.       Adminstration Division

7.       This division is responsible for providing the resources and support necessary for the Bureau of Prisons to perform in an effective and efficient manner. This includes the development of budget requests, the stewardship of financial resources, and procurement and property management; the coordination and analysis of information related to capacity planning which covers such varied areas as female offenders, detention needs, and the need for medical facilities; the selection of sites for new prison construction; the design and construction of new correctional facilities; the renovation and maintenance of existing facilities; the development and maintenance of a system of financial systems/services to ensure accountability of inmate commissary funds and the management of merchandise/services to inmates; and other administrative support services required by the organization. Within the Administration Division is a sub-division identified as the TRUST Fund, which is responsible for implementing and managing the Inmate Computer System (TRULINCS). TRULINCS provides inmates with the ability to send and receive electronic messages; automate previously manual processes; access Electronic Law Libraries; and gain important computer skills that can assist in their reintegration into society.

8.       After careful analysis of the request, based on BOP's experience with similar requests, BOP determined the Administration Division's TRUST Fund section would reasonably be expected to have records potentially responsive to Plaintiff's FOIA request. Based on the experience of staff in the Administration Division, BOP determined that a search of the Inmate Communication Section; TRULINCS application and software; ADMGRP – Share Drive which

is Administration Division's computer repository within the Bureau of Prisons Network containing files & documents for the Trust Fund Branch staff, labeled and saved by the Trust Fund staff who generated the information; TRUBLE – Trust Fund application tool to report network, hardware, software, system enhancements or changes, and overall troubleshooting communication management tool; and the BOP's Sallyport – an intranet portal that contains information concerning BOP policies. Further, based on Administration Division's filing nomenclature used for the Administration Division's documents and experience with similar requests, the following search terms would reasonably be expected to locate potentially responsive documents: Legal/LEO (Law Enforcement Officer).

### b.    Correction Programs Division

9.    This division develops activities and programs designed to appropriately classify inmates, eliminate inmate idleness, and promote the skills necessary to facilitate the successful reintegration of inmates into their communities upon release. Based on the experience of staff in CPD, BOP determined a search of the division's Intelligence shared drive, which is a limited use shared directory for Intelligence Section staff to maintain information in response to the Intelligence Section's functions concerning developing national policy and audit guidelines for SIS operations, investigations, and other institution-based intelligence activities and developing and coordinating national training programs for investigative and intelligence staff.

10.    Based on the CPD's experience with similar requests, CPD determined that the following search terms would reasonably be expected to locate potentially responsive documents: Email – Monitoring – Subpoena – Transactional Data – FOIA – Release of Information – Trust Fund – TRULINCS and used these terms to search all subfolders in the intelligence section's shared drive sub-directories.

### c.   Office of General Counsel (OGC)

11.   The Office of General Counsel provides legal advice, assistance and representation to officials of the Bureau of Prisons (BOP) and Federal Prison Industries (FPI). BOP attorneys are employed either in the Central Office, in the Regional Offices, or in CLCs that provide legal services for a number of institutions within a geographic area. One of the Branches of OGC in the Central Office is the Legislative and Correctional Issues Branch (LCI). LCI provides legal assistance on Constitutional and statutory issues relating to inmates' rights and conditions of confinement. The branch also coordinates the BOP rule-making process and Reduction in Sentence reviews. Another Branch of OGC is the Litigation Branch. This Branch defends the BOP and its staff in litigation filed in the District of Columbia and litigation with a national impact on BOP programs and policy. The litigation covers a wide variety of issues, such as constitutional challenges, medical malpractice, injunctive relief, and appellate practice.

12.   After careful analysis of the request, based on BOP's experience with similar requests, OGC's staff familiarity with both its divisional staff and other Divisions' staff who may be involved in issues related to inmate email issues or the BOP's TRULINCS inmate email system and because the authorization to search staff emails is generated by the General Counsel of the BOP, the BOP determined OGC is an appropriate BOP Division to initiate a search for records in response to the Plaintiff's FOIA request as it relates to searching staff email in response to Plaintiff's FOIA request. Based on the experience of staff in OGC, BOP determined a search of the following staff emails would reasonably be expected to locate potentially responsive records: Kenneth Hyle (General Counsel and former Deputy General Counsel); James Wills (Deputy General Counsel); Michael Frazier (Regional Counsel and former Associate General Counsel/Litigation Branch); Darrin Howard (Regional Counsel and former Associate General

Counsel/Legislative and Correctional Affairs Branch); Kathy Kenney (former Assistant Director/General Counsel (Retired); Mike Tafelski (former Northeast Regional Counsel) (Retired); Kenneth Bork (Assistant General Counsel and former Staff Attorney at New York CLC); and Nicole McFarland (Senior CLC Attorney at New York CLC).

13.     Based on the BOP's email system nomenclature and BOP's experience with similar requests, BOP determined the following search terms would reasonably be expected to locate potentially responsive documents: 1. "inmate email;" 2. "attorney-client email;" 3. "non-attorney-client email;" 4. "email collection;"  4. "email retention;" 6. "email use;" and 7. "email sharing." The date range for the search for the Wills, Hyle, Tafelski, Kenney, Frazier and Howard emails was January 1, 2016, to September 28, 2018, and the range for the remaining email searches was January 1, 2016, to November 2, 2018 (email searches for Bork and McFarland were requested after the initial email searches were completed). In addition to this search, staff in OGC searched its shared drive ("M: Drive") which is a shared directory used by the BOP's General Counsel and designated staff. Because OGC staff knew there were records that might relate to this issue that were saved on its shared directory, staff went directly to the sub-rectory within the shared drive and searched it using the same search terms as stated above.

### d.     Northeast Regional Office (NERO)

14.     The Regional Counsel for the NERO supervises the legal staff at New York CLC. The Regional Counsel Office and its institution and facility legal staff provides legal advice, assistance and representation to officials within the BOP's Northeast Region. This office defends the BOP and its staff in litigation filed in federal districts covered by NERO to include litigation with a national impact on BOP programs and policy. The litigation covers a wide variety of issues, such as constitutional challenges, medical malpractice, injunctive relief, and appellate practice.

8

15.     After careful analysis of the request, based on BOP's experience with similar requests, NERO's staff familiarity with both its institutions' staff who may be involved in issues related to inmate email issues as it relates to the BOP's TRULINCS inmate email, the BOP determined NERO and New York CLC was appropriate BOP offices/facilities to initiate a search for records in response to the Plaintiff's FOIA request. Staff in NERO and New York CLC searched NER and NYM computer networks, Home drive-TRULINCS research file, and Groupwise mailbox using the following terms: TRULINCS, inmate email confidential, and Judge Sullivan. Because of NERO legal staff's experience, NERO legal staff determined a search of the GROUPWISE email accounts of Kenneth Bork (Assistant General Counsel and former Staff Attorney at New York CLC) and Nicole McFarland (Senior CLC Attorney at New York CLC) were appropriate.

