UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, ) ) ) | |
| Plaintiff, ) | No. 18-cv-2399-KBJ |
| ) v. ) ) | |
| FEDERAL BUREAU OF PRISONS, *et al.* ) ) | |
| Defendants. ) ) | |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Megan Graham (*pro hac vice*)
Catherine Crump (*pro hac vice*)
Samuelson Law, Technology &
   Public Policy Clinic
U.C. Berkeley School of Law
353 Law Building
Berkeley, CA 94720-7200
(510) 664-4381
mgraham@clinical.law.berkeley.edu

*Counsel for Plaintiff*

Barry J. Pollack, D.C. Bar #434513
Robbins, Russell, Englert, Orseck,
   Untereiner & Sauber, LLP
1801 K Street, N.W.
Suite 411L
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 2

I.    EOUSA failed to conduct an adequate search for responsive records. ............................ 3

    A.    Four United States Attorney's Offices and EOUSA failed to provide reasonably detailed declarations to justify the adequacy of their searches. ............ 4

        1.    Two offices' descriptions remain insufficiently detailed. .............................. 4

        2.    The initial and supplemental Jolly declarations fail to describe the methodology used to review potentially responsive records referred from three USAOs. ........................................................................................... 6

        3.    EOUSA has not submitted declarations that explain the discrepancies in the record or describe the provenance of additional responsive records. ...... 7

    B.    Four United States Attorney's Offices conducted inadequate searches. ............... 7

II.    Defendants failed to justify their withholding of certain information under the FOIA's narrow statutory exemptions. ........................................................................... 10

    A.    BOP improperly withheld information under Exemption 4. ................................. 10

    B.    Defendants have failed to justify withholdings under Exemption 5. .................... 13

        1.    Some records withheld under deliberative process privilege are not pre-decisional or deliberative and cannot be withheld under Exemption 5. ...... 13

        2.    Defendants improperly withheld records under the work product doctrine. ................................................................................................... 17

        3.    Defendants have failed to establish that the attorney-client privilege applies to records withheld under Exemption 5. ......................................... 19

    C.    BOP improperly withheld information under Exemption 7(E) and 7(F). ............. 19

    D.    Defendants failed to address or respond to various other arguments presented in NACDL's cross-motion. ................................................................. 21

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Access Reports v. DOJ*,
  926 F.2d 1192 (D.C. Cir. 1991) ................................................................. 13, 15

*ACLU of N. Cal. v. DOJ*,
  880 F.3d 473 (9th Cir. 2018) .......................................................................... 18

*Am. Small Bus. League v. U.S. Dep't of Def.*,
  411 F. Supp. 3d 824 (N.D. Cal. 2019) ............................................................ 12

*Bagwell v. DOJ*,
  311 F. Supp. 3d 223 (D.D.C. 2018) ............................................................... 8, 9

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) ......................................................................... 20

*Buggs v. Powell*,
  293 F. Supp. 2d 135 (D.D.C. 2003) ........................................................... 21, 23

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ............................................................. 13, 14, 16

*Conservation Force v. Jewell*,
  66 F. Supp. 3d 46 (D.D.C. 2014) .................................................................... 13

*Food Mktg. Inst. v. Argus Leader Media*,
  139 S. Ct. 2356 (2019) .................................................................................... 12

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ........................................................................................ 17

*In re Sealed Case*,
  146 F.3d 881 (D.C. Cir. 1998) ........................................................................ 17

*James Madison Project v. DOJ*,
  267 F. Supp. 3d 154 (D.D.C. 2017) .................................................................. 5

*Judicial Watch, Inc. v. DOJ*,
  373 F. Supp. 3d 120 (D.D.C. 2019) ............................................................... 8, 9

*Judicial Watch, Inc. v. FDA*,
  449 F.3d 141 (D.C. Cir. 2006) ............................................... 11, 12, 15, 20, 22

*Judicial Watch, Inc. v. HHS*,
  27 F. Supp. 2d 240 (D.D.C. 1998) .................................................................. 14

*Linder v. Exec. Office for U.S. Attorneys*,
    315 F. Supp. 3d 596 (D.D.C. 2018) ......................................................... 6

*Martin v. EEOC*,
    19 F. Supp. 3d 291 (D.D.C. 2014) ........................................................ 14

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) .............................................................. 3

*Miller v. Casey*,
    730 F.2d 773 (D.C. Cir. 1984) ................................................................ 9

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) .............................................................. 6

*NACDL v. EOUSA*,
    844 F.3d 246 (D.C. Cir. 2016) ......................................................... 17, 18

*Nat'l Sec. Archive v. CIA*,
    752 F.3d 460 (D.C. Cir. 2014) .................................................. 13, 15, 16

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) .................................................................... 15, 16

*Oglesby v. U.S. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ................................................................. 4

*Pub. Citizen v. U.S. Dep't of HHS*,
    975 F. Supp. 2d 81 (D.D.C. 2013) ........................................................ 11

*Pub. Emps. for Envtl. Resp. v. EPA*,
    288 F. Supp. 3d 15 (D.D.C. 2017) ........................................................ 15

*Rodriguez v. Dep't of Def.*,
    236 F. Supp. 3d 26 (D.D.C. 2017) .......................................................... 9

*Schoenman v. FBI*,
    604 F. Supp. 2d 174 (D.C. Cir. 2009) .............................................. 20, 22

*Seife v. FDA*,
    No. 17-cv-3960-JMF, 2020 WL 5913525 (S.D.N.Y. Oct. 6, 2020) ................... 12

*Shapiro v. DOJ*,
    969 F. Supp. 2d 18 (D.D.C. 2013) ........................................................ 17

*Stein v. DOJ*,
    197 F. Supp. 3d 115 (D.D.C. 2016) ................................................. 21, 23

*Summers v. DOJ*,
    934 F. Supp. 458 (D.D.C. 1996) ........................................................ 8, 9

*United States v. Nixon*,
    418 U.S. 683 (1974) ............................................................................ 14

*Weisberg v. DOJ*,
    705 F.2d 1344 (D.C. Cir. 1983) ........................................................ 3, 7