## IV.     BOP'S ROLLING RELEASES OF RECORDS

### A.     Records Received as a Result of BOP's Search

16.      In a letter to the Plaintiff dated March 20, 2019, the BOP advised the Plaintiff of the following concerning the search for records:

> The BOP searched five total directorates. When accounting for all of these pages of raw, unprocessed search results, the total pages actually received was 7,972. Of that, 5,934 pages resulted from two email searches; 207 pages were received from Correctional Programs Division; 151 pages were received from the Administration Division; 50 pages were received from the Northeast Region; and 1,630 pages were received from the Office of General Counsel.

See Attachment 2, First Rolling Release Letter dated March 20, 2019.

### B.     First Rolling Release

17.     By letter dated March 20, 2019, the first rolling release included the processing of a total of 3,031 pages. Of these pages, 2,824 were blank or duplicate pages and not included in the released documents. After removal of these pages, this resulted in a total of 207 pages. Of these

pages, 140 pages are appropriate for release in full, 18 pages are appropriate for release in part, and 49 pages are withheld from release in full. Id.

### C.   Second Rolling Release

18.   By letter dated April 30, 2019, the second rolling release included the processing of a total of 812 pages. Of these pages, 484 pages were non-responsive to any of your FOIA request and 26 pages were generated by the search process. After removal of these pages, this resulted in a total of 302 pages. Of these pages, 253 pages are appropriate for release in full, 33 pages are appropriate for release in part, 16 pages are withheld from release in full. Id.

### D.   Third Rolling Release

19.   By letter dated May 29, 2019, the third rolling release included the processing of a total of 801 pages. Of these pages, 729 pages were non-responsive to any of your FOIA request and 28 pages were generated by the search process. After removal of these pages, this resulted in a total of 44 pages. Of these pages, 3 pages are appropriate for release in full, 27 pages are appropriate for release in part, 6 pages are withheld from release in full, and 8 pages were forwarded to the Executive Office for United States Attorney's (EOUSA) for consultation. Id.

### E.   Fourth Rolling Release

20.   By letter dated July 2, 2019, the fourth rolling release included the processing of a total of 859 pages. Of these pages, 802 pages were non-responsive to any of your FOIA request and 16 pages were generated by the search process. After removal of these pages, this resulted in a total of 41 pages. Of these pages, 2 pages are appropriate for release in full, 19 pages are released in part, and 20 pages are duplicate pages and not included in the released documents. Id. Records previously forwarded to EOUSA for consultation are included in this release. A total of 8 pages of records were reviewed. Of these pages, 2 pages are appropriate for release in full and 6 pages are

released in part. Id. Records maintained by the EOUSA were referred to the BOP by FOIA request number 2018-005641 and included in this release. A total of 71 pages of records were referred and reviewed. Of these pages, 54 pages are appropriate for release in full and 9 pages are duplicate pages and not included in the released documents, the remaining 8 pages from this referral was processed in the next release. Id.

  **F.**   **Fifth Rolling Release**

  21.   By letter dated August 1, 2019, the fifth rolling release included the processing of a total of 792 pages. Of these pages, 714 pages were non-responsive to any of your FOIA request and 50 pages were generated by the search process. After removal of these pages, this resulted in a total of 28 pages. Of these pages, 15 pages are released in part, 2 pages are withheld in full, and 11 pages are duplicate pages and not included in the released documents. Id. Records maintained by the EOUSA were referred to the BOP by FOIA request number 2018-005641 and included in this release. Of the remaining 8 pages of this referral (mentioned in fourth rolling release), 1 page is appropriate for release in part and 7 pages were referred back to EOUSA as not being BOP records. Id.

  **G.**   **Sixth Rolling Release**

  22.   By letter dated September 4, 2019, the sixth rolling release included the processing of a total of 1677 pages. Of these pages, 1643 pages were non-responsive to any of your FOIA request. After removal of these pages, this resulted in a total of 34 pages. Of these pages, 2 pages are released in full, 2 pages are released in part, 22 pages are withheld in full, and 8 pages are duplicate pages and not included in the released documents. Id.

### H.     Supplemental Releases

23.     By letter dated September 16, 2019, records maintained by the Criminal Division (CRM) were referred to the BOP. Of these 19 pages, 2 pages are released in full, 8 pages are released in part, and 9 pages are duplicate pages and not included in the released documents. <u>Id</u>.

24.     By letter dated September 24, 2019, records maintained by CRM were referred to the BOP. Of these 150 pages, 1 page is released in full, 5 pages are released in part, 140 pages are duplicate pages and not included in the released documents, and 4 pages were non-responsive to your original CRM request. <u>Id</u>.

25.     By letter dated November 5, 2019, records maintained by CRM were referred to EOUSA and then the BOP. Of these 2 pages, all pages are released in part. <u>Id</u>.

26.     By letter dated May 19, 2020, a supplemental release included the processing of 1) a decision paper titled "Inmate Communication Monitoring" that is mentioned in emails from 2016 in BOP's May 29, 2019 production, 9 pages of records were located that are responsive to item 9 of your original request and are being withheld in full. <u>Id</u>. 2) The Special Investigative Supervisor (SIS) Manual which was originally released in our March 20, 2019 letter, 19 pages are appropriate for release in part and 48 pages are being withheld in full. The BOP reconsidered three pages of records that were included in the September 16, 2019, rolling release (pages 5, 6, & 7 of 10). <u>Id</u>. Because of other component equities in those three pages, the BOP forwarded the three pages of records to EOUSA for its consideration of its equities in the records. These three pages are appropriate for release in part. <u>Id</u>.

27.     By letter dated August 31, 2020, records maintained by the EOUSA were referred to the BOP by FOIA request number 2018-005641 and included in this release. Of these 99 pages,

63 pages are released in full; 21 pages are released in part, 15 pages are duplicates of pages and not included in the released documents. Id.

28.     By letter dated September 30, 2020, records maintained by EOUSA were referred to the BOP. Of these 101 pages, 87 pages are released in full, 13 pages are released in part, and 1 page was a duplicate page and not included in the released documents. Id.

## V.     APPLICATION OF EXEMPTIONS

### A.     Segregability

29.     I and other FOIA staff evaluated for segregability and any exemptions applied were made with a good faith determination that the information withheld fit the FOIA exemption. The attached *Vaughn* Index, see Attachment 3, describes the records that were withheld in full (WIF) or withheld in part(WIP) pursuant to a FOIA exemption.

30.     For ease of refence, items listed on the Vaughn Index use the same labeling as Plaintiff used in the Second Amended Complaint. More specifically, Plaintiff labels each of its document challenges using lower case alphabets from "a" through "l" and "R1" and "R2". Further, since the challenged records may contain different types of records, the Vaughn Index further distinguishes those items by adding a number, e.g. "a1" and "a2."