**Statutes**

5 U.S.C. § 552 ............................................................................................ 2

5 U.S.C. § 552(a)(3)(D) ............................................................................ 6

5 U.S.C. § 552(b)(4) ............................................................................ 10, 11

5 U.S.C. § 552(b)(5) .................................................................................. 13

5 U.S.C. § 552(b)(7)(E) ............................................................................ 20

5 U.S.C. § 552(b)(7)(F) ............................................................................ 20

**Rules**

Fed. R. Civ. P. 26(b)(3) ........................................................................ 17, 18

Plaintiff National Association of Criminal Defense Lawyers ("NACDL") respectfully submits this reply memorandum in further support of its cross-motion for summary judgment against Defendants BOP and DOJ, including EOUSA and the Criminal Division (collectively, "Defendants").[1]

## PRELIMINARY STATEMENT

Based on Defendants' summary judgment filings, NACDL has further narrowed the scope of its challenges. NACDL is no longer challenging EOUSA's searches run in District of Colorado, Southern District of Florida, District of Massachusetts, Eastern District of Virginia, and Western District of Washington. Additionally, NACDL is no longer challenging the Exemption 5 withholdings for Criminal Division Records 8 and 18, and EOUSA Record 12.

In light of this and the challenges discussed in NACDL's cross-motion for summary judgment and supporting documents, the following issues are still live:

(1) EOUSA's searches run in District of Arizona, Northern District of Illinois, Eastern District of Michigan, Southern District of New York, Eastern District of Pennsylvania, and EOUSA's processing of responsive records found in District of Colorado, Southern District of Florida, and Western District of Washington;

(2) Exemption 4 withholdings for BOP Records c1 and R2 [Ex. B.10 at 83];

(3) Exemption 5 withholdings for BOP Records j and l; Criminal Division Records 1–4, 9–12, 14–17, 19–22, 24, 26–28, and 31–33; and EOUSA Records 1–5, 11, 13, 15–16, and 18–27;

(4) Exemption 7(E) and (F) withholdings for BOP Records a-b [Ex. B.1 at 3–21] and l; and

---

[1] This memorandum uses abbreviations as defined in NACDL's opening brief. *See* Pl.'s Mem. of P. & A. in Supp. of Cross-Mot. for Summ. J. ("Pl.'s Mem."). Additionally, all citations to exhibits refer to the exhibits appended to NACDL's opening brief.

(5) Whether Defendants provided adequate justifications for withholdings in all responsive records, whether Defendants conducted proper segregability analyses, and whether Defendants properly withheld information within responsive records that is described as being "non-responsive."

As explained more in NACDL's memorandum in support of its cross-motion for summary judgment, *see* Pl.'s Mem. of P. & A. in Supp. of Cross-Mot. for Summ. J. ("Pl.'s Mem."), and below, Defendants have failed to establish that they have fully discharged their obligations under the FOIA, 5 U.S.C. § 552. Specifically, EOUSA failed to make reasonable efforts to search for responsive records, and BOP, the Criminal Division, and EOUSA failed to justify certain withholdings under FOIA Exemptions 4, 5, 7(E), and 7(F). Thus, the Court should deny Defendants' Motion for Summary Judgment and grant NACDL's Cross-Motion for Summary Judgment.

## ARGUMENT

Defendants have failed to establish that several of EOUSA's searches were adequate or that various withholdings under Exemption 4, 5, 7(E), and 7(F) were proper, and fail to counter many of the specific arguments raised in NACDL's opening brief on these points. Furthermore, Defendants fail to refute several other arguments presented in NACDL's opening brief, including that Defendants' *Vaughn* indices improperly omitted individualized descriptions of certain withheld records; that Defendants failed to produce all reasonably segregable information; and that EOUSA and BOP improperly redacted "non-responsive" information within responsive records. Defendants' failures on these fronts entitle NACDL to summary judgment.

Additionally, NACDL refutes Defendants' implication that it is improper for NACDL to challenge records that are not explicitly mentioned in the Second Amended Complaint. *See* Defs.'

Reply 7; Supp. Decl. of Vinay J. Jolly ("Supp. Jolly Decl.") ¶ 4 n.7. Only after Defendants submitted numerous filings stating that their production of records was complete, and after NACDL filed its Second Amended Complaint, did Defendants reverse course and indicate that they were still processing records. *Compare* 15th Joint Status Report ¶ 4 (June 5, 2020), ECF No. 40 (providing formal notice of completion of production of records); 14th Joint Status Report ¶ 3 (May 5, 2020), ECF No. 39 (indicating record production was complete); 13th Joint Status Report ¶ 3 (Apr. 7, 2020), ECF No. 37 (same); 12th Joint Status Report ¶¶ 3–4 (March 3, 2020), ECF No. 36 (same), *and* 2d Am. Compl. (Aug. 7, 2020), ECF No. 42, *with* Defs.' Withdrawal of June 5, 2020 Notice of Disclosure Completion (Sept. 29, 2020), ECF No. 47. The parties remained in regular contact throughout the window during which Defendants made subsequent productions, and NACDL conveyed the scope of its challenges to the newly produced records as the disclosures were made. Additionally, the records not listed in the Second Amended Complaint that NACDL is challenging were all produced after the Second Amended Complaint was filed. Thus, while NACDL's challenges encompass records not mentioned in the Second Amended Complaint, Defendants cannot evade their obligations to justify their withholdings on this ground.

## I.    EOUSA failed to conduct an adequate search for responsive records.

EOUSA has not met its burden of showing "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983); *see also McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983) (stating that the "burden of persuasion on this matter is . . . on the agency"). Even based on the supplemental descriptions provided by EOUSA, the agency has failed to justify the adequacy of the searches conducted by District of Arizona, Northern District of Illinois, Eastern District of Michigan, Southern District of New York, Eastern District of Pennsylvania, and EOUSA's

processing of responsive records found in District of Colorado, Southern District of Florida, and Western District of Washington.

> ### A. Four United States Attorney's Offices and EOUSA failed to provide reasonably detailed declarations to justify the adequacy of their searches.