### B.     Records Withheld Pursuant to Exemption 4

31.     Exemption 4 of the FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential. The information is protected "[a]t least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." Food Marketing Institute v. Argus Leader Media, 139 S.Ct. 2536 (2019).

13

32.     Records withheld pursuant to Exemption 4 are identied in the Vaughn Index for Items **c1 and R2**. The records are pages 1 through 5 of the April 30, 2019, release and page 80 of the September 30, 2020, release and are, more specifically, pages of the TRULINCS USER GUIDE and TRUST FUND LIMITED COMMUNICATON SYSTEM PORTAL. <u>See</u> Attachment 3, Vauhn Index. TRULINCS is the software platform used, among other things, for inmates to communicate with third-parties via email.

33.     The    TRULINCS    USER    GUIDE    and    TRUST    FUND    LIMITED COMMUNICATON SYSTEM PORTAL pages contain "User interface strategy;" " Granularity of the tracking;" "Classification of messaging functions;" "Capabilities of the system;" and "Details of alerts that are tracked and displayed (via the use of prompts and color-coding in the search results)." Exemption 4 was applied to withhold in full the pages as the categories of information identified represent the proprietary property of the vendor, Advanced Technologies Group, L.L.C. (ATG). The items identified in Paragraph 32, supra, are customarily considered confidential in the software industry and the vendor, in fact, treats this information as confidential and developed and provided the software to the BOP under the assurance of its limited internal use. Further, the contract with the vendor provides the ordering activity, in this case the BOP, "shall not provide or otherwise make available the software or documentation, or any portion thereof, in any form, to any third party without the prior written approval of the Contractor."

**C.     Records Withheld Pursuant to Exemption 5**

34.     Exemption 5 permits the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency.

14

35.     Records withheld pursuant to Exemption 5 are identied in the Vaughn Index for Items **c2**; **d1**; **e**; **f**; **g1**; **g2**; **i**; **j**; **k1**; **k2; l, R1 and R2**. The description of the records and the application of exemption 5 is as follows:

a.     **Item c2**- This record is BOP's Legal Hold Protocols. The record was prepared by BOP's attorney to provide legal guidamce to BOP's Office of General Counsel and other BOP legal staff guidance for issuing legal hold notice and represents the Attorney Work Product of BOP Assistant General Counsel staff. The document was prepared in anticipation of litigation and represents litigation concerns and strategies of the BOP's General Counsel who delegated the development of such strategies to subordinate attorneys. BOP legal hold procedures document was prepared by BOP's attorney to outline legal analysis and rationale concerning the issuance of legal holds in anticipation of litigation or in cases of current litigation. Revealing the factors BOP attorneys consider to anticpate litigation impacts the Office of General Counsel's legal representation of the BOP and its staff because potential litigants against the BOP will already be privy to BOP's legal strategies prior to any discovery order. Any part of the record prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully protected as work product, and segregability was not required.

b.     **Item d1**- The record is an email thread: Kathleen M. Kenney to Michael Carvajal – Dated April 27, 2017, with the subject of "CEO Memo – regarding TRULINCS Filter for Specific Emails." Regarding the application of Exemption 5, the BOP's General Counsel solicited feedback from staff concerning a policy related matter. In this context, the discussion concerned a draft Memorandum concerning a new feature for the BOP's TRULINCS system. Deliberations concerning the same represented a policy level decision-making by the Agency concerning the new feature impacting BOP operations. Based on responses provided by Senior BOP Officials, changes to the draft memorandum would be implemented prior to the BOP issuing a policy change or implementing a policy decision concerning the new feature. In this sense, the response of the Senior BOP in doing so, the General Counsel sought consultative engagement of senior BOP staff. Specifically, the General Counsel requested of Senior BOP Officials: "Please let me know if you have any questions or concerns." This, in and of itself, shows the consultative engagement concerning the New Feature and thus, any responses to the inquiry are deliberative in nature. Release of the same chills the open and frank communications by executive level agencies and their staff concerning policy changes and/or implementation. Any part of the email

15

prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully protected as work product, and segregability was not required.

c.   **Item e**- The record is an email thread: BOP Agency Attorney to two BOP Agency Attorneys – Dated September 13, 2016, with the subject of "One more thing." The record is a discussion between BOP attorneys regarding Litigation Hold Procedures to  provide legal guidance to BOP's Office of General Counsel and other BOP legal staff for issuing legal hold notice and represents the Attorney Work Product of BOP Assistant General Counsel staff. The document was prepared in anticipation of litigation and represents litigation concerns and strategies of the BOP's General Counsel who delegated the development of such strategies to subordinate attorneys. BOP legal hold procedures document was prepared by BOP's attorney to outline legal analysis and rationale concerning the issuance of legal holds in anticipation of litigation or in cases of current litigation. Revealing the factors BOP attorneys consider to anticpate litigation impacts the Office of General Counsel's legal representation of the BOP and its staff because potential litigants against the BOP will already be privy to BOP's legal strategies prior to any discovery order. Any part of the email prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully protected as work product, and segregability was not required.

d.   **Item f**- The record is an email thread: BOP Agency Attorney to BOP Agency Attorney, Dated July 28, 2016, with the subject "Go Rounds for Executive Staff Meeting." The record is a discussion by BOP attorneys concerning attorney-client privilege for inmate e-mail. BOP attorneys represent the BOP in all phases of litigation and in policy creation. The BOP's General Counsel, who delegates to Associate General Counsel and Assistant General Counsels, is charged with providing legal advice to BOP officials to include executive level staff about issues raised by staff or as the result of anticipated or actual litigation. Strategic legal decisions by BOP attorneys and any considerations and analysis concerning current or future litigation issues go to the heart of the attorney's legal work product in making recommendations to senior BOP staff concerning the same. Further, the BOP attorney recommendations, to include the staff who should play a role in the implementation of a policy change and the BOP's potential counseling of staff concerning the legal pros and cons concerning policy implementation is done in anticipation of litigation. Any part of the email prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully

16

protected as work product, and segregability was not required.

e.   **Item g1**- This record is an email thread: BOP Agency Attorney to BOP Agency Attorneys and FOIA staff, Dated May 22, 2017, with the subject "FOIA Update - May 22, 2017: NEW EMAIL SEARCH PROCEDURES and IPPA Searches." The record is a dicussion by BOP attorney concerning internal legal procedures for conducting searches as it relates to FOIA requests for records. Such legal strategy and the written guidance was prepared in anticipation of litigation arising from FOIA requests received by the BOP and these procedures and practices guide and shape litigation requirements and strategies. Search procedures and practices are strategic legal decisions by BOP attorneys and any considerations and analysis concerning the procedures go to the heart of the attorney's legal work product in either establishing such procedures or making recommendations concerning the same. Any part of the email prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully protected as work product, and segregability was not required.