In its opening brief, NACDL argued that several of the offices for which EOUSA submitted search descriptions were insufficiently detailed for three reasons: (1) some offices provided only cursory descriptions of parts of the searches conducted; (2) EOUSA's description of how it processed records from the USAOs was insufficiently detailed; and (3) some offices' descriptions contained inconsistencies and omissions that raised substantial doubt as to the completeness and thoroughness of the search justifications. Pl.'s Mem. 8–12. In its reply, EOUSA has remedied some, but not all, of these deficiencies, and thus has failed to justify the adequacy of its searches by providing insufficiently detailed descriptions for District of Arizona and Eastern District of Pennsylvania; failing to justify EOUSA's processing of responsive records from District of Colorado, Southern District of Florida, and Western District of Washington; and failing to explain discrepancies in the record for the searches conducted by Eastern District of Michigan, Eastern District of Pennsylvania, and Southern District of New York.

> #### 1. Two offices' descriptions remain insufficiently detailed.

While NACDL is now willing to forego its challenge to District of Colorado's search description, the descriptions provided by District of Arizona and Eastern District of Pennsylvania are still inadequate.

To establish the adequacy of a search, an agency's declaration must be "reasonably detailed" and set forth "the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

In its reply, EOUSA argues that describing the search terms and methodologies used to conduct the searches in this case is unnecessary. *See* Defs.' Reply 3–4. While not every search description requires a list of search terms to be considered adequate, *see James Madison Project v. DOJ*, 267 F. Supp. 3d 154, 161 (D.D.C. 2017), EOUSA's argument is unavailing on two fronts. First, *James Madison Project* still required a detailed description of the search, even where search terms were deemed unnecessary in light of the small number of records at issue. *See id.* As highlighted in NACDL's opening brief, Eastern District of Pennsylvania's declaration simply fails to describe certain portions of the search conducted. *See* Pl.'s Mem. 8–9; *see also id.* at 12 (describing inconsistencies between search description and *Vaughn* index that show search description is incomplete). Similarly, the description for District of Arizona fails to describe the search that was run. *Id.* at 10. For example, the declaration fails to explain details like whether the search was manual or electronic, which portions of the intranet and DOJ Book the search focused on and why, and the terms—if any—that were used to conduct it.

Second, EOUSA's argument that the locations searched were small in number and "well-known" to the individuals conducting the search is belied by the declarations filed by these offices. Both Eastern District of Pennsylvania and District of Arizona describe searches conducted by multiple people across multiple resources and systems. By their own descriptions, the responsive records were not "readily identifiable"—a marked contrast to the circumstances in *James Madison Project*. *See* 267 F. Supp. 3d at 161. If they had been, the offices would not have needed several rounds of searches and the extensive consultation process described in the declarations, nor would so many locations need to be searched. *See* Decl. of Beverly Brown ("Brown Decl.") ¶¶ 9–18; Decl. of Michael A. Ambri ¶¶ 4–5. Bare statements that searches were conducted are insufficient to establish that those searches were adequate. *See Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir.

2007) (stating that a declaration is insufficient if it "merely identifies the [agency components] that were responsible for finding responsive documents without identifying the terms searched or explaining how the search was conducted").

### 2. The initial and supplemental Jolly declarations fail to describe the methodology used to review potentially responsive records referred from three USAOs.

As discussed in NACDL's opening brief, EOUSA's declaration also fails to provide any information on the search it conducted of potentially responsive records referred from five USAOs. *See* Pl.'s Mem. 10–11. Even after submission of Defendants' reply and the supplemental Jolly declaration, EOUSA's explanation of its search is still inadequate as to three USAOs. *See* Defs.' Reply 7; Supp. Jolly Decl. ¶ 4 n.1. A FOIA search includes the "processing" of responsive records. 5 U.S.C. § 552(a)(3)(D) (defining "search" to mean reviewing records "manually or by automated means . . . for the purpose of locating those records which are responsive to a request"). NACDL no longer challenges EOUSA's description of its processing of records from District of Massachusetts or Eastern District of Virginia because the supplemental Jolly declaration explains how those records were processed. *See* Supp. Jolly Decl. ¶ 4 n.1. However, the supplemental declaration fails to account for the narrowing of records found by District of Colorado, Southern District of Florida, or Western District of Washington. *See id.* Thus, EOUSA's descriptions provided fail to adequately explain the disposition of potentially responsive records referred from these three USAOs to EOUSA. *See Linder v. Exec. Office for U.S. Attorneys*, 315 F. Supp. 3d 596, 601 (D.D.C. 2018) (finding that failure to "specify why the district's initial estimate of 1,500 pages potentially responsive to [FOIA requester's] request resulted in providing 502 pages—a third of the initial estimate—to the EOUSA" rendered the declaration "insufficient to merit summary judgment"). EOUSA's declarations are thus not reasonably detailed enough to establish the search was adequate.

### 3. EOUSA has not submitted declarations that explain the discrepancies in the record or describe the provenance of additional responsive records.

In its opening brief, NACDL called the Court's attention to three declarations of three USAOs—Eastern District of Michigan, Eastern District of Pennsylvania, and Southern District of New York—that contained statements that either directly contradict disclosed records or fail to reflect descriptions of searches that yielded responsive records. Pl.'s Mem. 11–12. In its supplemental declaration, EOUSA indicates that the discrepancies and missing information exist because "additional records were located" by the relevant offices. *See* Supp. Jolly Decl. ¶ 4 n.4 (discussing Eastern District of Pennsylvania and Southern District of New York); *see also id.* ¶ 4 n.2 (indicating Eastern District of Michigan "located an additional document"). Be that as it may, it is improper for the search descriptions to fail to include the totality of the search processes that resulted in these records being found, *see* Pl.'s Mem. 11–12, and nothing in the supplemental declaration remedies those errors.

### B. Four United States Attorney's Offices conducted inadequate searches.

In its opening brief, NACDL also argued that a number of USAOs conducted inadequate searches. *See* Pl.'s Mem. 12–17. Specifically, NACDL argued that several offices improperly narrowed the scope of their searches—either by using unduly restrictive search terms or by focusing solely on "written policies" to the exclusion of informal policies, practices, and procedures—and that several offices failed to follow obvious leads. Based on EOUSA's supplemental declarations, NACDL no longer challenges the search terms used by District of Massachusetts, nor does it challenge whether Northern District of Illinois and Western District of Washington followed obvious leads in their searches. However, EOUSA's subsequent explanations still fail to establish that all of the searches conducted were reasonably calculated to uncover all responsive records. *See, e.g., Weisberg*, 705 F.2d 1344 (holding that an adequate search

is one "reasonably calculated to uncover all relevant documents"); *Judicial Watch, Inc. v. DOJ*, 373 F. Supp. 3d 120, 125 (D.D.C. 2019) (finding a search was unduly restrictive that failed to use logical alternative terms).