f.   **Item g2**- This record is BOP Legal Hold Protocols. The record was prepared by BOP's attorney to provide legal guidamce to BOP's Office of General Counsel and other BOP legal staff guidance for issuing legal hold notice and represents the Attorney Work Product of BOP Assistant General Counsel staff. The document was prepared in anticipation of litigation and represents litigation concerns and strategies of the BOP's General Counsel who delegated the development of such strategies to subordinate attorneys. BOP legal hold procedures document was prepared by BOP's attorney to outline legal analysis and rationale concerning the issuance of legal holds in anticipation of litigation or in cases of current litigation. Revealing the factors BOP attorneys consider to anticpate litigation impacts the Office of General Counsel's legal representation of the BOP and its staff because potential litigants against the BOP will already be privy to BOP's legal strategies prior to any discovery order. Any part of the record prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully protected as work product, and segregability was not required.

g.   **Item i**- This record is an emal thread: BOP Agency Attorney to BOP Agency Attorneys, dated September 12, 2018. The record is a discussion between BOP attorneys regarding Litigation Hold Procedures to  provide legal guidance to BOP's Office of  General Counsel and other BOP legal staff guidance for issuing legal hold notice and represents the Attorney Work Product of BOP Assistant General Counsel staff. The

document was prepared in anticipation of litigation and represents litigation concerns and strategies of the BOP's General Counsel who delegated the development of such strategies to subordinate attorneys. BOP legal hold procedures document was prepared by BOP's attorney to outline legal analysis and rationale concerning the issuance of legal holds in anticipation of litigation or in cases of current litigation. Revealing the factors BOP attorneys consider to anticpate litigation impacts the Office of General Counsel's legal representation of the BOP and its staff because potential litigants against the BOP will already be privy to BOP's legal strategies prior to any discovery order. Any part of the email prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully protected as work product, and segregability was not required.

h.      **Item j**- This record is an email thread. This email exchange concerned DOJ component comments on proposed BOP rule change concerning inmate emails. Component discussions concerning regulation changes is a primary tools used by the BOP and DOJ for staff to engage in open, frank discussions on matters of policy between subordinates and superiors. Further, before regulation changes are implemented, several executive level inquiries are undertaken before any decision to adopt or create a final regulation. Release of predicisional conversation about proposed policy changes causes a chilling effect on frank conversations amongst staff and/or decision makers which would harm the decision making process and this will in turn prevent the BOP from implementing well considered policy directives.

i.      **Item k1**- The record is an email thread: BOP Agency Attorney to USAO (MD), dated March 1, 2016, with the subject "Video Chats." The email is a discussion between a BOP attorney and an Assistant United States Attorney concerning video visiting. BOP attorneys represent the BOP in all phases of litigation and are charged with providing legal advice to BOP officials and representing the interests of BOP officials as it relates to criminal and civil enforcement procedures. The email contains information where the BOP Attorney provided his/her legal interpretation of the policies concerning Video Visiting, the communication represents the Attorney-Work product as the BOP's attorney's legal analysis concerning the same is done in anticipation of litigation since inmates, families, and their representatives could potentially sue the BOP due to any policy consideration or implementation of the Video Visiting. Strategic legal decisions by BOP attorneys and any considerations and analysis concerning current or future litigation issues go to the heart of the attorney's legal work product in making recommendations to senior BOP staff concerning the same. Any part of the email prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and

the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully protected as work product, and segregability was not required.

j.      **Item k2**- This record is an email thread: BOP Agency Attorney with Criminal Division Attorney, dated October 16, 2018, with the subject "Request for calls and emails from pre-trial inmate." The email discussion concerns Criminal Division attorneys subpoena of information about an inmate. BOP attorneys represent the BOP in all phases of litigation and are charged with providing legal advice to BOP officials and representing the interests of BOP officials as it relates to criminal and civil enforcement procedures. Since the BOP Attorney provided his/her legal interpretation regarding the subpoena and it was done in his official capacity as counsel to BOP Agency, the communication is the Attorney-Work product. Since the BOP's attorney's legal analysis concerning the same is done in anticipation of litigation since it is anticipated there will be legal challenges to subpoenas. Strategic legal decisions by BOP attorneys and any considerations and analysis concerning current or future litigation issues go to the heart of the attorney's legal work product in making recommendations to senior BOP staff concerning the same. Any part of the email prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully protected as work product, and segregability was not required.

k.      **Item l**- The record is an undated "decision paper" concerning inmate communication monitoring. Decision Papers are prepared by BOP staff, particularly executive level staff to explore policy positions of the agency. This Decision Paper is not relevant to the FOIA request seeking records regarding the technical features of the inmate email system because the document concerns inmate Video Conferencing. Further, the record is both undated and unsigned and is a draft record that was prepared in order to assist the Executive Staff of the BOP concerning the implementation of Video Conferencing for use by inmates across the BOP. BOP Decision Papers represents one of the primary tools used by the BOP for staff to engage in open, frank discussions on matters of policy between subordinates and superiors. Further, such papers go through extensive peer reviews and executive level inquiries before any decision to adopt or not adopt the paper as a new policy is reached. Release of a draft Decision Paper will cause a chilling effect on frank conversations amongst staff and/or decision makers which would harm the decision making process and this will in turn prevent the BOP from implementing well considered policy directives. Further, as this paper is a draft, the release of the same is not only premature, but will create public confusion that might result

19

from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.

l.    **Item R1**- This record is the DOJBook - Office Manuals - WDWA Criminal Division - **Bureau Of Prisons**. This record is an internal DOJ document prepared by DOJ attorneys and represents legal analysis of DOJ attorneys. The information redacted concerned legal analysis provided by BOP attorneys in the areas of recorded telephone calls and inmate email communications. The analysis included BOP attorney's interpretation of statutory and case law and legal approaches and considerations regarding recorded telephone calls and inmate emails. The document was prepared in anticipation of litigation and represents litigation concerns and strategies of the BOP's General Counsel who delegated the development of such strategies to subordinate attorneys. Revealing the factors BOP attorneys consider to anticpate litigation issues impacts the Office of General Counsel's legal representation of the BOP and its staff because potential litigants against the BOP will already be privy to BOP's legal strategies prior to any discovery order. Any part of the record prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the limited information redacted is fully protected as work product, and segregability was not required.

m.    **Item R2-** This record is a PowerPoint presentation prepared by BOP staff attorneys discussing legal strategies with other BOP attorneys and Assstant United States Attorneys Office. The information redacted concerned legal analysis provided by BOP attorneys in the areas of defending issues concerning inmate medical complaints and the legal analysis concerning internal investigatuions. The document was prepared in anticipation of litigation and represents litigation concerns and strategies of the BOP's General Counsel who delegated the development of such strategies to subordinate attorneys. Revealing the factors BOP attorneys consider to anticpate litigation issues impacts the Office of General Counsel's legal representation of the BOP and its staff because potential litigants against the BOP will already be privy to BOP's legal strategies prior to any discovery order. Any part of the record prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the limited information redacted is fully protected as work product, and segregability was not required.