First, as argued in NACDL's opening brief, several of the terms used by Northern District of Illinois, Eastern District of Michigan, and Eastern District of Pennsylvania in their searches are unduly restrictive. *See* Pl.'s Mem. 13–15. Specifically, NACDL took issue with use of "Consent to Monitoring Agreement" and "inmate transactional data" as search terms without also using other, broader or more colloquial terms. *Id.* Contrary to EOUSA's assertion, NACDL did not mean to imply that these offices *only* used these inappropriately narrow terms during their searches. Rather, NACDL's argument is that these terms are targeted toward uncovering certain relevant records, but the terms too narrow to turn up all responsive records without broader or more colloquial terms. *See, e.g.*, *Bagwell v. DOJ*, 311 F. Supp. 3d. 223, 229–30 (D.D.C. 2018) (indicating that agencies must search for relevant and common vernacular search terms in addition to formal terms); *Summers v. DOJ*, 934 F. Supp. 458, 461 (D.D.C. 1996) (requiring FBI to use "appointment" and "diary" as search terms because they are commonly used to describe the "commitment calendars" requested); *Judicial Watch v. DOJ*, 373 F. Supp. 3d at 125 (requiring the agency to search for both Special Counsel's name and title, as well as the office's commonly used acronym). "Consent to Monitoring Agreement" seems to be targeted at finding records discussing inmates' purported voluntary consent to the monitoring of their emails, while "inmate transactional data" seems to be targeted at finding discussions of some of the TRULINCS data BOP monitors. NACDL's opening brief points to examples drawn from Defendants' own filings and released records of other ways these programs, policies, and practices are discussed within the government. *See* Pl.'s Mem. 13–14.

Additionally, Northern District of Illinois and Eastern District of Pennsylvania used various terms—BOP, "Bureau of Prisons," "Consent to Monitoring Agreement," and "inmate transactional data," among others—but failed to describe how those terms relate to each other. Payne Decl. ¶ 7; Brown Decl. ¶ 16. It is not clear whether some or all of these terms were required in combination (e.g., "Bureau of Prisons" AND "Consent to Monitoring Agreement") or could appear separately (e.g., "Bureau of Prisons" OR "Consent to Monitoring Agreement") in the records. These terms and how they work in conjunction with each other could unduly restrict the scope of the search, *see, e.g.*, *Bagwell*, 311 F. Supp. 3d. at 229–30; *Summers*, 934 F. Supp. at 461; *Judicial Watch v. DOJ*, 373 F. Supp. 3d at 125, particularly in light of the fact that the record clearly establishes that other terms were commonly used to describe the policies and practices as issue in NACDL's FOIA request, *see* Pl.'s Mem. 13–14.

Second, District of Arizona and Eastern District of Pennsylvania unduly restricted their searches to "written policies." *See* Pl.'s Mem. 15. While EOUSA focuses on the "written" part of that phrase, NACDL's argument is that an emphasis on formal written policies excludes other types of records that were covered by the FOIA request, namely "policies, practices, or procedures" regardless of whether they are formal or informal and regardless of their format (e.g., a formal memo versus email summary). *See* Pl.'s Mem. 15. EOUSA had an obligation to "select the interpretation that would likely yield the greatest number of responsive documents." *See Rodriguez v. Dep't of Def.*, 236 F. Supp. 3d 26, 36 (D.D.C. 2017). By refusing to read the FOIA request as drafted—which included a wider set of records than merely "written policies"—District of Arizona and Eastern District of Pennsylvania improperly limited the scope of the search. *See Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) (stating an agency is "bound to read [a request] as drafted, not as [the] agency officials . . . might wish it was drafted").

*    *    *

For the reasons provided above and in NACDL's opening brief, several of EOUSA's searches were inadequate. The Court should deny summary judgment to EOUSA and order that EOUSA supplement its inadequate descriptions and conduct adequate searches.

## II.    Defendants failed to justify their withholding of certain information under the FOIA's narrow statutory exemptions.

As explained in NACDL's opening brief and below, Defendants have failed to meet their burden of justifying their withholdings of certain records or portions thereof under Exemptions 4, 5, 7(E), and 7(F).[2] Additionally, Defendants have wholly failed to counter nearly all of NACDL's arguments regarding their failure to provide justifications for all withheld records, whether proper segregability analyses were conducted, and the improper withholding of "non-responsive" material, thereby conceding those arguments.

### A.    BOP improperly withheld information under Exemption 4.

BOP improperly invoked FOIA Exemption 4 to withhold information in two records: the TRULINCS User Guide (BOP Record c1) and a screenshot of the TRULINCS "Portal" (BOP Record R2), Ex. B.10 at 83. *See* Pl.'s Mem. 18–23. As an initial matter and as highlighted in NACDL's opening brief, BOP improperly combines its justifications for withholding information in the two records into a single paragraph that discusses only the User Guide. Pl.'s Mem. 19. The Supplemental Lilly Declaration provides no additional justifications to remedy this deficiency. *See generally* 1st Supp. Decl. of Sarah Lilly ("Supp. Lilly Decl.").