36.    In applying exemption 5, the BOP conducted a foreseeable harm analysis on the withheld information and considered whether any information could be segregated and released without causing a foreseeable harm to the agency and its operations. Based on this review of the

processed records, the determined that no further segregation of meaningful information in the withheld documents described herein would be possible without disclosing information that warrants protection under the law. The only information withheld from the Plaintiffs is information that is entitled to protection from disclosure that could cause a foreseeable harm to any agency operations if released. Disclosure of any additional information would chill or deter BOP employees from engaging in the candid and frank discussions that are so important and necessary to the full and proper analysis and fair consideration of policy consideration concerning inmate communications. The deliberative nature of these discussion also include internal issues of safety and security, and the safety of the general public.

**D.    Records Withheld Pursuant to Exemptions 6 and 7(C)**

37.    Title 5, U.S.C. § 552(b)(6), ("FOIA Exemption 6"), protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

38.    Title 5, U.S.C. § 552(b)(7)(C) ("Exemption 7(C)") exempts from disclosure records or information compiled for law enforcement purposes where its production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

**(1).    Law Enforcement Records**

39.    All of the records withheld in part were compiled for law enforcement purposes because they were compiled in the exercise of BOP's statutory authority as a primary law enforcement agency pursuant to 18 U.S.C. § 4042(a)(1) that provides for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. § 4042(a)(2). The  law enforcement nature of the records are separately described  below:

a.     **Item c1** – TRULINCS User Guide – TRULINCS is a BOP database that
is comprised of two main components. The TRULINCS User Guide
represents pages of application that staff and inmates may see
depending on their respective use privileges. One component is the
inmate application used solely by the inmates and provides inmates the
capability to manage their contact list for emails, communicate with
members of the public on an inmate's contact list via email, and
communicate with staff ssigned to BOP correctional institutions that
provide suitable quarters and provide for the safekeeping, care, and
subsistence of persons charged with or convicted of offenses against the
United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2
§4042(a)(2).

b.     **Item c2** – BOP Legal Hold Protocols – The BOP Legal Hold Protocols
were created by the BOP's Office of General Counsel for use by BOP
attorneys, to include BOP attorneys located in the BOP's six regional
offices or a BOP institution. The Litigation Hold Protocols serve to
provide defensive litigation strategies for different types of civil actions
filed against the BOP to include Habeas Corpus petitions and Bivens
claims and these types of cases go to the core of BOP statutory duty to
provide suitable quarters and provide for the safekeeping, care, and
subsistence of persons charged with or convicted of offenses against the
United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2
§4042(a)(2).

c.     **Item d1** – Email Discussion concerning TRULINCS – BOP's General
Counsel solicited feedback from staff concerning policy about
TRULINCS Filter for Specific Emails. TRULINCS is a BOP database
that is comprised of two main components. One component is the inmate
application used solely by the inmates and provides inmates the capability
to manage their contact list for emails, communicate with members of the
public on an inmate's contact list via email, and communicate with staff
assigned to BOP correctional institutions that provide suitable quarters and
provide for the safekeeping, care, and subsistence of persons charged with
or convicted of offenses against the United States, or held as a witness or
otherwise pursuant to 18 U.S.C. 2 §4042(a)(2).

d.     **Item d2** – Email discussion between District Court Judge Sullivan and the
staff attorney for MCC New York concerning inmate's access to discovery
– MCC New York is a federal correctional facility. The staff attorney at
the facility has the responsibility to provide legal advice to staff at the
facility. In additional to responsibilities, the staff attorney defends the
facility in litigation. The email exchanged concerned incarcerated persons
at the MCC and the response by the staff attorney goes to the core of BOP
statutory duty to provide suitable quarters and provide for the safekeeping,
care, and subsistence of persons charged with or convicted of offenses

against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 §4042(a)(2).

e. **Item e** – Email discussion between BOP attorneys concerning BOP Legal Hold Protocols – The BOP Legal Hold Protocols were created by the BOP's Office of General counsel for use by BOP attorneys, to include BOP attorneys located in the BOP's six regional offices or a BOP institution. The Litigation Hold Protocols serve to provide defensive litigation strategies different types of civil actions filed against the BOP to include Habeas Corpus petitions and Bivens claims and these types of cases go to the core of BOP statutory duty to provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 §4042(a)(2).

f. **Item f** – Email discussion between BOP attorneys concerning attorney-client privilege for inmate e-mail – The email exchanged is a discussion by BOP attorneys concerning attorney-client privilege for inmate e-mail. The response by the staff attorney goes to the core of BOP statutory duty to provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 §4042(a)(2).

g. **Item g1** – Email discussion between BOP's Supervisory FOIA Attorney and BOP FOIA professionals concerning new search procedures for records – The BOP is a primary law enforcement agency responsible for the management and regulation of all Federal penal and correctional institutions pursuant to 18 U.S.C. § 4042(a)(1) and the email concerns legal requirement discussions impacting BOP attorneys and its FOIA professionals throughout the BOP to include staff assigned to BOP correctional institutions that provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2); therefore, the email is a record compiled for law enforcement purposes.

h. **Item g2** – BOP Legal Hold Protocols – The BOP Legal Hold Protocols were created by the BOP's Office of General Counsel for use by BOP attorneys, to include BOP attorneys located in the BOP's six regional offices or a BOP institution. The Litigation Hold Protocols serve to provide defensive litigation strategies for different types of civil actions filed against the BOP to include Habeas Corpus petitions and Bivens claims and these types of cases go to the core of BOP statutory duty to provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the

United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 §4042(a)(2).

i.  **Item h** – Email discussion between BOP attorneys – The BOP is a primary law enforcement agency responsible for the management and regulation of all Federal penal and correctional institutions pursuant to 18 U.S.C. § 4042(a)(1) and the email concerns legal procedures discussions impacting BOP attorneys staff throughout the BOP to include staff assigned to BOP correctional institutions that provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2); therefore, the email is a record compiled for law enforcement purposes.

j.  **Item i** – Email between BOP Attorneys discussing Litigation Hold Protocols – The BOP Legal Hold Protocols were created by the BOP's Office of General Counsel for use by BOP attorneys, to include BOP attorneys located in the BOP's six regional offices or a BOP institution. The Litigation Hold Protocols serve to provide defensive litigation strategies for different types of civil actions filed against the BOP to include Habeas Corpus petitions and Bivens claims and these types of cases go to the core of BOP statutory duty to provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 §4042(a)(2).