To meet its burden under Exemption 4, an agency must first show that the withheld information is "commercial or financial" in nature. 5 U.S.C. § 552(b)(4). BOP asserts that the

---

[2] NACDL is no longer challenging certain Exemption 5 withholdings, as discussed in more detail, *infra*.

records at issue are "commercial" because ATG is a software developer that sells its products to correctional facilities and ATG has a commercial interest in the product ATG created for BOP. Defs.' Reply 9–10. While it is undoubtedly true that a company generally has a commercial interest in products it sells for a profit, BOP's argument fails to show that the company has a commercial interest in the specific information that has been withheld. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (stating that an agency must provide "a relatively detailed justification, specifically identify[ing] the reasons why a particular exemption is relevant and *correlating those claims with the particular part of a withheld document to which they apply*" (emphasis added)). The information withheld in these two records is specific to the software that was specially developed for BOP; nothing in Defendants' filings indicates that this information is used to sell ATG's products to others. *See Pub. Citizen v. HHS*, 975 F. Supp. 2d 81, 99 (D.D.C. 2013) (citation omitted) (stating that information is commercial only if "in and of itself, it serves a commercial function or is of a commercial nature"). Indeed, there is little, if any, commercial value in narrowly tailored instructions like those in the User Guide or an educational screenshot used to train AUSAs on how TRULINCS functions, a point with which BOP appears to agree, *see* Defs.' Reply 13–14 (acknowledging that the User Guide is "not commercially available to the public or even other clients" and that the screenshot was created for educational purposes).

To show Exemption 4 applies, an agency must also establish that the withheld information was "obtained from a person." 5 U.S.C. § 552(b)(4). BOP argues that the screenshot in a BOP-developed presentation was "obtained from a person" because TRULINCS was purchased from ATG.[3] Once again, BOP focuses its analysis on the wrong locus. Exemption 4 requires that the withheld information (i.e., the screenshot) be obtained from a person. *See Judicial Watch v. FDA*,

---

[3] NACDL does not challenge that the User Guide was "obtained from a person."

449 F.3d at 146. Here, the screenshot was apparently created by an individual who work for BOP during the development of an educational presentation about BOP's TRULINCS monitoring capabilities, among other things, placing it outside Exemption 4's definition of that term.

Finally, as NACDL articulated in its opening brief, these records cannot be considered confidential within the meaning of Exemption 4. *See* Pl.'s Mem. 21–23. BOP focuses its attention on whether the withheld information—a user guide and a screenshot of a software interface—are "customarily" treated as private by its owner and assurances made by the government that the information will be kept confidential. *See* Defs.' Reply 13–15. However, NACDL's main argument on this point focuses on *Argus Leader*'s requirement that withheld information be "actually treated as private by its owner." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). Nothing in Defendants' filings demonstrates that ATG has done anything to keep this information confidential. *Contra, e.g.*, *Seife v. FDA*, No. 17-cv-3960-JMF, 2020 WL 5913525, at *4 (S.D.N.Y. Oct. 6, 2020) (describing "strict confidentiality protocols" within and outside company in holding information was treated as confidential); *Am. Small Bus. League v. U.S. Dep't of Def.*, 411 F. Supp. 3d 824, 831 (N.D. Cal. 2019) (listing various security measures and protocols the company took to ensure confidentiality of records). These descriptions are necessary to establish that the information is actually treated as confidential within the meaning of Exemption 4, particularly because BOP's filings provide no basis on which to establish that BOP's declarant has any knowledge of what is a customary business practice in the software industry. *See Seife*, 2020 WL 5913525, at *4. Additionally, as NACDL highlighted in its opening brief, Pl.'s Mem. 22–23, BOP's own filings undermine its assertion that the withheld screenshot is treated as confidential since BOP shared it with AUSAs who are unaffiliated with BOP and who do not generally have access to TRULINCS. *See* Lilly Decl. ¶ 35(n).

In sum, BOP has not met its burden to justify its withholdings under Exemption 4 and the Court should order the release of these records.

### B.    Defendants have failed to justify withholdings under Exemption 5.

As discussed in NACDL's opening brief and below, BOP, the Criminal Division, and EOUSA invoked Exemption 5 for the majority of their withheld records. *See* Pl.'s Mem. 23–25. Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), and can apply to documents covered by various civil litigation privileges, *see Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 56 (D.D.C. 2014), *aff'd*, No. 15- 5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015). However, Defendants descriptions of the documents do not demonstrate the applicability of the exemption.[4] *See* Pl.'s Mem. 23–35.

### 1.    Some records withheld under deliberative process privilege are not pre-decisional or deliberative and cannot be withheld under Exemption 5.

The deliberative process privilege protects records that are both "deliberative" and "pre-decisional." *Access Reports v. DOJ*, 926 F.2d 1192, 1194 (D.C. Cir. 1991). A deliberative communication is one that "is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). The record must also be pre-decisional, meaning it was "generated before the adoption of an agency policy" and its release would "inaccurately reflect or prematurely disclose" agency policy. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The deliberative process privilege protects records which are "so candid or personal in nature that public disclosure is likely

---

[4] Based on Defendants' summary judgment filings, NACDL is no longer challenging Exemption 5 withholdings in BOP Record j (as to deliberative process privilege), Criminal Division Records 8 and 18, and EOUSA Records 12 and 19 (Record 19 only as to work product privilege).

in the future to stifle honest and frank communication within the agency." *United States v. Nixon*, 418 U.S. 683 (1974). The privilege "does not protect documents that merely state or explain agency decisions," *Judicial Watch, Inc. v. HHS*, 27 F. Supp. 2d 240, 245 (D.D.C. 1998), nor does it protect records that are later "adopted, formally or informally, as the agency position on an issue," *Coastal States*, 617 F.2d at 866; *see also Martin v. EEOC*, 19 F. Supp. 3d 291, 307 (D.D.C. 2014).

NACDL's opening brief articulates three main grounds on which various of Defendants' withholdings are improper under the deliberative process privilege, namely that (1) some of the records appear to be finalized memoranda that cannot be considered "pre-decisional" or "deliberative"; (2) some appear to be descriptive memoranda that are not protected under the deliberative process privilege; and (3) some do not appear to relate to a decisionmaking process. Pl's Mem. 23–29. While Defendants' reply and accompanying filings provide greater clarity as to some of the records, they do not meet their burden as to others, and for many of the records, Defendants provide no specific response to the arguments NACDL presented. NACDL takes each record or group of records in turn below.