k.  **Item j** – Record between DOJ component staff discussing BOP's proposed inmate email policy – The BOP is a primary law enforcement agency responsible for the management and regulation of all Federal penal and correctional institutions pursuant to 18 U.S.C. § 4042(a)(1) and the email concerns policy requirements discussions impacting inmate email procedures and BOP staff throughout the BOP to include staff assigned to BOP correctional institutions that provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2); therefore, the email is a record compiled for law enforcement purposes.

l.  **Item k1** – Email between BOP attorney and an Assistant United States Attorney concerning inmate video visting at BOP facilities – The BOP is a primary law enforcement agency responsible for the management and regulation of all Federal penal and correctional institutions pursuant to 18 U.S.C. § 4042(a)(1) and the email concerns BOP policy requirements discussions impacting inmates visting procedures and BOP staff throughout the BOP to include staff assigned to BOP correctional institutions that provide suitable quarters and provide for the safekeeping,

care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2); therefore, the email is a record compiled for law enforcement purposes.

m.     **Item k2** – Email between BOP attorney and Criminal Division Attorney concerning request for calls and inmate emails – The BOP is a primary law enforcement agency sponsible for the management and regulation of all Federal penal and correction institutions pursuant to 18 U.S.C. § 4042(a)(1) and the email concerns access to inmate records and such discussions concerns BOP policy requirements impacting inmates visting procedures and BOP staff throughout the BOP to include staff assigned to BOP correctional institutions that provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2); therefore, the email is a record compiled for law enforcement purposes.

n.     Item R2– The PowerPoint presentation was created by BOP staff attorneys at the FDC SEATAC as a litigation training for Assistant United States Attorneys. The PowerPoint slides presented the BOP staff Attorney's legal analysis for and legal advice for how to deal with inmate medical related complaints and other key legal issues. As the United States Attorney Office provides defensive litigation for the BOP in various civil matters, the Powerpoint serves to provide defensive litigation strategies for different types of civil actions filed against the BOP to include Habeas Corpus petitions and <u>Bivens</u> claims and these types of cases go to the core of BOP statutory duty to provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 §4042(a)(2).

**(2).     Categories of Information Withheld**

40.     After balancing the public interest in discovering conduct of the BOP against the privacy interests of persons identified in the records, the BOP withheld the following categories of information pursuant to exemptions 6 and 7(C): a. names and register numbers of inmates; b. names, email addresses, and/or direct dialed telephone numbers of non-senior BOP officials; c. names, email addresses, and/or direct dialed telephone numbers of non-senior DOJ officials; and

d. email addresses, business addresses, and telephone numbers of parties-parties who were non-BOP staff. The description of each categories follows below:

a. Inmate Name and Register Number – Inmates do not lose all rights at the jailhouse door. Therefore, when balancing the privacy interests of inmates against the public interest in knowing the names of inmates and when and who they communicated with via TRULINCS to shed light on the activities of the BOP, the balance swings in favor of non-disclosure because knowing inmate names, in and of itself, sheds no light on the activities of the BOP sufficient to overcome the details of inmate's personal conversations with third-parties. In this sense, releasing the names of inmates is reasonably expected to invade their privacy.

Further, revealing the register number of the inmate is tantamount to releasing the name of the inmate as the inmate register number is unique to each inmate and armed with the register number, one could use open source systems to gain the name of the inmate.

The records that contain this information are **Items c1; and k2.**

b. BOP Staff Name (Non-senior BOP Officials), including their email addresses, and/or direct dialed telephone number. BOP staff do not lose their right of privacy because they are employed by U.S. Government. An important part of their privacy interest is living free from harassment, redicule, or threats or personal public scrutiny merely because of their employment with the BOP. The release of staff names is reasonably expected to endanger the life and/or physical safety of staff since it will allow inmates or members of the general public to look up staff through Motor Vehicle Administration, tax, or other state open access records and permit the location of staff home addresses for targeted threats to staff and their families or to their real or personal property and the same represents a congnizable privacy interest of all citizens, including BOP staff. When balancing the stated privacy interests of staff against the public interest in knowing the names of staff to shed light on the activities of the BOP, the balance swings in favor of non-disclosure because knowing staff names, in and of itself, sheds no light on the activities of the BOP, to include any policy or application functions concerning the TRULINCS sufficient to overcome the staff member's substantial privacy interest. Further, knowing staff email addresses is tantamount to revealing the name of the staff since staff names are used as part of the email address.

Finally, similar to email addresses, knowing the direct dial telephone number of the staff member is tantamount to releasing the staff name since staff with direct dialed telephone numbers tend to answer the telephone and great callers with their name and staff also use their name for their

voicemail. Thus, one could simply dial the telephone number to determine the staff's identity that is associated with the telephone number.

The records that contain this information are **Items c1; c2; d1; d2; e; f; g1; g2; h; i; k1; k2 and R2.**

c.   DOJ Staff Name (Non-senior DOJ Officials), including their email addresses, and/or direct dialed telephone number. DOJ staff do not lose their right of privacy because they are employed by U.S. Government. An important part of their privacy interest is living free from harassment, rediccule, or threats or personal public scrutiny merely because of their employment with the government. The release of staff names is reasonably expected to endanger the life and/or physical safety of staff since it will allow inmates or members of the general public to look up staff through Motor Vehicle Administration, tax, or other state open access records and permit the location of staff home addresses for targeted threats to staff and their families or to their real or personal property and the same represents a congnizable privacy interest of all citizens, including DOJ staff. When balancing the stated privacy interests of staff against the public interest in knowing the names of staff to shed light on the activities of the BOP, the balance swings in favor of non-disclosure because knowing staff names, in and of itself, sheds no light on the activities of the BOP, to include any policy or application functions concerning the TRULINCS sufficient to overcome the staff member's substantial privacy interest.

Further, knowing staff email addresses is tantamount to revealing the name of the staff since staff names are used as part of the email address.

Finally, similar to email addresses, knowing the direct dial telephone number of the staff member is tantamount to releasing the staff name since staff with direct dialed telephone numbers tend to answer the telephone and great callers with their name and staff also use their name for their voicemail. Thus, one could simply dial the telephone number to determine the staff's identity that is associated with the telephone number.

The record that contains this information is **Item j.**

d.   Third-party Name, including their email address, business address, and telephone number. Third-parties also have a right of privacy and this privacy right is not lessened merely because some direct or indirect association with the BOP to include third-parties who have personal or familial relationship with a person confined within a BOP facility. In the context of this information, there is no consent by the third-party to release information to the Plaintiff. Further, the release of third-party names is reasonably expected to endanger the life and/or physical safety of inmates

and third-parties since it will allow inmates or members of the general public to look up these third-parties through Motor Vehicle Administration, tax, or other state open access records and permit the location of the third-party's home addresses for targeted threats to them and their families or to their real or personal property due to their direct or indirect association with the BOP and some individuals hostilities concerning the BOP or about certain inmates confined by the BOP. When balancing the privacy interests of third-parties against the public interest in knowing the names of third-parties to shed light on the activities of the BOP, the balance swings in favor of non-disclosure because knowing third-party names, in and of itself, sheds no light on the activities of the BOP, to include any policy or application functions of TRULINCS, sufficient to overcome the third-parties' substantial privacy interest.