**BOP Record l.** While BOP's supplemental declaration better describes the decisionmaking process involved in BOP Record l, it fails to establish that this record is not at least partially descriptive. *See* Supp. Lilly Decl. ¶ 7 (indicating decision paper contains descriptions of "different approaches for monitoring Video Conferencing"). Additionally, even if this particular draft is pre-decisional, BOP provides no explanation for why a record was not released that captures the final policy or policies. In the cover letter that initially described the withholding, BOP indicated this record is from 2014 and in its supplemental declaration, BOP indicated that video conferencing was "going to be rolled out across the BOP" around that time. *Id.* It is logical that a final policy was reached involving the monitoring of video conferencing, but

BOP has failed to produce that policy. It appears that this record likely contains some description of current policy or that a related undisclosed record does. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975) (indicating that pre-decisional records describing the basis for an adopted agency policy are often not protected by the deliberative process privilege).

**Criminal Division Records 1–4, 9–12, 14–17, 19–22, 24, 26–28, and 31–33.** In its supplemental declaration, the Criminal Division states that is has "not withheld any records identified in its *Vaughn* index . . . as pre-decisional, merely because they post-date the adoption of the BOP inmate email policy in question." 2d Decl. of John E. Cunningham ("2d Cunningham Decl.") ¶ 19. It goes on to say that the relevant records "relate to altogether new issues which have arisen as a result of the creation of the underlying BOP policy." *Id.* This description seems to concede that the records are not pre-decisional, *see Access Reports*, 926 F.2d at 1194, and that they do not relate to "facilitate[ing] or assist[ing] development of the agency's final position on the relevant issue," *Nat'l Sec. Archive*, 752 F.3d at 463. While some records that post-date a policy can "still be predecisional and deliberative with respect to other, nonfinal agency policies," *Judicial Watch v. FDA*, 449 F.3d at 151, the Criminal Division's description indicates that these records relate to the implementation of an existing policy, not the development of a new one. *See Pub. Emps. for Envtl. Resp. v. EPA*, 288 F. Supp. 3d 15, 25 (D.D.C. 2017) (finding deliberative process privilege does not apply when a "record explains design choices that had already been made").

Additionally, the Criminal Division's argument appears to be that because Criminal Division attorneys are often consulted on criminal cases based on their expertise in certain areas of law, their advice is always pre-decisional within the meaning of the deliberative process privilege. 2d Cunningham Decl. ¶ 19 (stating that "advice provided by CCIPS and ESU, is, by its

very nature, pre-decisional, and is based upon their extant knowledge of relevant federal statutory authorities, as well as the most current decisional case law impacting this subject matter area"). But, as discussed above, to be covered by the deliberative process privilege, a record must facilitate or assist "development of the agency's final position on the relevant issue," *Nat'l Sec. Archive*, 752 F.3d at 463, and be "generated before the adoption of an agency policy," *Coastal States*, 617 F.2d at 866. Records providing advice on the applicable law in particular cases or on how to implement existing policies are not protected by the privilege.

**EOUSA Records 2–3, 11, 19, 21, and 23–27.** NACDL made comprehensive arguments on its challenges to the withheld EOUSA records in its opening brief, which EOUSA largely failed to respond to. For these records, NACDL adopts the arguments made in its opening brief, but makes the following additional arguments in response to Defendants' reply.

EOUSA's additional justifications for withholding EOUSA Records 2 and 3 are unavailing because it concedes that the policies under discussion were put into action. *See* Supp. Jolly Decl. ¶ 5 n.8 (indicating records contain descriptions of "future action to be taken" within USAO to implement new BOP policy). *See NLRB*, 421 U.S. at 152.

Additionally, contrary to EOUSA's framing of EOUSA Record 23 as a non-final legal analysis, the email covers the same ground as a widely distributed policy that went into force the following day. *See* EOUSA *Vaughn* Index 9 (indicating EOUSA Record 23 relates to Mar. 20, 2020 memo distributed to Federal Defender's Office and other third parties). Thus, it seems highly probable that the email contains a discussion of the basis for the adopted agency policy, thus placing it outside the ambit of the deliberative process privilege. *See id.*

16

Finally, EOUSA concedes that EOUSA Records 26 and 27 contain templates that are used within the relevant USAOs. There is no indication why the proposed changes cannot be segregated from the portions of the record that were in use in the office at the time.

*        *        *

Based on the above and the arguments made in NACDL's opening brief, Defendants have not justified their deliberative process withholdings.

### 2.    Defendants improperly withheld records under the work product doctrine.

The work product doctrine protects the "files and mental impressions of an attorney" that are "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495 (1947). It provides no protection for records "prepared by lawyers 'in the ordinary course of business or for other nonlitigation purposes.'" *Shapiro v. DOJ*, 969 F. Supp. 2d 18, 29 (D.D.C. 2013) (quoting *In re Sealed Case*, 146 F.3d 881, 887 (D.C. Cir. 1998)). NACDL presented thorough arguments in its opening brief regarding its challenges to Defendants' invocation of the work product doctrine, Pl.'s Mem. 29–33, but responds to specific arguments raised in Defendants' reply below.

**BOP Records c2, g2, and j.** In its opening brief, NACDL challenged BOP's invocation of the work product doctrine withholdings in BOP Records c2, g2, and j. *See* Pl.'s Mem. 30–31. BOP does not respond to these arguments in either Defendants' reply or its supplemental declaration. *See generally* Defs.' Reply; Supp. Lilly Decl. NACDL stands by its initial arguments and is left to assume BOP had no counter to them.

**DOJ Book.** Both BOP and EOUSA have withheld portions of the so-called DOJ Book. EOUSA attempts to rely on *NACDL v. EOUSA*, 844 F.3d 246, 255 (D.C. Cir. 2016), to shield these records from disclosure under the work product doctrine, but its arguments are unavailing based

17

on its own description of the withheld records. In *NACDL*, the D.C. Circuit permitted the withholding of the DOJ's "Blue Book," which was described as containing "confidential legal analysis and strategies to support the Government's investigations and prosecutions." *Id.* at 252. The court distinguished the Blue Book from records like the publicly available U.S. Attorneys' Manual (now known as the "Justice Manual"), "which set[s] out statements of agency policy." *Id.* EOUSA's descriptions of the DOJ Book in this case places it somewhere between these two sorts of resources. EOUSA describes the DOJ Book as reflecting policies and practices, and the process by which those were created. Supp. Jolly Decl. ¶ 5; *see also* EOUSA *Vaughn* Index 2 (indicating DOJ Book contains information on handling attorney-client communications, interacting with represented parties, and proper handling of stored communications). However, while some portions of the DOJ Book may be covered by the work product doctrine, it appears that much of the information responsive to NACDL's request encompasses summaries of policies and practices, templates, and related resources based on the disclosed information from Western District of Washington's DOJ Book. *See* Ex. B.3 at 25–28. This sort of information is much closer to the Justice Manual than the Blue Book; there is nothing that indicates the withheld information constitutes the "files and mental impressions of an attorney" that are "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3).