Also, since the email addresses of third-parties are uniquely associated with the third-party that may include their name or an identifier unique to the third-party, release of the email address of the third-party is tantamount to releasing their names.

Further, release of the mailing address of a third- party creates direct access to the third-party at a place where privacy is most significantly recognized, homes, or in places where privacy is recognized, private businesses such that release of the address of the third-party is tantamount to releasing their names.

Finally, release of the telephone numbers of a third-party, like that of a home address, is tantamount to releasing their names since the owner of the telephone number decides who has access to the number and also most people do not use Lan Lines; rather, they use cellular phones. Cellular telephones may contain personal information about the owner to include personal photos, medical history, and credit and banking information to name a few. Further, the apparent privacy interest in the telephone numbers is represented by the third-party's ability to restrict certain call or to block calls.

The records that contain this information are **Items c1; and d2.**

E.     <u>**Records Withheld Pursuant to Exemptions 7(E) and 7(F)**</u>

41.     Exemption 7(E) of the Freedom of Information Act affords protection to all law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations.

42.     Exemption 7(F) permits the withholding of law enforcement-related information necessary to protect the physical safety of a wide range of individuals.

### (1).     Law Enforcement Records

43.     The BOP is a primary law enforcement agency responsible for the management and regulation of all Federal penal and correctional institutions pursuant to 18 U.S.C. § 4042(a)(1) and the document covers all of the BOP's investigative techniques used to manage institutions where inmates designated to a federal correctional facilities to ensure the secure and orderly operations of those facilities by providing suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2); therefore, the record is compiled for law enforcement purposes. The law enforcement nature of the records are separately described below:

a.     **Items a – b –** Change Notice 1380.11, CN-1: Special Investigative Supervisors Manual (November 30, 2016). The SIS Manual is compiled for law enforcement purposes to meet the BOP's responsibility to provide for the safekeeping of inmates within its facilities, and enforce the prevention of criminal activities. Authorized BOP staff make arrests, search inmates and visitors to BOP institutions, seize evidence, and otherwise protect inmates, staff, and the community. The Special Investigative Supervisors Manual covers every aspect of BOP's specific investigative techniques and procedures. This reveals detailed technical analysis of the techniques and procedures used by the BOP to conduct law enforcement investigations.

b.     **Item c1** – TRULINCS User Guide – Regarding the application of Exemption 7(F) only, TRULINCS is a BOP database that is comprised of two main components. The TRULINCS User Guide represents pages of application that staff and inmates may see depending on their respective use privileges. One component is the inmate application used solely by the inmates and provides inmates the capability to manage their contact list for emails, communicate with members of the public on an inmate's contact list via email, and communicate with staff ssigned to BOP correctional institutions that provide suitable quarters and provide for the

safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 §4042(a)(2).

c.    **Item d2** – Email discussion between District Court Judge Sullivan and the staff attorney for MCC New York concerning inmate's access to discovery – Regarding the application of Exemption 7(F) only, although this information is not relevant to the FOIA request seeking records regarding the technical features of the inmate email system because the email exchanged is a discussion by BOP attorney and a judge concerning attorney-client privilege for inmate e-mail. The response by the staff attorney goes to the core of BOP statutory duty to provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 §4042(a)(2).

d.    **Item l** – Inmate Communication Monitoring"  - Decision Paper. The Decision Paper is compiled for law enforcement purposes to meet the BOP's responsibility to provide for the safekeeping of inmates, staff and visitors within its facilities, and enforce the prevention of criminal activities. The Decision paper was prepared as an internal policy consideration tool to assess the implementation of inmate Video Conferencing across the BOP.

e.    **Item R1**– DOJBook - Office Manuals - WDWA - Criminal Division - Bureau Of Prisons emails – The BOP is a primary law enforcement agency sponsible for the management and regulation of all Federal penal and correctional institutions pursuant to 18 U.S.C. § 4042(a)(1) and the email concerns access to inmate records and such discussions concerns BOP policy requirements impacting inmates visting procedures and BOP staff throughout the BOP to include staff assigned to BOP correctional institutions that provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2); therefore, the record is a record compiled for law enforcement purposes.

f.    **Item R2**– The PowerPoint presentation - The BOP is a primary law enforcement agency sponsible for the management and regulation of all Federal penal and correctional institutions pursuant to 18 U.S.C. § 4042(a)(1) and the email concerns access to inmate records and such discussions concerns BOP policy requirements impacting inmates visting procedures and BOP staff throughout the BOP to include staff assigned to BOP correctional institutions that provide suitable quarters and provide for the safekeeping, care, and subsistence of persons charged with or convicted of offenses against the United States, or held as a witness or

otherwise pursuant to 18 U.S.C. 2 § 4042(a)(2); therefore, the record is a record compiled for law enforcement purposes. BOP staff attorneys who occupied a primay law enforcement position prepared the PowerPoint slide as training for Assistant United States Attorneys to address legal issues/claims raised by inmates confined to the BOP facility.

### (2).   Information Withheld and Rationale

44.    Records withheld pursuant to Exemption 7(E) and 7(F) are identied in the Vaughn Index for Items **a; b; l; R1 and R2**. The description of each item follows below:

a.    **Items a-b** – The portions of the Special Investigative Supervisors Manual withheld are program guidance on everything from processing crime scenes, handling confidential informants and referring matters for prosecution. The information withheld represents critical components of the investigatory techniques of security staff of the BOP especially in a correctional setting where there are multiple witnesses and because the correctional setting creates poses a significant risk of contamination or influence of witness by other witnesses and/or other inmates. The investigative techniques, in a correctional setting, are strategic decisions that account for the secure and orderly operations of the correctional facilities to ensure inmate and staff safety is not put in jeopardy. Disclosure of this information would reveal how the information was gathered and could provide an opportunity for inmates to manipulate victims or witnesses to an incident in an effort to improperly influence an investigation. If for example, the methods employed to handle confidential informants were disclosed, then inmates who cooperate with SIS staff in reporting potential disturbances, food strikes, drug introductions, weapons introductions, etc. would feel their identities could not be protected and this would chill any cooperation from the inmate population. Additionally, release of the withheld information would allow inmates to circumvent internal law enforcement investigations in BOP facilities by revealing how BOP collects information, BOP strategies in conducting these investigations, and how BOP prioritizes the various issues associated with an internal investigation. Release of this material to inmates or the general public would do great harm in undermining the effectiveness of how these internal investigations are performed which, in turn, would undermine the security of federal correctional facilities.