**Criminal Division Records 1–4, 9–12, 14–17, 19–21, 23–24, 26–28, and 31–33.** As discussed in NACDL's opening brief, these records are largely non-adversarial in nature. Pl.'s Mem. 32–33; *see also ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 485 (9th Cir. 2018) (indicating that information with a non-adversarial function, such as instructions for acquiring court authorization or technical information, is not protected). The records contain a mix of guidelines, best practices, and descriptions of policies. The Criminal Division's supplemental declaration does not establish

otherwise. At a minimum, it seems clear that at least some portions of these records—those discussing the guidelines, best practices, or policies—are reasonably segregable. Without demonstrating any litigation purpose for these withheld documents beyond providing neutral legal guidance, the Criminal Division has not met its burden under the work product privilege.

**EOUSA Records 1–5, 13, 15–16, 18, and 21–27.** In its opening brief, NACDL challenged EOUSA's invocation of the work product doctrine withholdings in EOUSA Records 1–5, 13, 15–16, 18, and 21–27. *See* Pl.'s Mem. 29–33. EOUSA does not specifically respond to NACDL's arguments in either Defendants' reply or its supplemental declaration. *See generally* Defs.' Reply; Supp. Jolly Decl. ¶ 5 (discussing some of these records, but seemingly only with reference to the deliberative process privilege). NACDL stands by its initial arguments and is left to assume EOUSA had no counter to them.

### 3. Defendants have failed to establish that the attorney-client privilege applies to records withheld under Exemption 5.

In its opening brief, NACDL challenged EOUSA's invocation of attorney-client privilege in withholding the DOJ Book (EOUSA Records 4 and 13). *See* Pl.'s Mem. 33–35. Defendants' reply brief does not respond to NACDL's arguments, and the supplemental Jolly declaration merely notes that the attorney-client privilege was invoked. *See generally* Defs.' Reply; *see also* Supp. Jolly Decl. ¶ 5. NACDL stands by its initial arguments on this front and is left to assume EOUSA had no counter to them.

### C. BOP improperly withheld information under Exemption 7(E) and 7(F).

In its opening brief, NACDL also articulated the ways in which BOP had failed to justify its Exemption 7(E) and 7(F) withholdings in two records: the SIS Manual (BOP Record a-b) and the Inmate Communication Monitoring Decision Paper (BOP Record l). *See* Pl.'s Mem. 35–40. Exemption 7(E) permits the withholding of law enforcement records containing "techniques and

procedures" or "guidelines" for law enforcement investigations or prosecutions, if agencies show that disclosure "might create a risk of circumvention." 5 U.S.C. § 552(b)(7)(E); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). Exemption 7(F) permits the withholding of law enforcement records only to the extent that production "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). BOP's response only discusses withholdings made to the SIS Manual, but still fails to provide sufficient justifications for those withholdings.

BOP argues that it need not describe how Exemption 7(E) applies to particular redactions so long as it generally describes the record's importance to BOP and describes how portions of the withheld record could facilitate circumvention of the law. Defs.' Reply 22–23. However, these generalized descriptions are not enough. *See, e.g.*, *Schoenman v. FBI*, 604 F. Supp. 2d 174, 196 (D.C. Cir. 2009) (indicating that an agency must "adequately describe the withheld documents or deletions" and "state the particular FOIA exemption, and explain why the exemption applies"); *Judicial Watch v. FDA*, 449 F.3d at 146 (stating that a description of a withholding must "specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply"). NACDL is most interested in certain portions of the SIS Manual—those that describe BOP's policies, practices, and procedures for monitoring incarcerated individuals' TRULINCS messages. However, the justifications proffered by BOP apply to wholly different parts of the SIS Manual and fail to justify the particular redactions in the portions of the records that were disclosed to NACDL. *See* Ex. B.1, at 3–21. BOP's arguments focus on the fact that some parts of the SIS Manual provide guidance on "processing crime scenes, handling confidential informants and referring matters for

20

prosecution," Supp. Lilly Decl. ¶ 11, but does not confront NACDL's argument that BOP must justify the specific withholdings in what was disclosed to NACDL.

Additionally, as with other arguments presented by NACDL and discussed elsewhere in this reply, BOP fails to respond to or address NACDL's arguments about Exemption 7(E)'s inapplicability to BOP Record l or about the agency's insufficient justifications under Exemption 7(F). *See* Pl.'s Mem. 39–40; *see also* Supp. Lilly Decl. ¶¶ 9–12 (discussing Exemption 7 only as to BOP Record a-b). This Court should treat BOP's failure to respond to NACDL's Exemption 7(F) challenge as a concession that the exemption does not apply to these records, or at least grant summary judgment for NACDL based the arguments presented in its opening brief. *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("It is understood in this Circuit that when a [non-moving party] files an opposition to a dispositive motion and addresses only certain arguments raised by the [moving party], a court may treat those arguments that the [non-moving party] failed to address as conceded."); *see also Stein v. DOJ*, 197 F. Supp. 3d 115, 123 (D.D.C. 2016) (holding same).

In sum, BOP has failed to establish that Exemption 7(E) or 7(F) applies to either record.

### D. Defendants failed to address or respond to various other arguments presented in NACDL's cross-motion.

Defendants' reply brief and associated filings do not adequately address or respond to the arguments NACDL raised in its cross-motion regarding the deficiency of Defendants' *Vaughn* indices, Defendants' failure to segregate out information that should be disclosed when redacting records, and BOP's and EOUSA's inappropriate withholding of information as "non-responsive" within responsive records. Indeed, in some instances, Defendants provide no response to these arguments, which should be viewed as a concession of the point. *See Buggs*, 293 F. Supp. 2d at 141; *Stein*, 197 F. Supp. 3d at 123.