b.    **Item c1** – TRULINCS User Guide – Regarding the application of Exemption 7(F) only, it was applied because the release of inmate names and register numbers, the names and email addresses of their families and personal email contacts, contents of the messages, BOP staff name (Non-senior BOP Officials), and their email addresses is

31

reasonably expected to endanger the life and/or physical safety these individuals. It will allow inmates or members of the general public to look up these parties through Motor Vehicle Administration, tax, or other state open access records and permit the location of the third-party's home addresses for targeted threats to them and their families or to their real or personal property and the same represents the privacy interest of the third-parties. BOP staff do not lose their right of privacy because they are employed by U.S. Government. An important part of their privacy interest is living free from harassment, rediculed, or threats or personal public scrutiny merely because of their employment with the BOP.

c.      **Item d2** – Email discussion between District Court Judge Sullivan and the staff attorney for MCC New York concerning inmate's access to discovery – Regarding the application of Exemption 7(F) only, although this information is not relevant to the FOIA request seeking records regarding the technical features of the inmate email system because the information concerns an ongoing case, it was applied because release of this information to inmates or the general public would do great harm in undermining ongoing cases and/or investigations. Additionally, it would undermine the safety of individuals involved in these cases. Members of the general public will be subject to risks of physical violence or may be exposed to injury as a result of the release of this information.

b.      **Item l** – Inmate Communication Monitoring  - BOP officers are authorized to make arrests, search inmates and visitors to BOP institutions, seize evidence, and otherwise protect inmates, staff, and the community. To the extent that these exemptions were applied, they were applied to limit information concerning the percentage of telephone calls and other communications monitored by the BOP. BOP monitoring of inmate communications is a part of its investigative techniques and the disclosure of the same will prevent the BOP from conducting adequate investigations into criminal activity engagement by inmates via electronic communications. Additionally, release of the withheld information would allow inmates to circumvent internal law enforcement investigations in BOP facilities by revealing how BOP collects information. Further, the monitoring of electronic communications directly relates to the BOP duty to protect the physical safety of inmates, staff, and members of the general public as electronic communications are used by inmates to threaten and harass others and to conspire with others to do the same. Release of this material to inmates or the general public would do great harm in undermining the effectiveness of how these internal investigations are performed which, in turn, would undermine the security of federal correctional facilities. Revealing the information as described above will allow inmates to evade investigation into

criminal activities and such evasion threatens the secure and orderly operations of BOP as staff, inmates and members of the general public will be subject to risks of physical violence or may be exposed to injury as a result of intentional damage to government property.

c.    **Item R1-** DOJBook - Office Manuals - WDWA - Criminal Division - Bureau Of Prisons emails. BOP officers are authorized to make arrests, search inmates and visitors to BOP institutions, seize evidence, and otherwise protect inmates, staff, and the community. To the extent that these exemptions were applied, they were applied to limit information concerning the direct email address to the BOP's Special Investigative Supervisor's (SIS) office. The SIS is the investigative section at BOP facilities. Release of the email address will permit third parties to circumvent the investigative requirements and procedures.

d.    **Item R2-** Powerpoint Presentation.  As it relates to exemption 7(E), the information withheld concerns how BOP schedules its inmates for outside medical visits and who schedules those medical visits. The BOP is responsible for the safety of both inmates and the public. Releasing information concerning who schedules inmate medical trips not only jeopardizes the secure and orderly operations of the BOP, but also the community as the information, if revealed, allows the inmate or third-parties the ability to circumvent security measures. As it relates to 7(F), the information withheld represents the investigatory techniques of security staff of the BOP especially in a correctional setting where there are multiple witnesses and because the correctional setting creates a significant risk of contamination or influence of witness by other witnesses and/or other inmates. The noninvestigative techniques, in a correctional setting, are strategic decisions that account for the secure and orderly operations of the correctional facilities to ensure inmate and staff safety is not put in jeopardy. Disclosure of this information would reveal how the information would allow inmates to circumvent internal law enforcement investigations in BOP facilities by revealing how BOP collects information, BOP strategies in conducting these investigations, and how BOP prioritizes the various issues associated with an internal investigation. Release of this material to inmates or the general public would do great harm in undermining the effectiveness of how these internal investigations are performed which, in turn, would undermine the security of federal correctional facilities.

## VI.    Executive Office of the United States Attorney

45.    For records identified as Items h and k1, the Executive Office of the United States Attorneys ("EOUSA"), identified its equities concerning the records.

46.     Regarding Item h, the EOUSA applied exemption 5 to protect its equities. Item h is Email discussion between BOP attorney and an Assistant United States Attorney. BOP attorneys represent the BOP in all phases of litigation and are charged with providing legal advice to BOP officials and representing the interests of BOP officials as it relates to criminal and civil enforcement procedures. The information redacted pursuant to exemption 5 was limited to redacting a link to the DOJ/USA Book. The DOJ/USA Book is a confidential source book for Department of Justice Attorneys that copiles case law, legal, interpretations, a legal strategies used by DOJ attorneys in litigation.

47.     Regarding Item k1, the EOUSA applied exemptions 5, 6, and 7(C) to protect its equities in the record. Item k1 is an email thread: BOP Agency Attorney to USAO (MD), dated March 1, 2016, with the subject "Video Chats." The email is a discussion between a BOP attorney and an Assistant United States Attorney concerning video visiting. BOP attorneys represent the BOP in all phases of litigation and are charged with providing legal advice to BOP officials and representing the interests of BOP officials as it relates to criminal and civil enforcement procedures. The email contains information where the Assistant United States Attorney engaged in legal analysis and legal interpretation with BOP's Agency Counsel concerning his/her legal interpretation of the policies concerning Video Visiting, the communication represents the Attorney-Work product as the BOP's attorney's legal analysis concerning the same is done in anticipation of litigation since inmates, families, and their representatives could potentially sue the BOP due to any policy consideration or implementation of the Video Visiting. Strategic legal decisions by Departent of Justice attorneys and any considerations and analysis concerning current or future litigation issues go to the heart of the attorney's legal work product in making recommendations to senior BOP staff concerning the same. Any part of the email prepared in

anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5. To that extent, the document is fully protected as work product, and segregability was not required.

48.     Regarding exemptions 6 and 7(C), paragraphs 36 and 37(l), *supra*, describes, in full, the nature of the records, how the record is a record compiled for law enforcement purposes, and the application of the exemptions 6 and 7(C). Like the BOP, the EOUSA limited its exemptions to protect the name, email address and telephone numbers of staff from the EOUSA.

I declare under penalty of perjury and pursuant to 8 U.S.C. § 1746 that the foregoing is true and correct to the best my knowledge and belief.

Executed this 2nd day of November of 2020.

*Sarah Lilly*
_____
Sarah Lilly
Government Information Specialist
FOIA Section
Office of General Counsel
Federal Bureau of Prisons