**Deficient *Vaughn* indices.** In its opening brief, NACDL challenged the lack of description of certain records in Defendants' *Vaughn* indices. *See* Pl.'s Mem. 40–42. First, NACDL pointed out several records for which BOP and the Criminal Division simply fail to provide *Vaughn* entries or justifications.[5] *See* Pl.'s Mem. 40 n.34.[6] BOP and the Criminal Division have still not provided *Vaughn* entries or justifications for these records. Thus, Defendants have failed to meet their burden to justify their withholdings. *See, e.g.*, *Judicial Watch v. FDA*, 449 F.3d at 146; *Schoenman*, 604 F. Supp. 2d at 196.

NACDL also pointed out that BOP improperly combined its descriptions of two completely different PowerPoints by merging them into one document (BOP Record R2), and that BOP's description erroneously attributed these PowerPoints to FDC SeaTac, mistakenly referencing a third PowerPoint. *See* Pl.'s Mem. 41. BOP does nothing to correct these errors or provide individualized justification for withholding information in these records, and thus cannot meet its burden to justify its withholdings on summary judgment. *See, e.g.*, *Judicial Watch v. FDA*, 449 F.3d at 146; *Schoenman*, 604 F. Supp. 2d at 196.

**Segregability.** In its opening brief, NACDL challenged Defendants' segregability analyses for certain records and requested *in camera* review of those records to ensure that all reasonably segregable portions of records are released. Pl.'s Mem. 42–44. Defendants' reply does not address these arguments and the supplemental declarations do not provide any new information about the segregability analyses performed, relying on boilerplate assertions that such analyses were

---

[5] Specifically, BOP's declarations fail to discuss forty-nine pages withheld in full in BOP's 3/21/2019 production, as well as an email with a redacted subject dated March 20, 2020 [Ex. B.8]; an email with the subject "FDC Changes in EDiscovery Distribution and Information Regarding FDC SeaTac Pretrial Inmate Computers" [Ex. B.6]; and an email with the subject "USAO slideshow presentation" [Ex. B.5], all disclosed in BOP's 8/31/2020 production. The Criminal Division's declarations fail to discuss eleven pages withheld in full in the Criminal Division's 8/30/19 production and eighty-seven pages withheld in full in the Criminal Division's 9/24/19 production.

[6] NACDL is no longer challenging EOUSA's descriptions on this front based on the information provided in EOUSA's supplemental declaration. *See* Supp. Jolly Decl. ¶ 6.

conducted. *See generally* Defs.' Reply; *see also* Supp. Jolly Decl. ¶ 8 (boilerplate segregability assertion). This Court should treat Defendants' failure to respond to NACDL's segregability challenge as a concession that their justifications are insufficient, or at least that *in camera* review is proper. *Buggs*, 293 F. Supp. 2d at 141; *Stein*, 197 F. Supp. 3d at 123.

**Withholdings of purportedly non-responsive information.** In its opening brief, NACDL challenged EOUSA's and BOP's withholding of purportedly non-responsive information contained in responsive records.[7] *See* Pl.'s Mem. 44–45. BOP provides no response to NACDL's challenged withholding on this ground for BOP Records a-b (the SIS Manual). This Court should treat BOP's failure to respond to NACDL's challenge as a concession that this information is improperly withheld. *Buggs*, 293 F. Supp. 2d at 141; *Stein*, 197 F. Supp. 3d at 123.

EOUSA provides belated rationalizations for withholdings in EOUSA Record 22 [Ex. C.5, at 14, 17] and the chart partially disclosed by Northern District of Illinois [Ex. C.10, at 30]. *See* Supp. Jolly Decl. ¶ 7 (indicating that information previously withheld as "non-responsive" in these records is now considered covered by the work product doctrine). However, EOUSA's justifications fall short. As discussed above, EOUSA has failed to justify its withholdings to other portions of Record 22 under the work product doctrine, and nothing in the new description of the record establishes that the doctrine applies to the two portions that were previously redacted as "non-responsive."

The same is true of EOUSA's new description of Northern District of Illinois's chart. The description provided in EOUSA's supplemental declaration is its first description of these withholdings, now asserting the redacted portions are covered by work product doctrine rather

---

[7] NACDL challenged EOUSA's invocation of the purported "non-responsive" nature of information in the record called "Email - Subject: A few items (October 19, 2017)." NACDL notes that EOUSA has now rescinded that justification and produced the record. *See* Supp. Jolly Decl. at 14.

than that they are non-responsive. The surrounding information in that record that was released undermines EOUSA's justification for withholding the other rows in the spreadsheet. *Compare* Supp. Jolly Decl. ¶ 7 (describing withholding as containing "attorney analysis regarding prisoner recordings"), *with* Ex. C.10, at 30 (showing spreadsheet contains what appear to be columns for describing a resource, the related BOP program statements, how information is requested, and relevant policies and links to related resources). If the information in the "Prisoner E-mail Accounts" row is not considered work product, there is no reason to believe other rows in the spreadsheet should be since the columns should contain similar sorts of information for each row, and nothing in EOUSA's supplemental justification explains the differential treatment.

**CONCLUSION**

Based on the foregoing reasons and those presented in NACDL's opening brief, the Court should deny Defendants' motion for summary judgment and enter summary judgment in NACDL's favor.

Dated: January 20, 2021                    Respectfully submitted,

                                            /s/ Megan Graham
                                            Megan Graham (*pro hac vice*)
                                            Catherine Crump (*pro hac vice*)
                                            Samuelson Law, Technology & Public
                                                Policy Clinic
                                            U.C. Berkeley School of Law
                                            353 Law Building
                                            Berkeley, CA 94720-7200
                                            (510) 664-4381
                                            mgraham@clinical.law.berkeley.edu

                                            *Counsel for Plaintiff*

Barry J. Pollack, D.C. Bar #434513
Robbins, Russell, Englert, Orseck,
   Untereiner & Sauber, LLP
1801 K Street, N.W.
Suite 411L
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

*Counsel for Plaintiff*